UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS S. SWANSON, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>              v.<br><br>INTERFACE, INC., DANIEL T. HENDRIX, JAY D. GOULD, and BRUCE A. HAUSMANN,<br><br>                              Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Thomas S. Swanson ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Interface, Inc. ("Interface" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Interface securities

between March 2, 2018 and September 28, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Interface is a modular flooring company that designs, produces, and sells modular carpet products primarily in the Americas, Europe, and the Asia-Pacific.  The Company was founded in 1973 and is headquartered in Atlanta, Georgia.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Interface had inadequate disclosure controls and procedures and internal control over financial reporting; (ii) consequently, Interface, *inter alia*, reported artificially inflated income and earnings per share ("EPS") in 2015 and 2016; (iii) Interface and certain of its employees were under investigation by the SEC with respect to the foregoing issues since at least as early as November 2017, had impeded the SEC's investigation, and downplayed the true scope of the Company's wrongdoing and liability with respect to the SEC investigation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On April 24, 2019, Defendants filed a current report on Form 8-K with the SEC, disclosing, *inter alia*, that Interface "received a letter in November 2017 from the [SEC] requesting that the Company voluntarily provide information and documents in connection with an investigation into the Company's historical quarterly [EPS] calculations and rounding practices during the period 2014-2017"; that "[t]he Company subsequently received subpoenas from the SEC in February 2018, July 2018 and April 2019 requesting additional documents and

information"; and that "[i]n the fourth quarter of 2018, the Company conducted at the SEC's request an internal investigation into these and other related issues for seven quarters in 2015, 2016 and 2017."

5.      On this news, Interface's stock price fell $1.43 per share, or 8.37%, to close at $15.66 per share on April 25, 2019.

6.      Then, on September 28, 2020, the SEC announced the conclusion of its investigation into Interface's historical quarterly EPS calculations and rounding practices. Interface agreed to pay a $5 million fine to resolve the matter and was ordered to cease and desist from violating the federal securities laws.   In the SEC's enforcement order issued that same day, the SEC also disclosed how, *inter alia*, "Interface employees caused Interface to produce documents in response to Commission investigative requests that were suggestive of contemporaneous support for journal entries that, in truth, did not exist at the time the entries were recorded," and had modified certain documents after the SEC's investigation began.

7.      On this news, Interface's stock price fell $0.20 per share, or 3.13%, over the following two trading sessions to close at $6.18 per share on September 29, 2020

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to Interface's most recent annual report on Form 10-K, as of February 18, 2020, there were a total of 58,299,201 shares of the Company's common stock outstanding.  Interface's common stock trades on the Nasdaq Global Select Market ("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in Interface's common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Interface securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Interface is incorporated in Georgia with principal executive offices located at 1280 West Peachtree Street NW, Atlanta, Georgia 30309.  The Company's securities trade in an efficient market on the NASDAQ under the ticker symbol "TILE."

15.     Defendant Daniel T. Hendrix ("Hendrix") has served as Interface's President and Chief Executive Officer ("CEO") since January 20, 2020.  Hendrix is also Chairman of the Board of Interface, and previously served as the Company's CEO from 2001 to 2017.

16.     Defendant Jay D. Gould ("Gould") served as Interface's CEO from before the start of the Class Period until January 20, 2020, when the Company announced that he was "terminated after an investigation concluded that he engaged in personal behavior that violated Company policy and core values."  Gould had succeeded Hendrix as CEO in 2017.

17.     Defendant Bruce A. Hausmann ("Hausmann") has served as Interface's Chief Financial Officer at all relevant times.

18.     Defendants Hendrix, Gould, and Hausmann are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Interface's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Interface's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Interface, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Interface and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Interface is a modular flooring company that designs, produces, and sells modular carpet products primarily in the Americas, Europe, and the Asia-Pacific.  The Company was founded in 1973 and is headquartered in Atlanta, Georgia.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on March 2, 2018.  On March 1, 2018, during after-market hours, Interface filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K").   The 2017 10-K reported basic and diluted income from continuing operations per common share attributable to Interface of $0.83 for 2016, and $1.10 for 2015, thereby reaffirming the Company's historically reported earnings for those periods.

23.     In the 2017 10-K's "Item 3. Legal Proceedings" section, Defendants represented the following: "We are subject to various legal proceedings in the ordinary course of business, none of which we believe are required to be disclosed under this Item 3."

24.     With respect to Interface's disclosure controls and procedures and internal control over financial reporting, the 2017 10-K represented, in relevant part, that Interface's "disclosure controls and procedures were effective as of the end of the period covered by" the 2017 10-K; that "[t]here were no changes in [Interface's] internal control over financial reporting that occurred during [its] last fiscal quarter that have materially affected, or are reasonably likely to materially affect, [its] internal control over financial reporting"; and that "management concluded that, as of December 31, 2017, [Interface's] internal control over financial reporting was effective based on"

the "criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in 'Internal Control – Integrated Framework (2013).'"

25.     Appended as exhibits to the 2017 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Gould and Hausmann certified that the 2017 10-K "fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

26.     On February 28, 2019, Interface filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 30, 2018 (the "2018 10-K").  The 2018 10-K contained substantively the same representations as referenced in ¶¶ 22-24, *supra*, reaffirming Interface's historically reported earnings for 2016 and 2015; asserting there were no legal proceedings that Defendants believed were required to be disclosed under the "Item 3. Legal Proceedings" section of the annual report; and affirming the effectiveness of Interface's disclosure controls and procedures and internal control over financial reporting, while representing that there were no changes in Interface's internal control over financial reporting that occurred during its last fiscal quarter that had materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

27.     Appended as exhibits to the 2018 10-K were substantively the same SOX certifications as referenced in ¶ 25, *supra*, signed by Defendants Gould and Hausmann.

28.     The statements referenced in ¶¶ 22-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Interface had

inadequate disclosure controls and procedures and internal control over financial reporting; (ii) consequently, Interface, *inter alia*, reported artificially inflated income and EPS in 2015 and 2016; (iii) Interface and certain of its employees were under investigation by the SEC with respect to the foregoing since at least November 2017, had impeded the SEC's investigation, and downplayed the true scope of the Company's wrongdoing and liability with respect to the SEC investigation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

29.     On April 24, 2019, during after-market hours, Defendants filed a current report on Form 8-K with the SEC (the "2019 8-K"), disclosing that Interface's EPS calculations and rounding practices had been under SEC investigation since at least November 2017.  Specifically, the 2019 8-K disclosed, in relevant part:

> Interface . . . received a letter in November 2017 from the [SEC] requesting that the Company voluntarily provide information and documents in connection with an investigation into the Company's historical quarterly [EPS] calculations and rounding practices during the period 2014-2017.  The Company subsequently received subpoenas from the SEC in February 2018, July 2018 and April 2019 requesting additional documents and information.  In the fourth quarter of 2018, the Company conducted at the SEC's request an internal investigation into these and other related issues for seven quarters in 2015, 2016 and 2017.

> On April 23, 2019, Gregory J. Bauer, the Company's Vice President and Chief Accounting Officer, went on paid administrative leave from the Company after it was learned that in 2018 in the process of collecting materials from 2015, 2016 and 2017 for production to the SEC, he added certain notes to those materials that were then produced to the SEC.  The Company believes at this time, however, that the after-the-fact inclusion of these notes had no impact on the EPS calculations that are the subject of the above-described investigation or on subsequent EPS calculations.

30.     Following the filing of the 2019 8-K, Interface's stock price fell $1.43 per share, or 8.37%, to close at $15.66 per share on April 25, 2019.  Despite this decline in the Company's stock

price, Interface's securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misrepresentations regarding the adequacy of Interface's disclosure controls and procedures and internal control over financial reporting, the Company's artificially inflated income and EPS in 2016 and 2015, the Company's impediment of the SEC's investigation, and the true scope and liability of the Company with respect to the SEC investigation.

31.     For example, the 2019 8-K asserted that "[s]ince the inception of the investigation, the Company has cooperated and continues to cooperate with the SEC's investigation."

32.     Additionally, on February 26, 2020, Interface filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 29, 2019 (the "2019 10-K").  This time, in the 2019 10-K's "Item 3. Legal Proceedings" section, Defendants represented that "[f]rom time to time, [Interface is] a party to legal proceedings, whether arising in the ordinary course of business or otherwise," and that "[t]he disclosure set forth in Note 17 to the consolidated financial statements included in Item 8 of th[e] [2019 10-K] is incorporated by reference herein."  That note contained substantively the same statements as referenced in ¶¶ 29 and 31, *supra*, disclosing the existence of the SEC's investigation since November 2017, and asserting that the Company had cooperated with the SEC's investigation since its inception.

33.     Moreover, the 2019 10-K contained substantively the same representations as referenced in ¶¶ 22 and 24, *supra*, reaffirming Interface's historically reported earnings for 2016 and 2015, and affirming the effectiveness of Interface's disclosure controls and procedures and internal control over financial reporting, while representing that there were no changes in Interface's internal control over financial reporting that occurred during its last fiscal quarter that

had materially affected, or were reasonably likely to materially affect, the Company's internal control over financial reporting.

34.     Appended as exhibits to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 25, *supra*, signed by Defendants Hendrix and Hausmann.

35.     The statements referenced in ¶¶ 29 and 31-34 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Interface had inadequate disclosure controls and procedures and internal control over financial reporting; (ii) consequently, Interface, *inter alia*, reported artificially inflated income and EPS in 2015 and 2016; (iii) Interface and certain of its employees had impeded the SEC's investigation regarding the foregoing, and downplayed the true scope of the Company's wrongdoing and liability with respect to the SEC investigation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Fully Emerges

36.     On September 28, 2020, the SEC announced the conclusion of its investigation into Interface's historical quarterly EPS calculations and rounding practices.  Interface agreed to pay a $5 million fine to resolve the matter and was ordered to cease and desist from violating the federal securities laws.  Specifically, the SEC's enforcement order, dated September 28, 2020, disclosed, *inter alia*:

> 1.     From the second quarter of 2015 through the second quarter of 2016, Interface . . . reported [EPS] that did not accurately reflect the company's underlying performance. During these five consecutive financial quarters, Interface's then-Corporate Controller, Bauer, directed or otherwise caused his subordinates to book unsupported, manual accounting adjustments to Interface's management bonus accruals, expenses related to a key independent consultant

("Consultant"), and stock based compensation. These adjustments did not comply with generally accepted accounting principles ("GAAP") and artificially inflated Interface's income and EPS, which resulted in Interface meeting or beating consensus estimates for EPS and showing earnings growth. Interface's then-Chief Financial Officer ("CFO"), Lynch, also caused Bauer to direct entries in two quarters that lacked support and did not comply with GAAP. Bauer and Lynch were able to direct or cause these improper adjustments because Interface failed to have sufficient accounting controls or procedures in place to prevent unsupported, manual, period end, journal entries. Interface lacked critical journal entry controls and Bauer's subordinate accountants were not knowledgeable in GAAP.

2.     The adjustments and misstatements were also material to Interface's financial statements and caused Interface to make false disclosures in public filings, press releases, and earnings calls about its actual EPS results, its earnings growth, and its pattern of meeting or beating consensus analyst estimates. Had Lynch and Bauer ensured the financial statements complied with GAAP, Interface's reported earnings would have been more volatile than reported, and in two quarters in which it reported meets of analyst consensus EPS, Interface would have in fact missed the consensus estimates. Consequently, Interface's conduct was materially misleading to investors in violation of the federal securities laws.

37.     Further, in the section of the SEC's order entitled "Conduct During the Investigation," the SEC disclosed that "[b]etween November 2017 and March 2018, Interface employees caused Interface to produce documents in response to Commission investigative requests that were suggestive of contemporaneous support for journal entries that, in truth, did not exist at the time the entries were recorded"; that "[o]ne of these employees also certified as contemporaneous business records certain documents that, in fact, had been modified after the investigation began"; and that "[t]hese shortcomings had the effect of impeding the staff's investigation."  Although the SEC noted that "[w]hen Interface learned of these issues, Interface promptly informed the Staff, conducted an internal review, took disciplinary and remedial measures, and reported its findings," the foregoing issues ran counter to Defendants' previous assertions that "[s]ince the inception of the investigation, the Company ha[d] cooperated . . . with the SEC's investigation."

38.     On this news, Interface's stock price fell $0.20 per share, or 3.13%, over the following two trading sessions to close at $6.18 per share on September 29, 2020.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Interface securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Interface securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Interface or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Interface;

- whether the Individual Defendants caused Interface to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Interface securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Interface securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Interface securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Interface securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Interface securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Interface securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Interface's finances and business prospects.

53.     By virtue of their positions at Interface, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Interface, the Individual Defendants had knowledge of the details of Interface's internal affairs.

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Interface.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Interface's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Interface securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Interface's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Interface securities at artificially inflated prices and relied upon the price of the securities,

the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.     During the Class Period, Interface securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Interface securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Interface securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Interface securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>**COUNT II**</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

59.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of Interface, and conducted and participated, directly and indirectly, in the conduct of Interface's business affairs.  Because of their senior positions, they knew the adverse non-public information about Interface's misstatement of income and expenses and false financial statements.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Interface's financial condition and results of operations, and to correct promptly any public statements issued by Interface which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Interface disseminated in the marketplace during the Class Period concerning Interface's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Interface to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Interface within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Interface securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of Interface.  By reason of their senior management positions and/or being directors of Interface, each

of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Interface to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Interface and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Interface.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 12, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II

600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, Thomas S. Swanson, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Interface, Inc. ("Interface" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire Interface securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Interface securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     To the best of my current knowledge, the attached sheet lists all of my transactions in Interface securities during the Class Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury that the foregoing is true and correct.


Executed    10-29-20
                **(Date)**


                                    _Thomas S. Swanson_
                                        **(Signature)**

                                    _Thomas S. Swanson_
                                        **(Type or Print Name)**

**Interface, Inc. (TILE)**                                                     **Swanson, Thomas S.**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 4/28/2020 | 275 | $9.0115 |