# Exhibit C

Case 1:20-cv-05518-HG-RER    Document 43-3    Filed 06/16/21    Page 1 of 5 PageID #: 405

Table Of Contents

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 14A**
**(RULE 14a-101)**
**SCHEDULE 14A INFORMATION**

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934 (Amendment No. _____)

Filed by the Registrant ☒
Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐    Preliminary Proxy Statement
☐    Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))
☒    Definitive Proxy Statement
☐    Definitive Additional Materials
☐    Soliciting Material Pursuant to §240.14a-12

Interface, Inc.
(Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒    No fee required.
☐    Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    (1)    Title of each class of securities to which transaction applies:
                _____

    (2)    Aggregate number of securities to which transaction applies:
                _____

    (3)    Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):
                _____

    (4)    Proposed maximum aggregate value of transaction:
                _____

    (5)    Total fee paid:
                _____

☐    Fee paid previously with preliminary materials.

☐    Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing:

    (1)    Amount previously paid:
                _____

    (2)    Form, Schedule or Registration Statement No.:
                _____

    (3)    Filing party:
                _____

    (4)    Date Filed:
                _____

Table Of Contents



**Interface, Inc.**
**2859 Paces Ferry Road, Suite 2000**
**Atlanta, Georgia 30339**

## NOTICE OF ANNUAL MEETING OF SHAREHOLDERS

The annual meeting of shareholders of Interface, Inc. (the "Company") will be held on Tuesday, May 17, 2016, at 3:00 p.m. Eastern Time, at the Overlook III Conference Center located at 2859 Paces Ferry Road, Atlanta, Georgia. The purposes of the meeting are:

| | Item | Recommended Vote |
|---|---|---|
| 1. | To elect nine members of the Board of Directors. | FOR |
| 2. | To approve executive compensation, often referred to as a "say on pay". | FOR |
| 3. | To ratify the appointment of BDO USA, LLP as independent auditors for 2016. | FOR |
| 4. | Such other matters as may properly come before the meeting and at any adjournments of the meeting. | |

The Board of Directors set March 11, 2016 as the record date for the meeting. This means that only shareholders of record at the close of business on March 11, 2016 will be entitled to receive notice of and to vote at the meeting or any adjournments of the meeting.

The Board of Directors is using the attached Proxy Statement to solicit Proxies from shareholders. Please promptly complete and return a Proxy Card or use telephone or Internet voting at your earliest convenience. Voting your Proxy in a timely manner will assure your representation at the annual meeting. You may change or withdraw your Proxy at any time prior to the voting at the meeting.

By order of the Board of Directors

/s/ Raymond S. Willoch

Raymond S. Willoch
*Secretary*

March 31, 2016

**PLEASE PROMPTLY COMPLETE AND RETURN A PROXY CARD**
**OR USE TELEPHONE OR INTERNET VOTING PRIOR TO THE MEETING SO THAT YOUR VOTE**
**MAY BE RECORDED AT THE MEETING IF YOU DO NOT ATTEND PERSONALLY.**

Table Of Contents

| | 1/2/11 | 1/1/12 | 12/30/12 | 12/29/13 | 12/28/14 | 1/3/16 |
|---|---|---|---|---|---|---|
| **Interface, Inc.** | $100 | $74 | $102 | $140 | $109 | $126 |
| **NASDAQ Composite Index** | $100 | $99 | $114 | $162 | $190 | $200 |
| **Self-Determined Peer Group (14 Stocks)** | $100 | $97 | $137 | $205 | $227 | $244 |

*Notes to Performance Graph*

(1)    The lines represent annual index levels derived from compound daily returns that include all dividends.

(2)    The indices are re-weighted daily, using the market capitalization on the previous trading day.

(3)    If the annual interval, based on the fiscal year-end, is not a trading day, the preceding trading day is used.

(4)    The index level was set to $100 as of January 2, 2011 (the last day of fiscal 2010).

(5)    The Company's fiscal year ends on the Sunday nearest December 31.

(6)    The following companies are included in the Self-Determined Peer Group depicted above: Acuity Brands, Inc.; Albany International Corp.; Apogee Enterprises, Inc.; Armstrong World Industries, Inc.; BE Aerospace, Inc.; The Dixie Group, Inc.; Herman Miller, Inc.; HNI Corporation; Kimball International, Inc.; Knoll, Inc.; Mohawk Industries, Inc.; Steelcase, Inc.; Unifi, Inc.; and USG Corp.

In addition, the Committee may consider other factors when setting individual salary levels, which may result in salaries somewhat above or below the targeted amount. These factors include the executive's level of responsibility, achievement of goals and objectives, tenure with the Company, and specific background or experience, as well as external factors such as the availability of talent, the recruiting requirements of the particular situation, and general economic conditions and rates of inflation.

Base salary adjustments for executive officers generally are made (if at all) annually and are dependent on the factors described above. In 2015, each of the Named Executive Officers (other than Mr. Gould, who joined the Company in January 2015) received a base salary increase of 3%, representing an aggregate increase of approximately $72,550 for those four Named Executive Officers.

Please see the "Summary Compensation Table" included in this Proxy Statement for the salaries paid to the Named Executive Officers in 2015.

***Annual Bonuses***

The Committee administers the shareholder-approved Executive Bonus Plan, which provides bonus opportunities for Company executives. The bonus opportunities provide an incentive for executives to earn compensation based on the achievement of important corporate or business unit (division or subsidiary) financial performance. In determining the appropriate bonus opportunities, the Committee seeks to establish potential awards that, when combined with annual salary, place the total overall cash compensation opportunity for the Company's executives at the market 75th percentile for comparable companies, provided that the performance objectives are substantially achieved.

*2015 Annual Bonus Structure*

For 2015, each executive officer of the Company, including the Chief Executive Officer, was assigned a bonus potential, and a personalized set of quarterly and annual financial objectives. The Chief Executive Officer's bonus potential was 130% of base salary, the Chief Operating Officer's bonus potential was 100% of base salary, and the bonus potential for the other Named Executive Officers was 90% of base salary. Actual awards could range from 0% to 150% of the bonus potential, depending on the degree to which the established financial objectives were achieved, and were paid on a quarterly and annual basis in the following manner:

| Achievement of Objectives | Percentage of Bonus Opportunity Payable | Timing of Payment to Employee Participant |
|---|---|---|
| First Quarter Objectives Achieved | 15% | Approximately 45 days following end of first quarter |
| Second Quarter Objectives Achieved | 15% | Approximately 45 days following end of second quarter |
| Third Quarter Objectives Achieved | 15% | Approximately 45 days following end of third quarter |
| Fourth Quarter Objectives Achieved | 15% | Approximately 60 days following end of year |
| Fiscal Year Objectives Achieved | 40% | Approximately 60 days following end of year |

11

Table Of Contents

In 2015, 100% of the bonus potential for the Chief Executive Officer, Chief Financial Officer and each of the other Named Executive Officers was based on measurable financial objectives. For Messrs. Hendrix, Lynch, Gould and Willoch, these objectives consisted of operating income and cash flow, and the relative weights assigned to these financial objectives were 75% and 25%, respectively. For Mr. Wells (who manages the Company's Americas division), the objectives and relative weights assigned were divisional operating income (40%), consolidated operating income (25%), divisional cash flow (15%), and divisional operating income contribution margin (20%).

For each objective, the Committee establishes a threshold level that must be achieved in order for any bonus amount to be earned with respect to that objective, and establishes a goal that must be achieved or exceeded to maximize bonus compensation for that objective (except that no bonus is payable if the threshold for operating income is not exceeded). A pro rata bonus amount is earned to the extent that the threshold is exceeded, up to 150% of the goal number for the Chief Executive Officer and for the other Named Executive Officers. Historically, the Committee has set the threshold level, in its discretion, based primarily on a consideration of the Company's prior year results for each objective, such that no bonus will be earned with respect to the objective in the event that the Company fails to experience improvement. Also historically, the Committee has set the goal, in its discretion, based primarily on factors that would approximate 15% sales growth and 20% operating income and earnings per share growth from such incremental sales. With respect to cash flow, the Committee sets the goal, in its discretion, using similar approximations, but taking into account anticipated growth initiatives, capital expenditures, research and development costs, debt maturities, and other cash uses that the Committee deems relevant. Given this methodology, the Committee believes that the threshold level, while challenging, is reasonably likely to be achieved in normalized market conditions, while the target would be fully achieved or exceeded only with exceptional performance.

For example, the 2015 annual thresholds and goals that were applicable for our Chief Executive Officer, excluding accruals for bonuses, were as follows:

| Criteria | Threshold | Goal |
| --- | --- | --- |
| Operating Income | $80,000,000 | $115,000,000 |
| Cash Flow | $30,000,000 | $40,000,000 |

For 2015, each of the Named Executive Officers received a bonus, which appears in the "Summary Compensation Table" included in this Proxy Statement, as their respective performance objectives were determined to have been achieved, in part, during the year. The bonuses were attributable to their achieving or exceeding their respective financial objective goals, primarily during the first, second and fourth quarters of the year.

*2016 Annual Bonus Structure*

For 2016, the bonus structure is similar to that for 2015, but with the modifications described in this section. The bonus potential for each Named Executive Officer remains the same, except that the Chief Operating Officer's bonus potential has been increased to 115% of base salary. The financial objectives and relative weighting remain the same, except that, for Mr. Wells, the criterion of divisional operating income contribution margin has been changed to divisional gross profit. The Committee also has eliminated the quarterly opportunity for executive officers, so the entire bonus opportunity is now based on full fiscal year performance.

For each financial objective, the Committee has established a threshold amount, a goal amount, and a maximum amount. The threshold amount must be achieved in order for any bonus amount to be earned with respect to that objective (except that no bonus is payable if the threshold amount for operating income is not exceeded). A pro rata bonus amount is earned based upon (i) the degree to which the threshold amount (resulting in a "cut in" payout equal to 25% of the bonus potential for that criterion) is exceeded, up to the goal amount (resulting in a payout equal to 100% of the bonus potential for that criterion), or (ii) the degree to which the goal amount (resulting in a payout equal to 100% of the bonus potential for that criterion) is exceeded, up to the maximum amount (resulting in a payout equal to 150% of the bonus potential for that criterion).

12