# Exhibit E

**Financial reporting developments**
*A comprehensive guide*

# Share-based payment

**(after the adoption of ASU 2018-07,** *Improvements to Nonemployee Share-Based Payment Accounting)*

**September 2020**



**EY**
**Building a better working world**

# 2  Scope

## 2.1  Transactions subject to ASC 718

> **Excerpt from Accounting Standards Codification**
>
> Compensation – Stock Compensation – Overall
>
> *Scope and Scope Exceptions*
>
> *718-10-15-3*
>
> The guidance in the Compensation – Stock Compensation Topic applies to all share-based payment transactions in which a grantor acquires goods or services to be used or consumed in the grantor's own operations by **issuing** (or offering to issue) its shares, share options, or other equity instruments or by incurring liabilities to an **employee** or a nonemployee that meet either of the following conditions:
>
> a.  The amounts are based, at least in part, on the price of the entity's shares or other equity instruments. (The phrase *at least in part* is used because an **award** of share-based compensation may be indexed to both the price of an entity's shares and something else that is neither the price of the entity's shares nor a **market**, **performance**, or **service condition**.)
>
> b.  The awards require or may require **settlement** by issuing the entity's equity shares or other equity instruments.
>
> **Pending Content:**
>
> Transition Date: *(P) December 16, 2019; (N) December 16, 2019* | Transition Guidance: 718-10-65-15
>
> The guidance in the Compensation–Stock Compensation Topic applies to all share-based payment transactions in which a grantor acquires goods or services to be used or consumed in the grantor's own operations or provides consideration payable to a customer by **issuing** (or offering to issue) its shares, share options, or other equity instruments or by incurring liabilities to an **employee** or a nonemployee that meet either of the following conditions:
>
> a.  The amounts are based, at least in part, on the price of the entity's shares or other equity instruments. (The phrase at least in part is used because an **award** of share-based compensation may be indexed to both the price of an entity's shares and something else that is neither the price of the entity's shares nor a **market**, **performance**, or **service condition**.)
>
> b.  The awards require or may require **settlement** by issuing the entity's equity shares or other equity instruments.
>
> *718-10-15-3A*
>
> Paragraphs 323-10-25-3 through 25-5 provide guidance on accounting for share-based compensation granted by an investor to employees or nonemployees of an equity method investee that provide goods or services to the investee that are used or consumed in the investee's operations.
>
> *718-10-15-5*
>
> The guidance in this Topic does not apply to the following payment transactions:
>
> a.  Subparagraph superseded by Accounting Standards Update No. 2018-07
>
> b.  Transactions involving equity instruments granted to a lender or investor that provides financing to the issuer.

c.    Transactions involving equity instruments granted in conjunction with selling goods or services to customers as part of a contract (for example, sales incentives) accounted for under Topic 606 on revenue from contracts with customers (specifically, the guidance on consideration payable to a customer in paragraphs 606-10-32-25 through 32-27).

**Pending Content:**

Transition Date: *(P) December 16, 2019; (N) December 16, 2019* | Transition Guidance: 718-10-65-15

The guidance in this Topic does not apply to transactions involving share-based payment awards granted to a lender or an investor that provides financing to the issuer.

a.    Subparagraph superseded by Accounting Standards Update No. 2018-07.

b.    Subparagraph superseded by Accounting Standards Update No. 2019-08.

c.    Subparagraph superseded by Accounting Standards Update No. 2019-08.

*718-10-15-5A*

If consideration payable to a customer is payment for a distinct good or service from the customer, then an entity shall account for the purchase of the good or service in the same way that it accounts for other purchases from suppliers as described in paragraph 606-10-32-26. Therefore, share-based payment awards granted to a customer for a distinct good or service to be used or consumed in the grantor's own operations are accounted for under this Topic.

**Pending Content:**

Transition Date: *(P) December 16, 2019; (N) December 16, 2019* | Transition Guidance: 718-10-65-15

Share-based payment awards granted to a customer shall be measured and classified in accordance with the guidance in this Topic (see paragraph 606-10-32-25A) and reflected as a reduction of the transaction price and, therefore, of revenue in accordance with paragraph 606-10-32-25 unless the consideration is in exchange for a distinct good or service. If share-based payment awards are granted to a customer as payment for a distinct good or service from the customer, then an entity shall apply the guidance in paragraph 606-10-32-26.

*718-10-15-7*

The guidance in the Overall Subtopic does not apply to equity instruments held by an employee stock ownership plan.

## 2.1.1    Issued in exchange for goods or services (updated September 2020)

ASC 718 applies to share-based payments issued to employees and nonemployees in exchange for goods or services to be used or consumed in a grantor's own operations and share-based payments issued by an investor to employees and nonemployees of an equity method investee in exchange for goods or services used or consumed in the investee's operations (refer to section 2.4 for further details on awards granted by an investor to employees and nonemployees of an equity method investee). The grantee's relationship with the grantor determines how certain provisions are applied. The following are the key differences in accounting for employee and nonemployee awards:

▸    Attribution of compensation cost – Share-based payments to employees are recognized over the service period, whereas share-based payments to nonemployees are recognized in the same period and in the same manner the entity would if it had paid cash for those goods or services (see section 4.1).

▸    Measurement of options and similar instruments – Share-based payments to employees are measured based on the expected term of the award, whereas share-based payments to nonemployees may be measured based on the expected term or the entity can elect to use the contractual term as the expected term, on an award-by-award basis (see section 7.3.2).

Therefore, determining whether the grantee is an employee or nonemployee is important because the grantee's status determines the accounting for the award.

ASC 718 also applies to share-based payments granted to a customer in exchange for a distinct good or service to be used or consumed in the grantor's own operations. In accordance with ASC 718-10-15-5A, an entity must consider the guidance in ASC 606-10-32-26, which states that if the amount of consideration payable to the customer exceeds the fair value of the distinct good or service that the entity receives from the customer, then the entity accounts for the excess as a reduction of the transaction price.

Share-based payments granted to customers in conjunction with a revenue arrangement that are not in exchange for a distinct good or service are accounted for under ASC 606, *Revenue from Contracts with Customers*, as consideration payable to a customer.[7] Entities that have adopted ASU 2019-08 are required to measure and classify these share-based payments in accordance with ASC 718. See our FRD, *Revenue from contracts with customers (ASC 606)*, for further details.

ASC 718 does not apply to equity or liability instruments issued in exchange for cash or other financial assets (e.g., instruments issued to a lender or investor in a financing transaction).

While this is not explicitly stated in ASC 718, we do not believe that this guidance would be applied to awards granted by a subsidiary to grantees of another subsidiary in a consolidated group or to grantees of the parent when reported in the grantor subsidiary's separate financial statements, if those awards are not for goods or services consumed in the grantor subsidiary's operations. This matter is addressed fully in section 2.3.3.

## 2.1.2    Based on or settled in the issuer's shares

ASC 718 applies not only to grants of shares or options, but also to liabilities that are based, at least in part, on the price of the issuer's shares (e.g., SARs payable in cash). As a result of the use of the term "in part," we believe that ASC 718 may apply to certain liabilities that are not settled in shares. For example, an entity may agree to pay the grantee $10,000 if the entity's share price is above $20 per share in two years. The fixed amount of cash is not based on the fair value of the grantor's shares. However, whether the $10,000 is paid is based on the fair value of the grantor's shares. Accordingly, we believe that the arrangement in question must be accounted for as a liability under ASC 718. Because the liability is subject to a market condition, the market condition must be incorporated into the estimate of the fair value of the award.

ASC 718 also applies to any obligation to issue equity instruments in exchange for goods or services to be used or consumed in a grantor's own operations. For example, ASC 718 applies to an obligation to grant shares equal in value to a stated monetary amount on the issuance date (e.g., a stated bonus amount, stated amount to be settled in shares or other share-settled debt, which would be classified as a liability as discussed in section 5.2.1).

Finally, the obligation does not have to be indexed solely to the issuer's shares to be subject to ASC 718. For example, an award indexed to both the value of the issuer's shares and the value of a commodity or some other variable would be in the scope of ASC 718. Further, as discussed in section 5.2.4, if the other variable does not meet the definition of a service, performance or market condition, the award would be accounted for as a liability under ASC 718.

---

[7]    Before the adoption of ASU 2019-08, while ASC 606 addressed the presentation of consideration payable to a customer by stating that it should be recognized as a reduction of the transaction price, the standard did not address when to measure these awards. Some entities nevertheless have analogized to the noncash consideration guidance in ASC 606 and measured these payments at contract inception, while others have used an ASC 718 approach and measured the payments at the grant date.

# 3        Measurement of equity-classified awards

## 3.1        Objective

The objective of accounting for equity instruments in the scope of ASC 718 is to measure the compensation cost of goods obtained or services received (compensation cost) in exchange for an award of equity instruments, based on the fair value of the award on the grant date, and to recognize that compensation cost in the financial statements over the employee's requisite service period or the nonemployee's vesting period. ASC 718 requires the use of a modified grant date approach, under which fair value is measured on the grant date without regard to service or performance conditions. Compensation cost generally is recognized only for awards for which the good is delivered or the service is rendered. That is, compensation cost is not recognized in the financial statements for those awards that do not vest because the service or performance conditions are not satisfied.

Compensation cost resulting from share-based payments should be recognized (expensed or capitalized) in the entity's financial statements in the same manner as cash compensation. For example, share-based payments issued to a grantee involved in the production process should be capitalized into inventory to the same extent as any cash compensation paid to the grantee.

The following sections discuss the measurement basis, the measurement date and the effect of service, performance and market conditions on the measurement of compensation cost associated with share-based payments to employees and nonemployees. Section 4 provides detailed guidance on recognizing the measured compensation cost in the entity's financial statements. Sections 6 and 7 provide detailed guidance on estimating the fair value of a share-based payment.

## 3.2        Measurement basis

### 3.2.1        Goods or services received versus equity instruments issued

The following excerpt from ASC 718 establishes the objective of accounting for share-based payments under the Topic:

> **Excerpt from Accounting Standards Codification**
>
> Compensation − Stock Compensation − Overall
>
> *Objectives*
>
> *718-10-10-1*
>
> The objective of accounting for transactions under share-based payment arrangements is to recognize in the financial statements the goods or services received in exchange for equity instruments granted or liabilities incurred and the related cost to the entity as those goods or services are received. This Topic uses the terms *compensation* and *payment* in their broadest senses to refer to the consideration paid for goods or services.
>
> **Pending Content:**
>
> Transition Date: *(P) December 16, 2019; (N) December 16, 2019* | Transition Guidance: 718-10-65-15
>
> The objective of accounting for transactions under **share-based payment arrangements** is to recognize in the financial statements the goods or services received in exchange for equity instruments granted or liabilities incurred and the related cost to the entity as those goods or services are received. This Topic uses the terms *compensation* and *payment* in their broadest senses to refer to the consideration paid for goods or services or the consideration paid to a customer.

Although ASC 718-10-10-1 establishes that compensation cost recognized in the financial statements should be based on the value of the goods or services received in exchange for the share-based payments, the FASB concluded that it is not feasible to measure directly the fair value of those goods or services (i.e., the amount for which those goods or services would be exchanged in the marketplace).

**Excerpt from Accounting Standards Codification**

**Compensation – Stock Compensation – Overall**

*Initial Measurement*

*718-10-30-2*

A share-based payment transaction shall be measured based on the fair value (or in certain situations specified in this Topic, a **calculated value** or **intrinsic value**) of the equity instruments **issued**.

This decision is consistent with the measurement basis for other forms of compensation, including cash and pension benefits, which are measured at the fair value of the asset transferred to the grantee or the liability incurred by the grantor. The FASB concluded that there was no compelling reason to measure share-based compensation on a different basis.

## 3.2.2    Fair value-based measurement

ASC 718 requires both public and nonpublic entities to value the equity instruments exchanged for goods or services based on the fair value of those instruments. However, certain alternatives (discussed later in this section) are available for instances in which fair value cannot reasonably be estimated. ASC 718-10-30-3 establishes the fair value-based method as the measurement basis for share-based payment arrangements.

**Excerpt from Accounting Standards Codification**

**Compensation – Stock Compensation – Overall**

*Initial Measurement*

*718-10-30-3*

An entity shall account for the compensation cost from **share-based payment transactions** in accordance with the fair-value-based method set forth in this Topic. That is, the cost of goods obtained or services received in exchange for **awards** of share-based compensation generally shall be measured based on the grant-date fair value of the equity instruments issued or on the fair value of the liabilities incurred. The cost of goods obtained or services received by an entity as consideration for equity instruments issued or liabilities incurred in share-based compensation transactions shall be measured based on the fair value of the equity instruments issued or the liabilities **settled**. The portion of the fair value of an instrument attributed to goods obtained or services received is net of any amount that a grantee pays (or becomes obligated to pay) for that instrument when it is granted. For example, if a grantee pays $5 at the **grant date** for an option with a grant-date fair value of $50, the amount attributed to goods or services provided by the grantee is $45.

**Pending Content:**

Transition Date: *(P) December 16, 2019; (N) December 16, 2019* | Transition Guidance: 718-10-65-15

An entity shall account for the compensation cost from **share-based payment transactions** in accordance with the fair-value-based method set forth in this Topic. That is, the cost of goods obtained or services received in exchange for **awards** of share-based compensation generally shall be measured based on the grant-date fair value of the equity instruments issued or on the fair value of the liabilities incurred. The cost of goods obtained or services received by an entity as consideration

for equity instruments issued or liabilities incurred in share-based compensation transactions shall be measured based on the fair value of the equity instruments issued or the liabilities **settled**. The portion of the fair value of an instrument attributed to goods obtained or services received is net of any amount that a grantee pays (or becomes obligated to pay) for that instrument when it is granted. For example, if a grantee pays $5 at the **grant date** for an option with a grant-date fair value of $50, the amount attributed to goods or services provided by the grantee is $45. An entity shall apply the guidance in paragraph 606-10-32-26 when determining the portion of the fair value of an equity instrument attributed to goods obtained or services received from a customer.

*718-10-30-4*

However, this Topic provides certain exceptions (see paragraph 718-10-30-21) to that measurement method if it is not possible to reasonably estimate the fair value of an **award** at the grant date. A **nonpublic entity** also may choose to measure its liabilities under share-based payment arrangements at intrinsic value (see paragraphs 718-10-30-20 and 718-30-30-2).

**Compensation – Stock Compensation – Awards classified as liabilities**

*Subsequent Measurement*

*718-30-35-1*

The fair value of liabilities incurred in **share-based payment transactions** shall be remeasured at the end of each reporting period through **settlement**.

ASC 718 refers to the required measurement basis as the fair-value-based method because the measurement method described in the standard conceptually is not fair value. Although the fair-value-based method uses fair value measurement techniques, the required measurement specifically excludes the effects of (1) service conditions, performance conditions and other restrictions that apply before the award vests, (2) reload features that may be included in the terms of the award and (3) contingent features that may require the grantee to return the equity instruments (or the realized gain from the sale of the equity instruments) at some point in the future. Such conditions, restrictions and features would be considered in a true fair value measurement.

ASC 718 and this publication refer to the required measurement as fair value, both for convenience and to distinguish it from other measurements, such as intrinsic value and calculated value. Any reference to fair value in ASC 718 and in this publication should be read to mean a fair value-based measurement determined in accordance with the requirements of ASC 718. This should not be confused with a strict definition of fair value or any other definition of fair value included in other sources of GAAP. Share-based payments are specifically excluded from the scope of ASC 820.

Section 6 of this publication provides guidance on applying the fair value-based method to measure share-based payments. Section 7 describes various valuation techniques (e.g., Black-Scholes-Merton formula and lattice models) for estimating the fair value of options and similar instruments (e.g., SARs).

## 3.2.3    If an entity cannot reasonably estimate fair value

Although it should be possible to reasonably estimate the fair value of most equity instruments at the grant date, ASC 718 recognizes that in rare circumstances, the terms of an equity instrument may make it impossible to do so. ASC 718-10-30-21 and ASC 718-20-35-1 provide the following guidance for accounting for equity instruments in these situations:

> **Excerpt from Accounting Standards Codification**
>
> Compensation – Stock Compensation – Overall
>
> *Initial Measurement*
>
> *718-10-30-21*
>
> It should be possible to reasonably estimate the fair value of most equity share options and other equity instruments at the date they are granted. Section 718-10-55 illustrates techniques for estimating the fair values of several instruments with complicated features. However, in rare circumstances, it may not be possible to reasonably estimate the fair value of an equity share option or other equity instrument at the grant date because of the complexity of its terms.
>
> Compensation – Stock Compensation – Awards Classified as Equity
>
> *Subsequent Measurement*
>
> *718-20-35-1*
>
> An equity instrument for which it is not possible to reasonably estimate **fair value** at the **grant date** shall be remeasured at each reporting date through the date of exercise or other **settlement**. The final measure of compensation cost shall be the **intrinsic value** of the instrument at the date it is settled. Compensation cost for each period until settlement shall be based on the change (or a portion of the change, depending on the percentage of the requisite service that has been rendered for an employee award or the percentage that would have been recognized had the grantor paid cash for the goods or services instead of paying with a nonemployee award at the reporting date) in the intrinsic value of the instrument in each reporting period. The entity shall continue to use the intrinsic value method for those instruments even if it subsequently concludes that it is possible to reasonably estimate their fair value.

The FASB considered whether awards for which the fair value could not be estimated at the grant date should be measured at intrinsic value at each reporting date until the fair value could be reasonably estimated. The entity at that time would measure the equity instruments at fair value (i.e., a final measurement of compensation cost would be made when the fair value became estimable). However, the FASB was concerned that permitting the final measurement of compensation cost to occur at the earliest date at which an entity determines fair value can be reasonably estimated could result in unintended consequences. An entity might attempt to justify a measurement date when its share price is lower than at the grant date, thereby reducing reported compensation cost. Additionally, the FASB believes it would be unusual for fair value to become reasonably estimable at some future date when it was not reasonably estimable on the grant date. As a result, the FASB decided to require remeasurement based on intrinsic value until settlement for all equity instruments for which it is not possible to reasonably estimate fair value at the grant date.

## 3.2.4    Exception for nonpublic entities that cannot estimate expected volatility

### 3.2.4.1    Calculated value

As described in section 3.2.2, ASC 718 requires both public and nonpublic entities to measure compensation cost associated with equity awards using the fair value-based method. However, ASC 718 provides an exception for nonpublic entities that cannot estimate fair value of equity instruments issued to employees and nonemployees because it is not practicable to estimate the expected volatility of the entity's share price.

*718-20-55-34*

Accounting for the tax effects of awards with graded vesting follows the same pattern illustrated in paragraphs 718-20-55-20 through 55-23. However, unless Entity T identifies and tracks the specific tranche from which share options are exercised, it would not know the recognized compensation cost that corresponds to exercised share options for purposes of calculating the tax effects resulting from that exercise. If an entity does not know the specific tranche from which share options are exercised, it should assume that options are exercised on a first-vested, first-exercised basis (which works in the same manner as the first-in, first-out [FIFO] basis for inventory costing).

## 4.4.2    Performance conditions

A performance condition (described more fully in section 3.4.3) is a condition that is based on the operations or activities of the grantor or the grantee, and it requires the grantee to provide services or deliver goods for a specified period of time. The condition may relate to the performance of the entire entity, a division or an individual grantee related to the grantor's operations (including an award issued by a vendor to a customer in exchange for goods or services that are distinct). Like a service condition, a performance condition is not incorporated into the grant-date fair value (or price) of an award, but it affects the quantity of awards recognized or, in some cases, which award (and corresponding fair value) is recognized. ASC 718 describes the accounting for awards with performance conditions as follows:

**Excerpt from Accounting Standards Codification**

**Compensation – Stock Compensation – Overall**

*Recognition*

*718-10-25-20*

Accruals of compensation cost for an award with a **performance condition** shall be based on the **probable** outcome of that performance condition – compensation cost shall be accrued if it is probable that the performance condition will be achieved and shall not be accrued if it is not probable that the performance condition will be achieved. If an award has multiple performance conditions (for example, if the number of options or shares a grantee earns varies depending on which, if any, of two or more performance conditions is satisfied), compensation cost shall be accrued if it is probable that a performance condition will be satisfied. In making that assessment, it may be necessary to take into account the interrelationship of those performance conditions. Example 2 (see paragraph 718-20-55-35) provides an illustration of how to account for awards with multiple performance conditions.

### 4.4.2.1    Period over which to recognize compensation cost

**Employee awards**

An employee share-based payment award with a performance condition may have an explicit service period (e.g., based on performance over a specified period) or it may have an implicit service period. ASC 718 defines an implicit service period as follows:

**Excerpt from Accounting Standards Codification**

**Compensation – Stock Compensation – Overall**

*Glossary*

*718-10-20*

*Implicit Service Period*

A service period that is not explicitly stated in the terms of a share-based payment award but that may be inferred from an analysis of those terms and other facts and circumstances. For instance, if an award of share options vests upon the completion of a new product design and it is probable that the design will be completed in 18 months, the implicit service period is 18 months.

The implicit service period generally is the period of time it is expected to take to achieve the performance condition (assuming the performance condition will be achieved). If the award is not subject to any other conditions, the implicit service period generally will be the employee's requisite service period over which the compensation cost will be recognized if it is probable that the performance condition will be achieved (see section 4.4.2.2).

**Nonemployee awards**

As discussed in section 4.1, compensation cost for a nonemployee award is recognized over the vesting period in the same period and in the same manner as if the entity had paid cash for the goods or services. When an award is subject to a performance condition, compensation cost is recognized if it is probable that the performance condition will be achieved (see section 4.4.2.2).

**4.4.2.2    Compensation cost is recognized if it is probable that the performance condition will be achieved**

Compensation cost must be recognized over the employee's requisite service period or the nonemployee's vesting period if it is probable that the performance condition will be satisfied. As discussed in section 4.4.1.3, the accounting policy elections for forfeitures only apply to service conditions. Therefore, when an award contains a service condition and a performance condition that is probable of being satisfied, an entity must either estimate forfeitures for the service that may not be rendered or goods that may not be delivered, or account for them as they occur in accordance with its accounting policy elections.

Entities that account for forfeitures as they occur would continue to assess whether it is probable that performance conditions will be satisfied in order to recognize compensation cost. ASC 718 defines the term "probable" as follows:

---

**Excerpt from Accounting Standards Codification**

Compensation – Stock Compensation – Overall

*Glossary*

*718-10-20*

*Probable*

The future event or events are likely to occur.

---

Accordingly, the trigger for recognition under ASC 718 is higher than the "more likely than not" or "best estimate" trigger that may be applied in other accounting areas. We believe that practice generally interprets the term "probable" to represent a likelihood of greater than 70% that an event will occur.

ASC 718-20-55-40 states that "the amount of compensation cost recognized (or attributed) when achievement of a performance condition is probable depends on the relative satisfaction of the performance condition based on performance to date." We believe that in almost all cases, compensation cost must be recognized for each tranche on a ratable basis over the employee's requisite service period when the requisite service period is based on a performance condition. Our view is based on the concept that the services are being provided ratably over the requisite service period and, accordingly, the compensation cost associated with those services also should be recognized ratably (using the accelerated attribution model).

While ASC 718-20-55-40 suggests that there may be circumstances in which the performance condition will not be satisfied ratably over the employee's requisite service period and it may be appropriate to recognize compensation cost based on the achievement of the performance condition, we understand that the FASB staff believes that it would be extremely rare for compensation cost to be recognized other than ratably over the employee's service period. In such circumstances, the FASB staff believes

that the amount of compensation cost recognized to date should never be less than that which would have been recognized if the expense were recognized ratably over the service period. As described in section 4.1, compensation cost for nonemployee share-based payment awards is recognized in the same period and in the same manner as if the entity had paid cash for the goods provided or services rendered, which may or may not result in ratable compensation cost attribution.

A performance condition does not affect measurement of the award, similar to a service condition. An entity also will recognize compensation cost for employee awards that cliff vest based on a performance condition generally in the same way it does for awards that cliff vest based only on a service condition.

For example, assume the same fact pattern described in Example 1 (ASC 718-20-55-6 through 55-9, see section 4.4.1.6), except that instead of the award vesting at the end of three years, the award will vest if the market share for one of the entity's products increases by 10%. To vest in the award, the recipient must remain employed by the entity until the performance condition is satisfied. The entity estimates that it is probable that the market share of the product will increase by 10% by the end of year three.

Based on the terms of the performance condition, the award has a three-year implicit service period, and therefore has a three-year requisite service period. The accounting for this award, assuming no change in the estimate of the requisite service period, will be essentially the same as the accounting described in Example 1 (ASC 718-20-55-6 through 55-9, see section 4.4.1.6). However, if an employee award is subject to graded vesting, the timing of expense recognition will differ between a performance-based award (which would require recognition on an accelerated basis) and an award containing only a service condition (for which either straight-line or accelerated attribution methods would be acceptable).

### 4.4.2.2.1    *Performance conditions based on IPOs, change in control and other liquidity events*

As discussed in section 4.4.2.2, we believe that "probable" is generally interpreted as in excess of a 70% likelihood of occurrence. Historically, compensation cost related to performance awards that only vest on consummation of a business combination was recognized when the business combination was consummated. Accordingly, recognition of compensation cost was deferred until consummation of the transaction, even when it became likely that the business combination would be consummated. This position is based on the principle established in the guidance on business combinations in ASC 805-20-55-50 and 55-51. We believe a similar approach should be applied under ASC 718 and it also should be applied to other types of liquidity events, such as IPOs and changes in control.

### 4.4.2.2.2    *Performance conditions based on regulatory approval (added October 2017)*

As stated in ASC 718-10-20, obtaining regulatory approval to market a specified product is one kind of a performance condition. In the life sciences industry, an example of this is an award that may vest when regulatory approval for a drug candidate is obtained. Entities need to carefully evaluate whether approval is probable to determine when compensation cost should be recognized. The determination of whether regulatory approval is probable should be based on the facts and circumstances, and an entity should consider the guidance in section 4.4.2.2.1, as well as its application of the term "probable" in other areas of US GAAP when making this evaluation. For instance, an entity that has evaluated the probability of regulatory approval to apply other guidance (e.g., to apply the variable consideration constraint under ASC 606 to milestone payments due when regulatory approval is obtained) should consider this information when evaluating whether it is probable that a performance condition will occur under ASC 718.

**4.4.2.3**    **Changes in estimate of the probability of achievement of the performance condition**

If an entity initially determines that it is not probable that the performance condition will be satisfied and later determines that the performance condition likely will be satisfied (or vice versa), it should account for the effect of the change in estimate in the period of the change by recording a cumulative catch-up adjustment to retroactively apply the new estimate. Essentially, the change in estimated quantity of awards expected to vest is recognized by truing up cumulative compensation cost recognized as if the new estimate had been applied since the service inception date.

---

**Illustration 4-1:    Change in estimate of probability of achievement of performance condition**

Assume the same facts described in the example in section 4.4.2.2 (which uses the same fact pattern in Example 1 from ASC 718-20-55-6 through 55-9 in section 4.4.1.6), except that initially the entity does not expect the performance condition to be satisfied. If it is not probable that the award will vest, the entity will not recognize any compensation cost.

In year two, sales of the product begin to increase, and the entity estimates that it is now probable that market share will increase 10% by the end of year three. The entity must recognize the change in estimate in year two (by truing up compensation cost in year two as if the employer had estimated at the grant date that the performance condition would be achieved) and recognize the remaining compensation cost over the remaining requisite service period. Based on the current estimate of forfeitures (in this example, the entity has elected to estimate forfeitures for employee awards, and the forfeiture rate estimate at the end of year two is 6%),[17] the entity estimates the number of awards that will vest is 747,526 (900,000 × .94. Accordingly, the revised estimated compensation cost to be recognized over the requisite service period is $10,981,157 (747,526 × $14.69). By the end of year two, the employees have provided two-thirds of the requisite service. The entity must record a cumulative adjustment to record two-thirds of the measured compensation cost. The required journal entries at the end of year two are:

| | | |
|---|---|---|
| Dr. Compensation cost | $ 7,320,771 | |
| Cr. Additional paid-in capital | | $ 7,320,771 |

To recognize compensation cost ($10,981,157 × (2/3 vesting period) = $7,320,771)

| | | |
|---|---|---|
| Dr. Deferred tax asset | $ 2,562,270 | |
| Cr. Deferred tax benefit | | $ 2,562,270 |

To recognize the deferred tax asset for compensation cost ($7,320,771 × statutory tax rate of 35%[18] = $2,562,270)

After recording the cumulative adjustment in year two, the accounting in year three and upon exercise will be the same as the accounting for the award with the service condition illustrated in the example of an award subject to cliff vesting in section 4.4.1.6. Although this example is for an employee award, the concepts also apply to a nonemployee award, but the timing of cost attribution may differ since compensation cost for a nonemployee award is recognized as if the entity had paid cash for the goods or services (see section 4.1).

---

[17] As discussed in section 4.4.2.2, if the award contains a performance condition that is probable of being satisfied, the entity would apply its forfeiture accounting policy election to the service condition in the award.

[18] The tax rate of 35% is consistent with the example included ASC 718-20-55-6 through 55-9 in section 4.4.1.6.