```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   THOMAS S. SWANSON, Individually and On                   :
   Behalf of All Other Similarly Situated,                  :   MEMORANDUM DECISION
                                                            :   AND ORDER
                              Plaintiff,                    :
                                                            :   20-CV-5518 (BMC)
                  - against -                               :
                                                            :
                                                            :
   INTERFACE, INC., DANIEL T. HENDRIX,                      :
   JAY D. GOULD, and BRUCE A.                               :
   HAUSMANN                                                 :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff and his putative class are unaffiliated shareholders of Interface, Inc., a company based in Atlanta that makes "modular carpets" – square sections of carpet that can be connected to cover floor space. Plaintiff brings this action against Interface and its officers for alleged violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, and SEC Rule 10b-5, 17 CFR § 240.10b-5 (2007). Defendants seek to dismiss plaintiff's amended complaint because it fails to allege: (1) a material misstatement; (2) a strong inference of scienter; (3) loss causation; and (4) a control person claim. I deny the motion for the following reasons.

I. **Material Misstatement**

The amended complaint alleges facts sufficient to demonstrate a "'substantial likelihood that the disclosure of the omitted fact[s] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (quoting, TSC Indus., Inc. v. Northway, Inc., 426 U.S.

438, 449 (1976)); see also Rombach v. Chang, 355 F.3d 164, 178 n.11 (2d Cir. 2004). The amended complaint provides quantitative and qualitative information demonstrating that from the second quarter of 2015 until the second quarter of 2016, Interface artificially inflated its pre-tax income and earnings per share ("ESP"). See Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011); ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009); Basic Inc. v. Levinson, 485 U.S. 224, 240 (1988).

According to the amended complaint, in mid-2015, Interface learned it was required to pay an unexpected $750,000 death benefit. Instead of writing off this expense against its revenue, Interface reduced its management bonus by $500,000, and then took the remaining $250,000 out of its net income. Next, Interface further underestimated its bonus accrual and related expenses by $1.58 million. This accounting inflated Interface's ESP by $0.02 and made it appear that Interface's ESP reached an all-time high of $0.33 – beating consensus estimates by about 13.5%.

This pattern continued for the next three quarters. In the third quarter of 2015, rather than report a $0.04 miss from analyst estimates, Interface inflated its pre-tax income by $3.12 million or about 12%. It did this by improperly recording the cash surrender value ("CSV") of a consultant's life insurance policy, reducing the expense of a stock grant, understating bonus accrual by $1.57 million, and paying an annual consultant bonus pro-rata. Similarly, in the fourth quarter of 2015, Interface continued to incorrectly report the CSV of the consultant's insurance policy, pay the consultant's bonus pro-rata, and under-accrued management bonuses by $949,000. In total, these accounting procedures overstated Interface's pre-tax income by $1.63 million, or 7%. In the first quarter of 2016, Interface reversed $740,000 of management bonus accrual, increased the CSV of the consultant's insurance policy, and understated the firm's

stock expenses for the quarter by $387,000. This overstated pre-tax income by approximately $2.43 million, or 15%, and inflated ESP by $0.03. Finally, in the second quarter of 2016, Interface continued to manipulate the CSV of the consultant's insurance policy, improperly reduced bonus expenses by $400,000, and understated its stock-based compensation by $774,000. This overstated pre-tax income by $1.9 million, or 7%, and inflated EPS by $0.02.

The amended complaint also alleges defendants repeatedly touted these favorable numbers, which affected independent projections of the company's future financial health. It is plausible to infer from this narrative that defendants' activities positively affected Interface's stock price and prompted plaintiff and putative class members to invest during this period. It is is also plausible that the SEC investigation caused Interface's stock price to fall because it both raised the possibility of sanctions and ultimately confirmed that Interface's real ESP and pre-tax income were not what it reported for this period.

Although these misstatements may have been less than 5% of Interface's total expenses, there is no "bright-line numerical test" or specific formula for assessing materiality. See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 204 (2d Cir. 2009). The Second Circuit has repeatedly stressed that courts cannot rely solely on the quantitative impacts of a misstatement but must consider it in conjunction with qualitative factors. See Litwin v. Blackstone Group, L.P., 634 F.3d 706, 719 (2d Cir. 2011). Defining materiality using some rigid percentage-based computation, especially one where the denominator is picked by defendants, would both permit Courts and defendants to move the goal posts and "effectively sanction misstatements . . . so long as the net effect" was just below that threshold. See City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp., 875 F. Supp. 2d 359, 368 (S.D.N.Y. 2012) (five percent threshold is "merely a rule of thumb" and

"materiality cannot be reduced to a numerical formula"). Here, it is plausible that pre-tax revenue, ESP, and public statements touting the company's health using these two manipulated numbers were just as material to a prospective investor's decision to buy Interface's stock as the company's overall expenses.

## II. Scienter

The amended complaint also satisfies Rule 9(b)'s heighted pleading requirement for scienter because it alleges particular facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness." Setzer v. Omega Healthcare Invs., Inc., 968 F.3d 204, 212 (2d Cir. 2020). The amended complaint alleges that defendants Lynch and Bauer knew Interface was not going to make the consensus forecasts for EPS, so they repeatedly took actions that they knew violated Generally Accepted Accounting Principles ("GAAP") to meet those targets. As described in detail above, from the second quarter of 2015 until the second quarter of 2016, Lynch and Bauer inflated Interface's EPS by understating its stock-based compensation, bonus accrual, and consultant costs.

The scienter allegation becomes even more plausible when these facts are viewed in conjunction with the facially obvious detail that defendants began this irregular accounting practice without explanation in the middle of 2015 and only continued it for a year. This further demonstrates that the ESP and pre-tax income misstatements were the product of "highly unreasonable [procedures] and represented an extreme departure from the standards of ordinary care . . . [suggesting] that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Novak, 216 F.3d at 308 (quoting Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38, 47 (2d Cir. 1978)); cf. Setzer v. Omega Healthcare Inv'rs, Inc., 968 F.3d 204, 215 (2d Cir. 2020) (alleged conduct was sufficiently serious to support an

4

inference of scienter where executives "had to know that revealing the full extent of [the company's] performance problems would have been troubling news to its investors"). Indeed, based on these facts, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324.[1]

### III. Loss Causation

Similarly, the amended complaint's allegations support an inference that defendants' recklessness caused "the fraudulent statements or omissions" which resulted in "the actual loss suffered." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001); see Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (demonstrating loss causation at the pleading stage only requires showing a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." (quoting Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d Cir. 2003))).

Specifically, once the SEC concluded its investigation on September 28, 2020, and found "[f]rom the second quarter of 2015 through the second quarter of 2016 Interface . . . reported earnings per share that did not accurately reflect the company's underlying performance," Interface's stock price fell 3.3% one day later. It is plausible that this drop would not have occurred but for the accounting practices that improperly raised Interface's stock price by inflating the company's pre-tax income. See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 234 (2d Cir. 2014) ("We agree with the Eleventh Circuit that, in general, '[s]o long as the falsehood remains uncorrected, it will continue to taint the total mix of

---

[1] This explains why defendants' motion to dismiss plaintiff's Section 20(a) claim also fails – the amended complaint's factual allegations demonstrate that defendants were "culpable" participants who caused the injuries that violated Section 10(b) and Rule 10b-5. See ATSI Commc'ns, Inc. v. Sharr Fund, Ltd., 493 F.3d 87, 106 (2d Cir. 2007).

available public information, and the market will continue to attribute the artificial inflation to the stock, day after day.'" (quoting, Findwhat Investor Group v. Findwhat.com, 658 F.3d 1282, 1310 (11th Cir. 2011))).

Relatedly, it is not fatal to plaintiff's case at this stage that Interface's stock price fell 3.3% one day after the SEC released its findings in September 2020 and recovered from that loss soon after. See Acticon AG v. China North East Petroleum Holdings Ltd., 692 F.3d 34, 39-40 (2d Cir. 2012) ("The [district] court correctly noted that the fact that the price rebounded does not, at the pleading stage, negate the plaintiff's showing of loss causation."); Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 310 F.R.D. 69, 96 (S.D.N.Y. 2015) ("[a] two-to three-day window is common in event studies" and "[d]efendants' insistence that it is impermissible for [an expert] to rely on empirical evidence from the day following the Class Period has no support"); In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 287-88 (S.D.N.Y. 2008) (press release announcing that the SEC had commenced an investigation into certain stock options grants, coupled with a 7.5% stock price drop the next day, created a sufficient causal connection to plead loss causation).

Defendants' motion to dismiss is accordingly denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
June 5, 2022

6