# Exhibit C-2



October 25, 2022

**<u>VIA EMAIL</u>**
([hfischman@paulweiss.com](mailto:hfischman@paulweiss.com))
Harris Fischman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:     *Thomas S. Swanson* v. *Interface, Inc., Daniel T. Hendrix, Jay D. Gould, Bruce A. Hausmann, and Patrick C. Lynch.,* No. I :20-cv-05518-BMC (E.D.N.Y.)

Dear Mr. Fischman:

We write regarding the Subpoena *Duces Tecum* dated August 25, 2022 (the "Subpoena") directed to Chartwell Investment Partners ("Chartwell"). Chartwell responds to the Subpoena and the requests set forth therein (the "Requests," and each a "Request") as follows:

## <u>GENERAL RESPONSES AND OBJECTIONS</u>

Chartwell incorporates by reference each and every General Objection set forth below into each specific response herein. A specific response may repeat a General Objection for emphasis or some other reason. However, the omission of any General Objection in any specific response is not intended to and shall not be construed as a waiver of any General Objection.

Furthermore, by responding to any Request, Chartwell does not waive any objection that may be applicable to:  (a) the use, for any purpose, by any party, of any documents produced in response to the Request; or (b) the admissibility, relevance, or materiality of any of the documents in this case.

1. Chartwell objects to each and every Request to the extent that it seeks to impose obligations beyond those set forth in the applicable rules and regulations.

2. Chartwell objects to each and every Request to the extent that it is overbroad, vague, ambiguous, and confusing, and would require Chartwell to speculate as to the nature and scope of the documents sought thereby.

3. Chartwell objects to each and every Request to the extent that it seeks documents that are neither relevant to the subject matter of the underlying action nor reasonably calculated to lead to the discovery of admissible evidence.

4. Chartwell objects to each and every Request to the extent that responding to the Request would impose an undue burden on Chartwell and require it to engage in an excessive expenditure of time and/or money.  Chartwell will respond to each Request based on information currently and readily available to it through reasonable investigation.  Chartwell expressly disclaims any greater obligation to obtain information in response to each Request.

5. Chartwell objects to each and every Request to the extent that it calls for the production of

1205 Westlakes Drive   l   Suite 100   l   Berwyn, Pa   l   19312   l   610-296-1400



documents subject to a claim of privilege and/or immunity, including, without limitation, the attorney-client privilege, work product doctrine, and/or any other applicable statutory or common law privilege or protection. The inadvertent production of any document disclosing any information subject to such privileges and/or protections is not intended to relinquish any privilege and/or protection and shall not be deemed to constitute a waiver of any applicable privilege and/or protection.

6. Chartwell objects to each and every Request to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In responding, Chartwell does not admit the factual or legal premise of any Request.

7. The objection, failure to object, or an agreement to produce responsive documents or information does not constitute a representation by Chartwell that any such documents or information exist or are within its possession, custody, or control.

8. To the extent that each and every Request calls for the production of documents or things that contain information of which only a part is responsive or discoverable, Chartwell objects and reserves the right not to produce documents or things in response to the Request except on a redacted basis.

9. Chartwell objects to each and every Request to the extent that it seeks the production of documents that are unreasonably cumulative, duplicative, or that are otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive, including publicly available sources.

10. Chartwell objects to each and every Request to the extent that it purports to require the production of documents in the possession, custody, or control of persons or entities other than Chartwell. Chartwell will only produce documents within its possession, custody, or control.

## SPECIFIC RESPONSES AND OBJECTIONS

### SPECIFIC RESPONSES

1. All Documents, including, but not limited to, structured data, containing: (i) the date(s) and time(s) of any Purchase or Sale by Steamfitters of Interface Securities; (ii) the number of units exchanged in each such transaction; (iii) the price that Steamfitters paid or received for each such transaction; and (iv) the Person, including brokers or agents, from or through whom Steamfitters made each such transaction. The spreadsheet should also identify whether each investment position was registered to Steamfitters and held in Steamfitters' own name or held in "street name" by Steamfitters' broker or agent on its behalf. This covers the Relevant Time Period.

   **See enclosed Item 1 - Steamfitters TILE trades file covering the Relevant Time Period.**

2. All structured trading activity Excel spreadsheets containing the date and terms of any swap, derivative, hedge, short position, or other transaction by which Steamfitters' economic exposure to either (a) its



holdings of lnterface Securities; or (b) any Purchase or Sale of lnterface Securities was offset, reduced, or limited either directly or indirectly.

**No such trading activity applies to the Chartwell Small Cap Value strategy for which the Steamfitters' portfolio is managed as it invests only in U.S. small capitalization equity common stock and does not invest in swaps, derivatives, hedges, short positions or other transaction.**

3. All Documents and Communications concerning any of Steamfitters' investments in Interface Securities identified in Request No. 1 or 2.

   **See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

4. All Documents that constitute, record, or in any way memorialize any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities by Steamfitters or by any other Person on Steamfitters' behalf.

   **See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

5. All Documents that explain or describe any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities by Steamfitters or by any other Person on Steamfitters' behalf, including not limited to all documents concerning the reasons for or purposes of Steamfitters' actual, recommended, or contemplated Purchase, Sale, or decision to hold Interface Securities.

   **See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

6. All Documents, other than those responsive to Request Nos. 3-5, that in any way relate to, or were used or relied upon in connection with, any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities by Steamfitters or by any other Person on Steamfitters' behalf.

   **See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

7. All Communications between or among You, Steamfitters, and any Outside Advisor concerning any actual, recommended, or contemplated transactions identified in Request No. 1 or 2.

   **See enclosed Items 7, 9, 10 and 11 – client statements, Small Cap Value commentary, review and attribution.**

8. Documents sufficient to identify all Persons (including both Steamfitters' employees and Outside Advisors) involved in evaluating whether Steamfitters should buy, sell, or hold an investment in Interface Securities, and all Communications with such Persons.

   **See enclosed Items 8 and 17 – Small Cap Value team slides 2016 – 2020.**

1205 Westlakes Drive    |    Suite 100    |    Berwyn, Pa    |    19312    |    610-296-1400

9.  Documents concerning or analyzing the performance of, or realized or unrealized gains or losses on, Steamfitters' investment in Interface Securities, including the methodology that You or Steamfitters used to calculate any realized or unrealized gain or loss.

**See enclosed Items 7, 9, 10 and 11 – client statements, Small Cap Value commentary, review and attribution.**

10. All Documents concerning the accounting treatment of Steamfitters' investment in Interface Securities.

**See enclosed Items 7, 9, 10 and 11 – client statements, Small Cap Value commentary, review and attribution.**

11. All financial statements or profit and loss statements reflecting Steamfitters' gains or losses from transactions in Interface Securities.

**See enclosed Items 7, 9, 10 and 11 – client statements, Small Cap Value commentary, review and attribution.**

12. Documents sufficient to identify any individual Security or investment portfolio monitoring services that Steamfitters utilized.

**Chartwell is not aware of any individual security or investment portfolio monitoring services that Steamfitters utilized. Note that Chartwell's discretionary authority to invest client's assets allows for trading and related research to be handled entirely by Chartwell portfolio managers.**

13. All Documents concerning the efficiency of the market for Interface Securities.

**See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

14. All Documents concerning Interface's business and financial condition, including but not limited to analyst or research reports.

**See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

15. All Documents concerning Interface's Securities prices or movements thereof.

**See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

16. All Documents concerning Your or Steamfitters' reliance on or knowledge of Interface's Securities prices or movements thereof.

**See enclosed Items 3-6, 13-16 - TILE Portfolio Manager (PM) business review, notes and emails to team trades file covering the Relevant Time Period.**

17. All Documents sufficient to show Your investment decision-making structure, including charters, by-laws, organizational charts, and any documents that describe any internal department, staff, or employees that provide investment analysis, advice, reports, or guidance to You, or oversee or supervise any external individuals or organizations that provide investment analysis, advice, reports, or guidance to

1205 Westlakes Drive    |    Suite 100    |    Berwyn, Pa    |    19312    |    610-296-1400



You, including but not limited to documents sufficient to show all individuals who had any involvement in making investment decisions on Steamfitters' behalf or in advising Steamfitters in making investment decisions.

**See enclosed Items 8 and 17 – Small Cap Value team slides 2016 – 2020.**

18. All Documents concerning Your guidelines policies, procedures, practices, rules, due diligent requirements, goals, or criteria for the Purchase, Sale, or decision to hold, any Securities, in effect at the time during the Relevant Time Period.

**See enclosed Items 18 – Steamfitters - Mandate Change LOI, old investment guidelines (in affect prior to account acquisition).**

19. All Documents concerning any policies or procedures for the review or authorization of investment transactions by You or on Steamfitters' behalf during the Relevant Time Period, including Documents evidencing the identity of any Person who was or was to be involved in such review or authorization.

**Chartwell objects to Request No. 19 on the grounds that it seeks highly confidential and proprietary information and analyses the disclosure of which would harm Chartwell. Nothwithstanding this objection, we are providing the below summary:**

**New clients hire Chartwell to manage their portfolio assets in one of several equity or fixed income mandates that we offer. Upon hire, an investment management agreement, granting Chartwell discretionary authority, is reviewed and signed by both the client and an authorized manager of Chartwell. This agreement authorizes Chartwell, in our sole discretion and without first consulting the client, to direct the investment and reinvestment of the portfolio assets in securities and cash or cash equivalents. Clients provide a copy of their plan investment guidelines which the lead portfolio manager reviews and may or may not request adjustments appropriate to the strategy/mandate. Mandate specific guidelines are entered into our order management system in advance of the new account funding by our Operations team. After requisite administrative steps in the new account setup process are completed and the portfolio account is funded, trading commences in the following fashion.**

**The Firm acts as an adviser to both investment companies registered under the Investment Company Act of 1940 ("registered funds") and other clients ("investment accounts"). When registered funds and investment accounts are managed side-by-side, firm personnel must strictly follow the policies and procedures outlined in our Trade Allocation Policy to ensure that accounts are treated in a fair and equitable manner, and that no client or account is favored over another. When registered funds and investment accounts are trading under the same investment product, and thus trading the same securities, shares are allocated on a pro-rata basis based on market value, and all portfolios obtain the same average price.**

**Orders are entered into our order management system (OMS) by the portfolio manager (PM) and sent to the trade blotter. The trading desk is notified when a new order is posted, which augments verbal communication between the PM and trader. Orders are created based on targeted weighting or targeted total share amount, and can include other instructions such as limits, day only orders, etc.**

**Using the automated allocation function in our OMS, the PM allocates block orders across the various client portfolios that are managed in that investment product. Allocations are calculated**



based on the respective market values of the client portfolios at the time of the allocation with real-time consideration of all outstanding trades on the blotter.  In certain cases, target weightings will vary across different products trading the same security (e.g. Small Cap Growth and Smid Cap Growth), in which case the order allocation is tailored by the PM to achieve the correct respective weightings per portfolio.  The PM reviews the allocations for accuracy to ensure that all portfolios have the desired target weighting for each respective product.

As the order is completed by the broker, the trader enters the fill(s) into our OMS and the average price for the trade is automatically calculated by our OMS and displayed on the trade blotter.  The same average price is allocated to every client portfolio included in the block trade. Pre-trade compliance in our OMS automatically screens all trades for potential violations of portfolio specific restrictions. Trade details and related share allocations are automatically communicated to the various brokers chosen by the traders and finalized. Our Operations team affirms trades with the custodian via automated interface and reconciles holdings and transaction data between our records and the custodian's.

20. All Documents, including but not limited to structured data, containing: (i) the date(s) and time(s) of any Purchase or Sale by Steamfitters' of any Securities of any company other than Interface; (ii) the number of units exchanged in each such transaction; (iii) the price that Steamfitters' paid or received for each such transaction; (iv) the Person, including brokers or agents, from or through whom Steamfitters made each such transaction; and (v) whether each investment position was registered to Steamfitters' and held in its own name or held in "street name" by Steamfitters' broker or agent on its behalf. This covers the Relevant Time Period.

**Chartwell objects to Request No. 20 on the grounds that it is ambiguous, overly broad, unduly burdensome, and unreasonably requires Chartwell to speculate as to the nature and scope of the information sought thereby. Notwithstanding these objections we will produce in this case monthly account statements provided to Steamfitters covering the subject matter and Relevant Time Period.**

21. All Documents that constitute, record, or in any way memorialize any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

**Chartwell objects to Request No. 21 on the grounds that it is ambiguous, overly broad, unduly burdensome, and unreasonably requires Chartwell to speculate as to the nature and scope of the information sought thereby. Notwithstanding these objections we will produce in this case monthly account statements provided to Steamfitters covering the subject matter and Relevant Time Period.**

22. All Documents that explain or describe any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

**Chartwell objects to Request No. 22 on the grounds that it is ambiguous, overly broad, unduly burdensome, and unreasonably requires Chartwell to speculate as to the nature and scope of the information sought thereby. Notwithstanding these objections we will produce in this case monthly account statements provided to Steamfitters covering the subject matter and Relevant Time Period.**

23. All Documents, other than those responsive to Request No. 21 or 22, that in any way relate to, or

were used or relied upon in connection with, any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

**Chartwell objects to Request No. 23 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and unreasonably requires Chartwell to speculate as to the nature and scope of the information sought thereby.**

24. All Documents concerning or analyzing the performance of, or realized or unrealized gains or losses on, Steamfitters' investment in any Securities of any company other than Interface, including the methodology that Steamfitters or You used to calculate any realized or unrealized gain or loss.

    **Chartwell objects to Request No. 24 on the grounds that it is ambiguous, overly broad, unduly burdensome, and unreasonably requires Chartwell to speculate as to the nature and scope of the information sought thereby. Notwithstanding these objections we will produce in this case monthly account statements provided to Steamfitters covering the subject matter and Relevant Time Period.**

25. All agreements between You and Steamfitters.

    **See enclosed Items 25 – Steamfitters' 2018 Consent Form and CP agreement.**

26. All Documents sufficient to identify any current or potential Class member of which You are aware; and, for each identified Person, all Documents responsive to Request Nos. 1- 7 as it relates to each identified Person.

    **We are not aware of any other current or potential Class member.**

27. To the extent not covered by another request, all Communications between You and Plaintiff or Plaintiffs' counsel concerning this Action.

    **See enclosed Item 27 – Steamfitters 449 Pension Subpoena Production Notice of 10.2022.**

This concludes Chartwell's initial production in response to the referenced subpoena request.

Sincerely,

LuAnn Molino
Chief Compliance Officer

Cc:    Robert Morrison (Robert.Morrison@RaymondJames.com)