# Exhibit D-7

Chartwell Investment Partners
*STEAMFITTERS LOCAL #449 PENSION FUND (VALUE)*
*August 31, 2020*

Portfolio Value as of July 31, 2020 :  5,041,630.29

Portfolio Value as of August 31, 2020 :  5,256,430.78

# PERFORMANCE SUMMARY

| | August-20 | Year To Date | Last 12 Months | 2 Years Annualized | Annualized 04-09-18 To 08-31-20 |
|---|---|---|---|---|---|
| Account | 4.26 | -18.69 | -8.87 | -9.28 | -3.96 |
| Russell 2000 Value | 5.39 | -17.71 | -6.14 | -10.62 | -3.89 |

Account inception date is 04-09-18

CONFIDENTIAL                                    Chartwell_Interface Production_Bates No. 000047

# CONSENT FORM

**Client:** Steamfitters Local #449 Pension Fund

☒ **YES,** [I/we/my entity] understand that Columbia Partners L.L.C., Investment Management has agreed to sell its fixed income and equity business to Chartwell Investment Partners LLC.

[I/we/my entity] consent(s) to the assignment of my/our Investment Management Agreement from Columbia Partners to Chartwell as described in the attached letter and wish to continue [my/our/my entity's] existing investment management relationship once this transaction closes.

By: _Joseph M. Little_

Name: Joseph M. Little

Title: Trustee

Date Signed: 2/16/18

---

COLUMBIA PARTNERS

CONFIDENTIAL

Chartwell_Interface Production_Bates No. 000211

# COLUMBIA PARTNERS, L.L.C. INVESTMENT MANAGEMENT
## Investment Advisory Agreement

**THIS INVESTMENT ADVISORY AGREEMENT** (this "Agreement") is between Columbia Partners, L.L.C. Investment Management (the "Adviser") and **Steamfitters Local 449 Pension Fund**, (the "Client"). The Adviser is registered as an investment adviser under the Investment Advisers Act of 1940, as amended, and the Client seeks to engage the Adviser's services as to those assets of the Client identified on Schedule A *(Description of Account and Name of Account)* hereto (the "Account"). The terms of this Agreement are effective as of the date last set forth below (the "Effective Date").

1. **Appointment of the Adviser.** The Client hereby appoints the Adviser as the investment adviser to the Account with the power to supervise and manage the assets of the Account in accordance with the terms and conditions of this Agreement, and the Adviser hereby accepts such appointment. The Client authorizes the Adviser, in the sole discretion of the Adviser and without prior consultation with the Client, to make investment decisions for the Account, it being understood that the Adviser shall have complete discretion subject to the Client's investment guidelines attached hereto as Schedule B, as to the nature, amount and timing of all transactions to be effected in the Account.

2. **Registered Adviser.** The Adviser represents that it is registered as an Investment Adviser under the Investment Advisers Act of 1940, as amended, and, in addition, is qualified to serve as an "investment manager" within the meaning of Section 3(38) of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to those clients subject to ERISA. The Adviser acknowledges that through the term of this Agreement it will serve as such an investment manager and shall be a "fiduciary" within the meaning of Section 3(21)(A) of ERISA with respect to accounts subject to ERISA. Further, the Adviser will, at its own expense, be bonded in such manner and to such extent as may be required under Section 412 of ERISA.

3. **Custodian.** The Client has designated a custodian (the "Custodian") who has custody of the Account assets and is responsible for the collection of interest, dividends, distributions and other income (whether in cash or securities) attributable to the assets in the Account. Legal ownership of all assets will reside with the Client. The Adviser may not act as the Custodian. Client will direct the Custodian to accept settlement instructions issued by the Adviser for the Account, and the Adviser shall not be liable to the Client for: See Schedule A *(Description of Account and Name of Custodian)*.

    a. any failure of the Custodian to perform its responsibilities to the Account, including, but not limited to, any losses that arise from the failure of the Custodian to notify the Adviser of any notices affecting called securities, deadline expirations, dates and capital reorganization events affecting the securities in the Account or

    b. for any liability or loss with respect to the transmittal or safekeeping of cash, securities, or other assets.

---

CONFIDENTIAL                                                    Chartwell_Interface Production_Bates No. 000212

4. **Brokerage.**

a. The Adviser is hereby authorized on behalf of the Client to place orders for the Account with brokers selected by the Adviser.  The Adviser will not be responsible for any act or omission by brokers and dealers selected by the Adviser with reasonable care unless it is determined to be due to the negligence of the Adviser.

b. In accordance with Section 28(e) under the Securities Exchange Act of 1934, the Adviser may cause the brokers executing transactions for the Account to be paid commissions above those another broker or dealer might charge, after determining in good faith that such amount of commission was reasonable in relation to the value of the brokerage and research services provided to the Adviser by such broker.

c. It is understood that when the Adviser determines that it would be appropriate for the Client and one or more of the other accounts managed by the Adviser ("Managed Accounts") to purchase or sell a security, the Adviser will seek to execute orders for the Client and for such Managed Accounts on a basis which the Adviser considers equitable, but that equality of treatment of all Managed Accounts is not assured.  In such situations, the Adviser may (but shall not be required to) place orders for the Client and each Managed Account simultaneously and if all such orders are not filled at the same price, the Adviser may cause the Client and each Managed Account to pay or receive the average of the prices at which the orders were filled for the Client and all Managed Accounts.  If all such orders cannot be fully executed under prevailing market conditions, the Adviser may allocate the securities traded among the Client and the Managed Accounts in a manner which it considers equitable, taking into account the size of the order placed for the Client and each such Managed Account as well as any other factors which it deems relevant.

5. **Short Term Investments.** The Adviser may invest cash in, among other things, money market instruments; short term US government securities and money market mutual funds.

6. **Account Information.** Manager shall prepare and transmit such monthly, quarterly and year end reports as may be reasonably required by the Client or its duly authorized representative. Manager will be available to attend meetings of the Client or with a duly authorized representative on a quarterly basis or as may be reasonably requested by the Client or its duly authorized representative.  Manager will provide such other information or reports as relates to the management of the Account as the Client or its duly authorized representative may reasonably request from time to time or as required by applicable law.  The Manager shall provide to the Client and its duly authorized representative notice of the following no later than 14 days following such change or event:  (1) material changes in the Manager's organizational structure, ownership, financial condition, Form ADV-Part 2 filing, manager portfolio structure and key personnel of the firm; (2) any material litigation, investigations or disciplinary action by any regulatory or governmental body against Manager; (3) any other pertinent information that might be material to the Client concerning Manager's performance.

7. **Valuation.** In determining the value of the Account or any of its assets, any equity security listed on a national securities exchange shall be valued at the last quoted sale price on the valuation date on the principal exchange on which the security is traded.  Any other security or asset shall be valued as determined in good faith by the Adviser to reflect its fair value.

8. **Compensation.**

a. The compensation of the Adviser shall be calculated and paid in accordance with the attached Schedule C (*Investment Advisory Fee Schedule)* on the basis of asset values determined as provided in this Agreement.

Columbia Partners, L.L.C. Investment Management - Investment Advisory Agreement                    Page -2-

CONFIDENTIAL                                                          Chartwell_Interface Production_Bates No. 000213

b. Except as provided in Section 15(a), if the Adviser shall serve for less than the whole of any quarterly period, its compensation determined as provided above shall be calculated and shall be payable on a pro-rata basis for that portion of the period which it has served as the Adviser hereunder.

9. **Service to Other Clients.** It is understood that the Adviser also provides similar investment management services to other accounts and the Adviser may take investment action on behalf of such other accounts which may be similar or different from the action taken on behalf of the Account in terms of securities, timing, nature of transaction and other factors. Nothing herein shall impose on the Adviser any obligation to purchase or sell for the Account any security which the Adviser purchases or sells for any other account.

10. **The Adviser's Interest in Certain Securities.** The Client acknowledges and accepts that the Adviser may purchase for the Account, or recommend a purchase for the Account (i) securities of the same class owned by the Adviser, its partners or affiliates, (ii) securities of companies for which the Adviser or its affiliates or directors act as financial adviser or perform other investment banking services, and (iii)securities of companies where partners, directors or employees of the Adviser, or its or their affiliates, serve on the Board of Directors or other managing body.

11. **Proxies.** The Adviser will not vote proxies for securities held in the Account unless the governing instruments with respect to the Account and the Client indicate to the contrary or the Account is subject to the provisions of ERISA. The Client requests that:

☐ the Adviser will vote proxies for securities held in the Account.

OR

☒ the Adviser will NOT vote proxies for securities held in the Account.

12. **Authority.** Each of the Adviser and the Client represents, one to the other, that it has duly authorized the execution, delivery and performance of this Agreement, and neither such execution and delivery nor the performance of their respective obligations hereunder conflict with or violate any provision of law, rule or regulation, nor any instrument to which it is a party, nor to which any of their properties are subject.

13. **Liability.** The Client agrees that, to the extent permitted by applicable law, neither the Adviser nor any partner or employee of the Adviser shall be liable for any loss due to an error in judgment or for any act or omission to act by the Adviser or any broker or Custodian, except for losses resulting from the Adviser's or such partner's or employee's negligence, misconduct or malfeasance. The federal securities laws and ERISA impose liabilities under certain circumstances on persons who act in good faith, and therefore nothing herein shall in any way constitute a waiver or limitation of any rights which the parties may have under any federal or state securities laws, or ERISA, if applicable.

14. **Termination and Assignment.**

a. This Agreement may be terminated by either party at any time upon thirty (30) days' prior written notice to the other party. Such termination shall be without the payment of any penalty and without liability of either party to the other, except for any compensation due in accordance with Section 8.

b. No assignment (as defined in the Investment Advisers Act of 1940) of this Agreement by the Adviser shall be effective without the written consent of the Client.

CONFIDENTIAL                                    Chartwell_Interface Production_Bates No. 000214

15. **Notices.** Any notice, report or other written communication provided for herein shall be effective when received and shall be communicated in writing and mailed to the Adviser at the address registered with the Securities and Exchange Commission or the Client at the address listed below, unless either party notifies the other in writing of a different address.

16. **Disclosure Statement.**

   a. The Client acknowledges having received the Adviser's SEC Form ADV Part II at least 48 hours prior to the Client's execution of this Agreement.

   b. The Client acknowledges having received the Adviser's Privacy Policy Notice.

   c. The Client authorizes the Adviser to list the Client as a client as a matter of fact and not as a testimonial of the investment services provided.

17. **Miscellaneous.**   This Agreement, including the Schedules hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof as of the Effective Date and supersedes all prior agreements, negotiations, representations and proposals written or oral.  This Agreement shall bind and inure to the benefit of each party, and except as otherwise expressly provided to the contrary herein, each of their respective heirs, successors and assigns.  The laws of the Commonwealth of Pennsylvania shall control all matters related to this Agreement and shall apply to the extent not pre-empted by the laws of the United States of America. This Agreement may be amended only by written agreement executed by both the Client and the Adviser.  This Agreement may be executed in as many counterpart copies.

CONFIDENTIAL

Chartwell_Interface Production_Bates No. 000215

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Agreement as of _____, 2010 (the "Effective Date").

### CLIENT ACCOUNT INFORMATION

| | |
|---|---|
| **Steamfitters Local 449 Pension Fund** | 25-6032401 |
| **Name of Account** | Taxpayer I.D. Number |
| | |
| **Employer Trustee** | **Telephone Number** |
| Regis Claus | |
| **Please Print Name and Title** | |
| 5131 Cypress Street | |
| **Street Address** | |
| Pittsburgh, PA  15224 | |
| **City, State, Zip** | |

_____    (412) 381-1133
**Labor Trustee**                                                                 Telephone Number

Joseph M. Little / Financial Secretary Treasurer
**Please Print Name and Title**

1517 Woodruff Street
**Street Address**

Pittsburgh, PA  15220
**City, State, Zip**

Agreed and accepted as of the Effective Date.

**Columbia Partners, L.L.C. Investment Management**

By: _____
Signature

Steven J. Binder, Managing Principal
**Please Print Name and Title**

### *List of Schedules*

**A.** *Description of Account and Name of Custodian*
**B.** *Investment Guidelines*
**C.** *Fee Schedule*

CONFIDENTIAL                                                                 Chartwell_Interface Production_Bates No. 000216

## Schedule A

### DESCRIPTION OF ACCOUNT AND NAME OF CUSTODIAN

The Account referred to in the Agreement to which this Schedule is annexed consisting of the total value in custodial account # _____ together with any proceeds thereof, interest and dividends, if any, thereon, and increases or market related decreases therein (respective less any expenses properly charged thereto) and is and shall be maintained in the custody of:

PNC
_____
Name of Custodian

200 Public Square – 5th Fl
_____
Street Address

Cleveland, OH  44114
_____
City, State, Zip

Beverly Jenkins
_____
Party to be Contacted at Custodian

(216) 222-1730
_____
Telephone Number

Client:    **Steamfitters Local 449 Pension Fund**            *Columbia Partners, L.L.C.*

*Investment Management*

Dated: ___ 1/26/10 _____            Dated: ___ 2/2/10 _____

Signed: _____            By: _____
Employer Trustee

___Regis Claus_____            Steven J. Binder, Managing Principal
**Print Name and Title**                    **Print Name and Title**

Dated: ___ 1/26/10 _____

Signed: _____
Labor Trustee

Joseph M. Little / Financial Secretary Treasurer
**Print Name and Title**

---

Columbia Partners, L.L.C. Investment Management - Investment Advisory Agreement            Page -1-

CONFIDENTIAL            Chartwell_Interface Production_Bates No. 000217

## <u>Schedule C</u>

### INVESTMENT ADVISORY FEE SCHEDULE

Small Cap Equity

| First | $ 25,000,000 | 1.00% |
|---|---|---|
| Next | 25,000,000 | 0.80% |
| Next | 25,000,000 | 0.65% |
| Thereafter | | 0.50% |

**Less 10% discount.**

The above fee schedule will be applied to the market value of the Fund at the end of each calendar quarter at which time one fourth of the annualized fee will be due and payable to <u>Columbia Partners Investment Management</u>.

*Client*  **Steamfitters Local 449 Pension Fund**

*Columbia Partners, L.L.C.*
*Investment Management*

Dated: 1/26/10

Signed:

**Employer Trustee**

Regis Claus

**Print Name and Title**

By:

Steven J. Binder, Managing Principal

**Print Name and Title**

Dated: 2/2/10

Dated: 1/26/10

Signed:

**Labor Trustee**

Joseph M. Little / Financial Secretary Treasurer

**Print Name and Title**  Union Trustee

CONFIDENTIAL

Chartwell_Interface Production_Bates No. 000218