# Exhibit D-9

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS   (1927-1950)
JOHN F. WHARTON   (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212 373 3306

WRITER'S DIRECT FACSIMILE

212 492 0306

WRITER'S DIRECT E-MAIL ADDRESS

hfischman@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 - 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
GERALD BRANT
ROBERT A. BRITTON
DAVID W. BROWN
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
REBECCA S. COCCARO
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS P. GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
IAN M. HAZLETT
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
CHRISTOPHER HOPKINS
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MATTHEW B. JORDAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ROBERT A. KILLIP
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN

ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
BRIAN KRAUSE
CAITH KUSHNER
KAISA KUUSK
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
CRYSTAL L. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
PAUL L. SANDLER
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
SUHAN SHIM
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
SAMUEL J. WELT
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
KEN ZIMAN
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

August 25, 2022

By hand delivery

Chartwell Investment Partners
1205 Westlakes Dr STE 100
Berwyn, PA 19312

Re: *Thomas S. Swanson v. Interface, Inc., Daniel T. Hendrix, Jay D. Gould, Bruce A. Hausmann, and Patrick C. Lynch.*, No. 1:20-cv-05518-BMC (E.D.N.Y.)

Dear Madam or Sir:

Attached please find a subpoena duces tecum in the above referenced matter. We are available to discuss the scope of the subpoena and the production of responsive documents.

Sincerely,

*Harris Fischman*

Harris Fischman

(enclosures)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 1)

# UNITED STATES DISTRICT COURT
## for the
Eastern District of New York

THOMAS S. SWANSON, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff*

v.

INTERFACE, INC., DANIEL T. HENDRIX, JAY D. GOULD, BRUCE A. HAUSMANN, and PATRICK C. LYNCH,

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.   1:20-cv-05518-BMC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Chartwell Investment Partners
1205 Westlakes Dr STE 100, Berwyn, PA 19312

*(Name of person to whom this subpoena is directed)*

' *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Paul, Weiss, Rifkind, Wharton & Garrison LLP 1285 Avenue of the Americas New York, NY 10019 | Date and Time: September 25, 2022 at 9:30 a.m. |
|---|---|

' *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/25/2022

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_____
Harris Fischman
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing Interface, Inc., Daniel T. Hendrix, Bruce A. Hausmann, and Patrick C. Lynch, who issues or requests this subpoena, are: Harris Fischman, Paul, Weiss Rifkind Wharton & Garrison LLP, 1285 Avenue of the Americas, (678) 272-3200, hfischman@paulweiss.com

The address, e-mail address, and telephone number of the attorney representing Jay D. Gould, who issues or requests this subpoena, are: David Long-Daniels, Squire, Patton Boggs LLP, 1230 Peachtree Street NE, Suite 1700, Atlanta, GA 30309, (212) 373-3306 david.long-daniels@squirepb.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    1:20-cv-05518-BMC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

' I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

' I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                      *Server's signature*

                              _____
                                      *Printed name and title*

                              _____
                                      *Server's address*

Additional information regarding attempted service, etc.:

[ Print ]    [ Save As... ]    [ Add Attachment ]        [ Reset ]

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit A

## **DEFINITIONS**

Wherever used in the Defendants' First Request for Production of Documents to Plaintiffs (the "Request"), the following terms shall have the meanings indicated below:

1. "Action" means the above-captioned putative class action pending in the U.S. District Court for the Eastern District of New York styled: *Swanson* v. *Interface, Inc.*, Case No. 1:20-cv-05518-BMC.

2. "Advisor" means any firm, advisor, asset manager, analyst, consultant, broker, or brokerage firm that provided any advice, guidance, feedback, recommendations, or analysis relating to any actual, recommended, or contemplated transactions.

3. "Class Period" means the period between May 12, 2016 and September 28, 2020, or any broader period contained in Plaintiffs' motion for class certification.

4. "Communicate" or "Communication" means every manner or means of transmittal, disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, in writing, electronically, or otherwise.

5. "Complaint" means the Complaint filed by Thomas Swanson in the Action on November 12, 2020. (Dkt. No. 1.)

6. "Concerning" means relating to, referring to, describing, evidencing, or constituting. "Refer," "relate," "reflect," "regard," or "concern" shall be construed to bring within the scope of all the requests all Documents that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Request, including, but not limited to, all Documents that reflect, record, memorialize, discuss, evaluate, consider, review, or report the subject matter of the Request.

7. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term.

8. "Date" means the exact day, month, and year, if ascertainable, or if not, the best approximation (including relationship to other events).

9. "First Amended Complaint" means the Amended Complaint for Violations of the Federal Securities Law filed by Plaintiffs in the Action on April 28, 2021 (Dkt. No. 30).

10. "Including" means including without limitation.

11. "Interface" means Interface, Inc. and includes its subsidiaries, divisions, and affiliates, whether owned or controlled, directly or indirectly, in whole or in part, as well as its present and former directors, officers, and employees.

12. "Person" has the meaning accorded to it under Local Civil Rule 26.3(c)(6) and is defined as any natural person or any legal entity, including without limitation any business, governmental entity, or association.

13. "Plaintiffs" means the Steamfitters Local 449 Pension Fund and, where applicable, any corporate parent, subsidiaries, affiliates, partners, present and former directors, officers, trustees, administrators, employees, agents, analysts, advisors, accountants, attorneys, consultants, representatives, or other Persons acting or purporting to act on their behalf.

14. "Plaintiffs' Counsel" means Robbins Geller Rudman & Dowd LLP, any other counsel or investigators for Plaintiffs, and any agents acting or purporting to act on any of their behalf.

15. "Purchase" means any contract to buy, purchase, or acquire, including, but not limited to, assignment, pledge, gift, or transfer.

16. "Relevant Time Period" means the period commencing 90 days prior to the start and 90 days following the end of the period defining the putative Class as proposed in the Amended Complaint.

17. "Sale" or "Sell" means any contract to sell or otherwise dispose of, including, but not limited to, assignment, pledge, gift, or transfer.

18. "Security" has the meaning ascribed to it under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, including without limitation common stock, preferred stock, calls to buy stock, puts to sell stock, bonds, or any other securities, including any equity, debt, investments, swaps, forward contracts, futures contracts, structured securities, and special purpose entities, including credit derivatives, total return swaps, and any individual option positions, including those entered into as part of an arbitrage or risk management strategy.

19. "You" or "Your" means Chartwell Investment Partners, including any corporate parent, subsidiaries, affiliates, partners, present and former directors, officers, trustees, administrators, employees, agents, analysts, advisors, accountants, attorneys, consultants, representatives, or other Persons acting or purporting to act on their behalf.

20. The use of the term "the" shall not be construed as limiting the scope of any Request.

21. Whenever there is a reference in the Request to a named corporation, partnership, or association, the reference shall include: (i) the corporation, partnership, or association; (ii) its known subsidiaries, groups, divisions, affiliates, and other organizational units, predecessors, or successors; and (iii) any present and former directors, officers, trustees, administrators, employees, agents, representatives, or other Persons acting or purporting to act on behalf of the named corporation, partnership, or association.

3

## INSTRUCTIONS

1.      Unless otherwise specified, You are requested to produce Documents responsive to the Request that Concern, whether in whole or in part, the Relevant Time Period, even if dated, prepared, generated, used, or received prior to, or subsequent to, that period.

2.      Except as specified elsewhere in the Request, all electronically stored information (ESI) covered in the Request shall be produced in accordance with the ESI protocol that the Parties may agree upon. Documents shall be produced as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof, or, with respect to ESI, in either TIFF or native format.  In addition to the production format identified in the protocol, any structured data should not be produced in a form that interferes with its functionality or degrades the ability to search the data by electronic means.  No fields should be removed from structured data without Defendants' consent.

3.      All Documents covered in the Request shall be produced in an orderly manner (and with appropriate markings or other identification) so that the Defendants and their attorneys will be able to identify the source of the Document, the file in which it was maintained, the individual or group to whom such file belonged, and which Request the Document corresponds to.

4.      The Request should be construed to include all responsive Documents in the files of Plaintiffs' representatives, agents, employees, attorneys, accountants, outside investment advisors, brokers, traders, analysts, or consultants who advised on, possessed discretion to make investment decisions regarding, and/or monitored Plaintiffs' investments in Interface.  If Plaintiffs are taking the position that such Documents are not within their possession, custody, or control, Plaintiffs shall advise Defendants forthwith.

5.      Each requested Document should be produced in its entirety.  If a document responsive to a Request cannot be produced in full, it shall be produced to the extent possible

4

with an explanation stating why production of the remainder is not possible.  If any requested document was, but no longer is, in Your possession, state whether a copy thereof is in the possession, custody, or control of some other person or entity.

6.     If there are no Documents responsive to any of the Requests, please provide a written response so stating.

7.     No Request shall be construed to limit the scope of any other Request.

8.     Unless otherwise stated herein, all Requests cover the Relevant Time Period.

### DOCUMENTS TO BE PRODUCED

1.     All Documents, including, but not limited to, structured data, containing: (i) the date(s) and time(s) of any Purchase or Sale by Steamfitters of Interface Securities; (ii) the number of units exchanged in each such transaction; (iii) the price that Steamfitters paid or received for each such transaction; and (iv) the Person, including brokers or agents, from or through whom Steamfitters made each such transaction.  The spreadsheet should also identify whether each investment position was registered to Steamfitters and held in Steamfitters' own name or held in "street name" by Steamfitters' broker or agent on its behalf.  This covers the Relevant Time Period.

2.     All structured trading activity Excel spreadsheets containing the date and terms of any swap, derivative, hedge, short position, or other transaction by which Steamfitters' economic exposure to either (a) its holdings of Interface Securities; or (b) any Purchase or Sale of Interface Securities was offset, reduced, or limited either directly or indirectly.

3.     All Documents and Communications concerning any of Steamfitters' investments in Interface Securities identified in Request No. 1 or 2.

4.     All Documents that constitute, record, or in any way memorialize any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities

5

by Steamfitters or by any other Person on Steamfitters' behalf.

5.      All Documents that explain or describe any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities by Steamfitters or by any other Person on Steamfitters' behalf, including not limited to all documents concerning the reasons for or purposes of Steamfitters' actual, recommended, or contemplated Purchase, Sale, or decision to hold Interface Securities..

6.      All Documents, other than those responsive to Request Nos. 3–5, that in any way relate to, or were used or relied upon in connection with, any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Interface Securities by Steamfitters or by any other Person on Steamfitters' behalf.

7.      All Communications between or among You, Steamfitters, and any Outside Advisor concerning any actual, recommended, or contemplated transactions identified in Request No. 1 or 2.

8.      Documents sufficient to identify all Persons (including both Steamfitters' employees and Outside Advisors) involved in evaluating whether Steamfitters should buy, sell, or hold an investment in Interface Securities, and all Communications with such Persons.

9.      Documents concerning or analyzing the performance of, or realized or unrealized gains or losses on, Steamfitters' investment in Interface Securities, including the methodology that You or Steamfitters used to calculate any realized or unrealized gain or loss.

10.      All Documents concerning the accounting treatment of Steamfitters' investment in Interface Securities.

11.      All financial statements or profit and loss statements reflecting Steamfitters' gains or losses from transactions in Interface Securities.

12.     Documents sufficient to identify any individual Security or investment portfolio monitoring services that Steamfitters utilized.

13.     All Documents concerning the efficiency of the market for Interface Securities.

14.     All Documents concerning Interface's business and financial condition, including but not limited to analyst or research reports.

15.     All Documents concerning Interface's Securities prices or movements thereof.

16.     All Documents concerning Your or Steamfitters' reliance on or knowledge of Interface's Securities prices or movements thereof.

17.     All Documents sufficient to show Your investment decision-making structure, including charters, by-laws, organizational charts, and any documents that describe any internal department, staff, or employees that provide investment analysis, advice, reports, or guidance to You, or oversee or supervise any external individuals or organizations that provide investment analysis, advice, reports, or guidance to You, including but not limited to documents sufficient to show all individuals who had any involvement in making investment decisions on Steamfitters' behalf or in advising Steamfitters in making investment decisions.

18.     All Documents concerning Your guidelines policies, procedures, practices, rules, due diligent requirements, goals, or criteria for the Purchase, Sale, or decision to hold, any Securities, in effect at the time during the Relevant Time Period.

19.     All Documents concerning any policies or procedures for the review or authorization of investment transactions by You or on Steamfitters' behalf during the Relevant Time Period, including Documents evidencing the identity of any Person who was or was to be involved in such review or authorization.

20.     All Documents, including but not limited to structured data, containing: (i) the

7

date(s) and time(s) of any Purchase or Sale by Steamfitters' of any Securities of any company other than Interface; (ii) the number of units exchanged in each such transaction; (iii) the price that Steamfitters' paid or received for each such transaction; (iv) the Person, including brokers or agents, from or through whom Steamfitters made each such transaction; and (v) whether each investment position was registered to Steamfitters' and held in its own name or held in "street name" by Steamfitters' broker or agent on its behalf.  This covers the Relevant Time Period.

21.     All Documents that constitute, record, or in any way memorialize any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

22.     All Documents that explain or describe any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

23.     All Documents, other than those responsive to Request No. 21 or 22, that in any way relate to, or were used or relied upon in connection with, any actual, recommended, or contemplated Purchase or Sale of, or decision to hold, any Securities of any company other than Interface by Steamfitters or by any other Person on Steamfitters' behalf.

24.     All Documents concerning or analyzing the performance of, or realized or unrealized gains or losses on, Steamfitters' investment in any Securities of any company other than Interface, including the methodology that Steamfitters or You used to calculate any realized or unrealized gain or loss.

25.     All agreements between You and Steamfitters.

26.     All Documents sufficient to identify any current or potential Class member of which You are aware; and, for each identified Person, all Documents responsive to Request Nos.

8

1-7 as it relates to each identified Person.

27.     To the extent not covered by another request, all Communications between You and Plaintiff or Plaintiffs' counsel concerning this Action.

Dated: August 25, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Harris Fischman*
Daniel J. Kramer
Harris Fischman
Shane D. Avidan
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
dkramer@paulweiss.com
hfischman@paulweiss.com
savidan@paulweiss.com

*Counsel for Interface, Inc., Daniel T. Hendrix, Bruce A. Hausmann, and Patrick C. Lynch*

SQUIRE PATTON BOGGS (US) LLP

By:  */s/ David Long-Daniels*
David Long-Daniels (*pro hac vice*)
1230 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Phone: (678) 272-3200
Fax: (678) 272-3211
david.long-daniels@squirepb.com

*Counsel for Jay D. Gould*

9

# Exhibit B

**<u>Document Production Format</u>**

I.     Overview

     A.     All documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy documents and non-searchable ESI. Details regarding requirements, including files to be delivered in native format, are below.

II.     TIFF Image Requirements

     A.     All documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

     B.     All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

     C.     Images shall include the following content where present:

         1.     For word processing files (*e.g.,* Microsoft Word) – Comments and "track changes" (and similar in-line editing).

         2.     For spreadsheet files (*e.g.,* Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

         3.     For presentation files (*e.g.,* Microsoft PowerPoint) – Speaker notes and comments.

     D.     Reasonable care shall be taken not to degrade the legibility of documents during the imaging process. If legibility is found to have been degraded, the receiving party may make reasonable requests for re-production of these documents.

III.     Native Format Requirements

     A.     Spreadsheet files

         1.     Spreadsheet files (*e.g.,* Microsoft Excel) shall be provided in native format.

         2.     In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

1

3. When redaction is necessary, a redacted TIFF image version shall be produced. The parties reserve the right to request access to the native format versions of such files.

B. Multimedia files

1. Multimedia files (*e.g.,* audio or video files) shall be provided in native format.

2. In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

3. The parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

C. Other files

1. In limited circumstances, it may be necessary to obtain or view the native format versions of files, including color documents/images and dynamic files, such as databases. The parties reserve the right to reasonably request access to the native format versions of such files and/or an image format that supports viewing color documents.

IV. Image Load/Cross Reference File Requirements

A. A single-page image load/cross-reference file shall be provided with each production.

B. The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

V. Extracted Text/OCR Requirements

A. Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

2

B. Document-level text file names shall consist of the beginning Bates number information of the document.

C. If a document is provided in native format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full extracted text of the native file.

D. OCR text shall be provided for all redacted documents in lieu of extracted text.

E. With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

VI. Data Load File Requirements

A. A data load file shall be provided with each production.

B. The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and metadata information as detailed below.

C. The delimiters and qualifiers to be used in the .DAT file are:

*Record delimiter:*   Windows newline/Hard return (ASCII 10 followed by ASCII 13)
*Field delimiter:*   (ASCII 20)
*Multi-value delimiter:*   Semicolon ; (ASCII 59)
*Text qualifier:*   Small thorn þ (ASCII 254)

D. With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

E. The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |
| EndRange | Bates number of last page of family range (*e.g.,* last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced document. | All. |

3

| Field | Comments | Document Types |
|---|---|---|
| FileExtension | File extension of the original document (*e.g.*, .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document. Format: bytes. | All. |
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a native file. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a native file. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment. Format: MM/DD/YYYY | Calendar items only. |

4

| Field | Comments | Document Types |
|---|---|---|
| MeetingEndTime | End date of calendar appointment. Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (*e.g.*, <0E6648D558F338179524D555@m1p.contoso.net). | Email only. |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a native-format file is provided). | Loose files and attachments. |

F.   The parties shall de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. Email attachments shall not be eliminated from the parent email. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

G.   In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated

5

AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

VII.    Miscellaneous

    A.    All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.

    B.    Embedded documents shall be extracted from the parent document with family relationship intact.

    C.    Productions shall be provided using industry standard encryption software or hardware.  Any electronic transmission of produced materials must be done via a secure file transfer system.

    D.    If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the parties shall cooperate to arrange for the mutually acceptable production of such documents.

    E.    The parties agree not to knowingly degrade the searchability of documents as part of the document production process.  For example, extracted text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted documents).

    F.    Redacted documents may have certain metadata fields withheld from production.  The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

    G.    All documents shall be processed so as to normalize the time zone.