UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————— x

THOMAS S. SWANSON, Individually and on :   Civil Action No. 1:20-cv-05518-BMC
Behalf of All Others Similarly Situated,   :
      :   CLASS ACTION
      Plaintiff,   :
      :   MEMORANDUM OF LAW IN
      :   OPPOSITION TO DEFENDANTS' ORDER
  vs.   :   TO SHOW CAUSE TO COMPEL LEAD
      :   PLAINTIFF STEAMFITTERS 449 PENSION
INTERFACE, INC., DANIEL T. HENDRIX, :   FUND AND NON-PARTY CHARTWELL
JAY D. GOULD, BRUCE A. HAUSMANN :   INVESTMENT PARTNERS
and PATRICK C. LYNCH,   :
      :
      Defendants.   :
      :

————————————————————————— x

## I.    PRELIMINARY STATEMENT

Defendants' insistence that Lead Plaintiff assist them in their discovery efforts lacks any legal support and should be denied.  Indeed, in practically every meet and confer on this issue, Lead Counsel asked Defendants for authority to support their position that it is Lead Plaintiff's obligation to assist it with its discovery and to pay for any associated production costs.  Despite the fact that institutional investors such as Lead Plaintiff (and their investment advisors) have been involved in securities litigation since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendants have not cited a single case in which a lead plaintiff was required to assist defendants with discovery from its investment advisors or to pay for such efforts.  Importantly, and as Defendants concede, Lead Plaintiff has not sought to preclude Chartwell in any way from complying with Defendants' subpoena.[1]

Moreover, Lead Plaintiff has not contested or challenged the relevancy[2] of Defendants' third party discovery requests.[3]  Defendants' contention, however, that it is Lead Plaintiff's

---

[1]    Defendants erroneously contend that "Lead Plaintiff is resisting discovery into the core issue in the case: why it invested in Interface securities."  ECF No. 59-1 at 3 (hereinafter "OSC").  Putting aside that why Lead Plaintiff invested in Interface securities is likely not relevant (in light of the presumption of reliance alleged by Lead Plaintiff) and that it is far from the "core issue in the case," Lead Plaintiff has never once resisted discovery into this issue.  *Id*.  Moreover, Defendants' argument that "Lead Plaintiff's refusal to ensure production of key documents relating to its investment decisions is a total derogation of its responsibilities in this action," *id*. at 2, falls short because Defendants have not cited any authority that Lead Plaintiff is required to ensure that third parties comply with subpoenas issued to them.

[2]    Defendants' argument that Chartwell's hard copy documents suggest that "Chartwell did not believe that Interface's stock price reflected its full value," OSC at 10, even if true (which Lead Plaintiff is not conceding), is a red herring.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 273-74 (2014) (rejecting argument that value investor who "does not believe that the market price accurately reflects public information *at the time he transacts*" is sufficient to rebut the presumption of reliance; "he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period") (emphasis in original).

[3]    Lead Plaintiff takes no position on the relevance of Defendants' requests; it is not Lead Plaintiff's obligation to negotiate the contours of Defendants' third party discovery efforts.  Lead

responsibility to participate in their third party discovery under the guise of agency principles, arguing that Lead Plaintiff somehow "controls" Chartwell's internal emails and communications, *see* OSC at 2, is simply wrong and misplaced. To be clear, Chartwell has already produced Lead Plaintiff's Class Period transactions in Interface stock, as well as other documents regarding Interface's business and financial performance.

Lead Plaintiff does not control Chartwell. Indeed, Lead Plaintiff has not had any discussions in this case with Chartwell regarding Defendants' subpoena. In fact, when Chartwell produced documents to Defendants, it was Defendants who sent Chartwell's production to Lead Plaintiff – not the other way around.

Finally, Defendants argue that, if the Court shifts Chartwell's production expenses, Lead Plaintiff – and not Defendants – should bear these costs despite that the expenses will be incurred for responding to *Defendants'* subpoena. Defendants cite no case law for the proposition that a lead plaintiff should bear the costs of a third party's non-compliance with discovery efforts where lead plaintiff was not the requesting party. *See* OSC at 12.

For these reasons, and as detailed herein, this discovery dispute concerns Chartwell – a non-party to this litigation – and its compliance with Defendants' subpoena; it does not concern Lead Plaintiff and Lead Plaintiff should not be required to involve itself in Defendants' quarrel. Defendants' efforts to involve Lead Plaintiff in its discovery disputes, or to impose production costs on Lead Plaintiff, should be rejected.

---

Plaintiff, however, reserves all rights to respond to the arguments raised by Defendants regarding the adequacy or typicality of Lead Plaintiff (in particular, how it relates to Chartwell) and intends to do so in connection with its motion for class certification, if raised by Defendants at that time.

## II.    ARGUMENT

### A.    Lead Plaintiff Does Not "Control" Chartwell Such that Lead Plaintiff Should Be Compelled to Assist Defendants with Their Own Discovery Efforts

"Control is defined as the legal right to obtain documents upon demand." *In re Subpoena Issued to Cisco Sys., Inc.*, 2010 WL 3155895, at *3 (N.D. Cal. Aug. 9, 2010). Lead Plaintiff has no such right with respect to a nonparty. Defendants "bear[] the burden of proving that [Lead Plaintiff] has 'control' over the requested documents." *Tatum v. Schwartz*, 2007 WL 2220977, at *6 (E.D. Cal. Aug. 2, 2007). To that end, it is insufficient for the requesting party to show that another party has a modicum of control over some of the documents in the possession of a nonparty; the requesting party must establish the party's control ***over the specific documents requested***. *See S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 475 (S.D.N.Y. 2000).

Here, Defendants assert that Lead Plaintiff should be compelled to assist Defendants with their discovery efforts against Chartwell based on nothing more than an advisory agreement. Not only is this agreement irrelevant for purposes of proving Lead Plaintiff's control over the subpoenaed documents, but it is not enough to support Defendants' burden.[4]

Lead Plaintiff's advisory agreement with Chartwell allows Lead Plaintiff to "obtain 'such other information or reports as relates to the management of the Account as [Lead Plaintiff] or its duly authorized representative may reasonably request from time to time or as required by applicable law.'" OSC at 4. Defendants, however, are not seeking information or reports *relating to management of Lead Plaintiff's account*, as Chartwell already produced such documents.[5]

---

[4]    Defendants' argument that Lead Plaintiff has control over Chartwell's documents is belied by the subpoena served on Chartwell. If Lead Plaintiff indeed had control over Chartwell's documents, Defendants would have simply requested them from Lead Plaintiff and not from Chartwell.

[5]    Defendants complain that "Lead Plaintiff has refused to collect and produce [] documents and instead has told Defendants that they must obtain them from Chartwell." OSC at 2. To be

- 3 -

The type of documents Defendants are seeking from Chartwell are ones that Lead Plaintiff has no control over.  *See generally Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 3742244, at \*3-\*4 (N.D. Cal. Dec. 19, 2006) (rejecting that a party had "general access to documents" in another party's possession merely because the parties entered into an agreement to provide reports to each other).[6]

In truth, Lead Plaintiff is not able to "control" Chartwell or request access to any of its internal documents, and should not be compelled to assist Defendants with their third party discovery.  Indeed, "[c]ontrol must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'" *Subpoena Issued*, 2010 WL 3155895, at \*3 (noting how a "mere business relationship" is not enough "to confer legal control by one company over the documents of another"); *see generally W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110 (2d Cir. 2008) ("the investment advisor-client relationship is not the type of close relationship courts have recognized as creating a 'prudential exception' to the third-party standing rules").[7]

---

clear, Lead Plaintiff has told Defendants it will comply with its discovery obligations and produce relevant, non-privileged documents within its possession, custody or control.  Internal Chartwell emails and other similar documents – which is what Defendants are seeking – do not fall within that category.  Moreover, to date, Chartwell has produced documents identifying Lead Plaintiff's holdings and transactions in Interface common stock during the Class Period, documents concerning Interface's business and financials, analyst reports concerning Interface, and emails concerning Interface's Class Period results.

[6]     Defendants rely on *Villella v. Chemical & Mining Co. of Chile Inc.*, 2018 WL 2958361 (S.D.N.Y. June 13, 2018), for this proposition.  But *Villella* concerned the relevancy of the documents sought, an issue that Lead Plaintiff does not contest (or concede).  Moreover, the motion in *Villella* concerned whether or not a letters rogatory should be issued to a third party, not whether a lead plaintiff should be responsible for aiding, or paying for, defendants' discovery.  Defendants' reliance on *In re NTL, Inc. Securities Litigation*, 244 F.R.D. 179 (S.D.N.Y. 2007) – which concerned the relationship between a corporation that entered into a Chapter 11 bankruptcy and its successor company that took its place as defendant in the lawsuit – is similarly misplaced.

[7]     Defendants' lone case that they cite to support their contention that Lead Plaintiff has a duty to cause Chartwell to provide discovery is *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005).  But unlike the relationship between an institutional investor lead

**B.      Lead Plaintiff Should Not Be Compelled to Share in Any Costs Associated with Defendants' Third Party Discovery Requests to Chartwell**

Defendants also argue that while Chartwell should pay for its own production, Lead Plaintiff should be compelled to pay if Chartwell does not. *See generally* OSC at 12. As Defendants correctly point out, orders requiring cost shifting are rare. What is more, Defendants have not provided any authority which stands for the proposition that their third party costs should be shifted to Lead Plaintiff. *See id*. Cost shifting any amount to Lead Plaintiff, in this instance, would be inappropriate. *See In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *14 (D. Conn. Oct. 18, 2017) (declining to cost-shift to adverse party not seeking compliance with subpoena from third party); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (explaining cost shifting under Rule 45 "applies to non-parties only").

Notably, none of Defendants' cases support their argument that Lead Plaintiff should cover a third party's production costs for complying with Defendants' subpoena. *Nike*, 2020 WL 257475, at *11, *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *33 (S.D.N.Y. Mar. 15, 2013), and *In re Honeywell International, Inc. Securities Litigation*, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003), are all inapposite. In *Nike*, the court rejected the third-party's request that the *requesting*

---

plaintiff and its investment advisor, *Winnick* involved the discovery relationship between an assignor and an assignee. As the omitted words from Defendants' case quotation make clear, "***After all, since the assignees are suing in the shoes of the original lenders, having purchased the right to bring the lawsuit***, there is nothing unfair about imposing on them the cost of purchasing cooperation or otherwise complying with discovery obligations." *Id*. (emphasis added). In that case, and unlike here, "[p]laintiff's position as administrative agent for the banks and/or their assignees ***raises the unusual issues about plaintiff's discovery obligations that are presented here***." *Id*. at 506 (emphasis added). Similarly, *Blackrock Balanced Capital Portfolio (FI) v. HSBC Bank USA*, 2016 WL 11187259, at *2 (S.D.N.Y. June 2, 2016), is equally misplaced because it also dealt with the unique discovery issues that are presented when a new party is assigned to a lawsuit. There, the court found that assignees should obtain discovery from assignors because all of the obligations of litigation are transferred to the assignee. Likewise, *Nike, Inc. v. Wu*, 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020), is an assignment case and therefore not relevant for these same reasons.

*party* reimburse it for discovery costs, not the party adverse to the requesting party, which is what Defendants are requesting here.  2020 WL 257475, at \*14-\*16.  In *Chevron*, the subpoenaed third party also sought discovery costs be shifted to the *requesting party*.  2013 WL 1087236, at \*33.  Finally, in *Honeywell*, plaintiffs subpoenaed a third party accounting firm, PWC, to produce certain documents and PWC asked the court to shift its production costs to plaintiffs – the *requesting party*.  230 F.R.D. at 302-03.  Whether or not Chartwell's costs should be paid by itself or Defendants is an issue unrelated to Lead Plaintiff and Lead Plaintiff should not be drawn into Defendants' dispute with a third party.

## III.    CONCLUSION

In light of the foregoing, Lead Plaintiff should not be ordered to assist Defendants in their discovery efforts against Chartwell.

DATED:  January 9, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
PHILIP T. MERENDA
NATALIE C. BONO

/s/ *David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
pmerenda@rgrdlaw.com
nbono@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*