**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| THOMAS S. SWANSON, Individually and on Behalf of All Others Similarly Situated, <br><br>      *Plaintiff*, <br><br>     v. <br><br> INTERFACE INC., DANIEL T. HENDRIX, JAY D. GOULD, AND BRUCE A. HAUSMANN, <br><br>      *Defendants*. |

Case No. 20-cv-05518 (BMC)

<u>**NON-PARTY CHARTWELL INVESTMENT PARTNERS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE**</u>

**TABLE OF CONTENTS**

Preliminary Statement..................................................................................................... 1

Factual Background ........................................................................................................ 2

Argument ........................................................................................................................ 4

    I.    Cost Shifting is Appropriate Given the Facts and Circumstances of this Case ................... 4

        A.    The Costs of Production are Both Reasonable and  Reimbursable Under Rule 45...... 5

        B.    Cost Shifting is Equitable ...................................................................................... 6

            1.    Chartwell is a Disinterested Party........................................................... 7

            2.    Defendants can more easily bear the costs of production than Chartwell. ............... 9

            3.    The Discovery Sought is not of Public Importance ............................................... 10

    II.    Chartwell Timely Objected to  Defendants' Subpoena Under Rule 45(d)(2)(B)(ii) ........ 10

Conclusion ...................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aggrenox Antitrust Litig.*,
   No. 14-MD-02516 (SRU), 2017 WL 4679228 (D. Conn. Oct. 18, 2017)...................................6

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
   No. 2:11-CV-03577 (RDP), 2016 WL 9781825 (N.D. Ala. Feb. 25, 2016) .............................7

*Chevron Corp. v. Donziger*,
   No. 11-CV-0691 (LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013)..............................5, 7

*Contant v. Bank of Am. Corp.,*
   17-CV-03139 (LGS/SDA), 2020 WL 3260958 (S.D.N.Y. June 17, 2020)..........................8, 10

*In re Exxon Valdez*,
   142 F.R.D. 380 (D.D.C. 1992) ...............................................................................................10

*In re First Am. Corp.*,
   184 F.R.D. 234 (S.D.N.Y. 1998)......................................................................................6, 7, 8

*In re Honeywell International Inc. Securities Litigation*,
   230 F.R.D. 293 (S.D.N.Y. 2003) ..............................................................................................7

*Integrity Elecs. Inc. v. Garden State Distributors, Inc.*,
   No. 9-CV-2367 (1LG), 2010 WL 11626842 (E.D.N.Y. July 12, 2010) ....................................7

*Kahn v. General Motors Corp.*,
   No. 88-CV-2982, 1992 WL 208286 (S.D.N.Y. Aug. 14, 1992) .................................................5

*In re Kaleida Health*,
   No. 21-MC-34V(F), 2021 WL 3398929 (W.D.N.Y. Aug. 4, 2021) .......................................8, 9

*Legal Voice v. Stormans, Inc.*,
   738 F.3d 1178 (9th Cir. 2013) ...................................................................................................6

*Nike, Inc. v. Wu*,
   No. 13-CV- 8012 (CM), 2020 WL 257475 (S.D.N.Y. Jan. 17, 2020) ......................1, 5, 6, 8, 10

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*,
   No. 9-CV-3855, 2018 WL 1701944 (E.D.N.Y. Mar. 31, 2018) ................................................5

*Siltronic Corp. v. Emps. Ins. Co. of Wausau*,
   No. 11-CV-1493 (ST), 2014 WL 991822 (D. Or. Mar. 13, 2014) .............................................8

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*,
   364 F. Supp. 3d 758 (E.D. Mich. 2018) ....................................................................................4

*United States v. Cardinal Growth, L.P.*,
   No. 11-C-4071, 2015 WL 850230 (N.D. Ill. Feb. 23, 2015)......................................................9

*Wilbur v. City of Mount Vernon*,
   No. C11-1100RSL, 2012 WL 12847012 (W.D. Wash. June 27, 2012) ......................................5

*In re World Trade Center Disaster Site Litigation*,
   No. 21-MISC-00100, 2010 WL 3582921 (S.D.N.Y. Sep. 14, 2010) ........................................ 10

**Rules**

Rule 45 of the Federal Rules of Civil Procedure .................................................................. 1, 4, 11

Non-Party Chartwell Investment Partners ("Chartwell"), by and through its undersigned counsel, hereby files its Memorandum of Law in Opposition to Defendants' Order to Show Cause dated December 28, 2022 [Dkt. No. 59] ("Opposition"). In further support of this Opposition, Chartwell also submits herewith the Declaration of Jonathan J. Brennan ("Brennan Decl.").

## PRELIMINARY STATEMENT

In connection with this litigation, Defendants served Chartwell with a subpoena on or about August 25, 2022 (the "Subpoena"). In response, Chartwell searched for and produced documents to Defendants on October 25, 2022. Chartwell did so at its own expense, which it is not seeking to recover here. Documents located within Chartwell's email system, however, proved more complex and difficult to produce. Because these emails are stored on a third-party system and the volume of potentially responsive documents is approximately 30,000, Chartwell was unable to comply with this aspect of the Subpoena at its own expense using in-house personnel. Instead, to process, review, and produce these materials, it determined that it would need to employ a third-party vendor at a cost estimated to be just under $40,000. It is this cost, and this cost alone, that Chartwell seeks to shift to Defendants.

Rule 45 of the Federal Rules of Civil Procedure supports Chartwell's position. *See* Fed. R. Civ. P. 45(d)(1) and 45(d)(2)(B)(ii). Under applicable case law, a non-party will be entitled to cost shifting when (1) the non-party does not have an interest in the outcome of the case, (2) when the non-party cannot more readily bear the costs of production than the requesting party, and (3) when the litigation is not of public importance. *See Nike, Inc. v. Wu,* No. 13-CV- 8012 (CM), 2020 WL 257475, at *11 (S.D.N.Y. Jan. 17, 2020), *aff'd sub nom. Next Invs., LLC v. Bank of China*, 12 F.4th 119 (2d Cir. 2021). All three factors are met here. Chartwell's involvement in the underlying transaction was simply the purchase and sale of Interface as one among 72 different stocks in Lead Plaintiff's portfolio, an act for which it did not earn significant fees. In terms of

1

who can more readily bear the costs, Chartwell is a small investment advisor with revenues of $38.7 million and 53 employees compared to Interface, whose annual revenues are $1.2 billion and who employs 3,646 people. Finally, while this litigation is important to the participants, and perhaps to the purchasers of Interface stock, it is not a broad, sweeping litigation of public importance. For all of these reasons, the cost of complying with the Subpoena, as it relates to the production of emails, should be borne by Defendants as the requesting party.

## FACTUAL BACKGROUND

Chartwell was founded in 1997 in Berwyn, Pennsylvania. It manages active equity, fixed income, and balanced strategies on behalf of its institutional and advisory clients, including Steamfitters Local 449 Pension Fund, Lead Plaintiff in this action. On June 1, 2022, Chartwell became an independent affiliate and subsidiary of Raymond James Investment Management, the asset management subsidiary of Raymond James Financial, Inc.

Following the receipt of Defendants' Subpoena on August 25, 2022, Chartwell interposed Objections on September 23, 2022, and again on October 25, 2022, the agreed-upon extended date of production. (A copy of Chartwell's Objections are attached to the Brennan Decl. as Ex. 1, the September 23, 2022 Objections, and Ex. 2, the October 25, 2022 Objections.) In connection with the parties' meet-and-confer efforts, Chartwell informed Defendants that its emails were not integrated with Raymond James's email system but, instead, were archived on a third-party platform run by Rackspace Technology ("Rackspace").[1]

As early as October 27, 2022, Chartwell raised with Defendants the numerous limitations of the Rackspace archiving system for retrieving, reviewing, and producing emails. *See, e.g.,* Oct.

---

[1]     For various reasons with regulatory and other implications, Chartwell's emails are, likewise, unable to be loaded on to Raymond James's email platform and, therefore, cannot be searched using the more robust search capability of Raymond James's platform.

27, 2022 email from C. Restall to S. Avidan (indicating that Rackspace does not allow "and not" limitations, the use of quotation marks, or a single de-duplicated hit count). (A copy of this email exchange is attached to the Brennan Decl. as Ex. 3, pp. 4-5.) As a result of these limitations, the parties agreed in a November 2, 2022 email that Chartwell's emails needed to be loaded onto a third-party platform for review and production. (*See* Nov. 2, 2022 email from C. Restall to S. Avidan, Ex. 3, pp. 2-3.)

Unlike Defendants' abundant number of lawyers and paralegals that can engage in document discovery, Chartwell (or even its parent corporation, Raymond James Investment Management) has access to a *very* limited number of in-house attorneys and paralegals that process subpoenas. With approximately 30,000 emails at issue, it is not only necessary for the emails to be loaded onto a third-party platform for review, but it is also necessary for Chartwell to retain an e-discovery vendor and its document review attorneys to perform the actual document review. According to Trustpoint.one, an electronic discovery vendor that Chartwell has contacted in connection with this case, the cost of loading these 30,000 emails onto a third-party review platform and reviewing the emails for production is estimated to be $39,521. (A copy of this estimate is attached to the Brennan Decl. as Ex. 4.)

To be clear, these are not "internal" Chartwell costs – *i.e.*, costs associated with in-house counsel or in-house paralegals gathering, reviewing, and producing documents. Indeed, Chartwell is not seeking to shift any of the costs it incurred in gathering and reviewing the documents it has produced to date. Chartwell is likewise not seeking to shift any of the legal fees it is incurring in connection with opposing Defendants' Order to Show Cause. Instead Chartwell is seeking *solely* third-party costs that will be charged by an e-discovery vendor to Chartwell and which are

necessitated exclusively by Defendants' subpoena.  Defendants have refused to bear any of these costs.

**ARGUMENT**

Defendants argue in their Memorandum of Law ("Defs. Memo") that Chartwell alone should bear these costs because (1) the factors courts consider in determining whether cost shifting is appropriate under Rule 45 weigh in favor of Defendants and against Chartwell and (2) Chartwell failed to timely object.  As demonstrated below, both of Defendants' arguments are without merit.

**I.    COST SHIFTING IS APPROPRIATE GIVEN THE FACTS AND CIRCUMSTANCES OF THIS CASE**

Rule 45 of the Federal Rules of Civil Procedure mandates that a party serving a subpoena on a non-party "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena."[2]  Fed. R. Civ. P. 45(d)(1).  Furthermore, Rule 45(d)(2)(B)(ii) provides that orders directing production "must protect a person who is neither a party or a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B)(ii).  Here, Defendants have failed to avoid imposing such an undue burden on Chartwell and, under the facts and circumstances of this case, cost-shifting is both necessary and appropriate.

---

[2]    Defendants cite *State Farm Mut. Auto. Ins. Co.* v. *Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758 (E.D. Mich. 2018), in an attempt to argue that proposing a list of ESI search terms discharges their duties under Rule 45. *See* Defs. Memo. at 12.  However, the court in *State Farm* did not hold that proposing ESI search terms was sufficient to discharge a party's duties under Rule 45.  Rather, on a motion for reconsideration, applying an abuse of discretion standard, the court stated—in dicta and in the context of discussing a particular case cited in the underlying order—that it "appear[ed]" that the requesting party took "reasonable steps to avoid imposing an undue burden" by proposing ESI terms and agreeing not to seek privileged communications, the review of which was at issue in the underlying order.  At no point did the court hold that simply exchanging ESI terms satisfied a duty under Rule 45.  If that were the case, the issue of undue burden would never be litigated as parties could easily satisfy their burden by proposing any list of terms in their negotiations.

4

## A.   The Costs of Production are Both Reasonable and Reimbursable Under Rule 45

As an initial matter, "'only reasonable expenses are compensable under Rule 45.'" *Nike,* 2020 WL 257475, at *11 (quoting *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, No. 9-CV-3855, 2018 WL 1701944, at *4 (E.D.N.Y. Mar. 31, 2018)).  As noted above, Chartwell has not sought cost shifting on efforts undertaken to produce documents to date, nor is it seeking cost shifting for the costs of opposing Defendants' Order to Show Cause.  Rather, it is only seeking third-party expenses that will need to be incurred to comply with the Subpoena.  After discussing the matter with Trustpoint.one, an experienced outside discovery vendor, Chartwell received an estimate that the cost of compliance with the Subpoena as to Chartwell's emails would be approximately $39,521.[3]  Based on the foregoing, Defendants have not—and cannot—argue that the costs at issue are unreasonable or insignificant.

Furthermore, while Defendants argue that contract attorney review is not an expense reimbursable under Rule 45, they are incorrect.  *See* Defs. Memo at 13-14.  The use of contract attorneys to review documents is common in the legal industry and has not only been approved by courts but suggested as a means to reduce expenses.[4]  *See Chevron Corp. v. Donziger,* No. 11-CV-0691 (LAK), 2013 WL 1087236, at *32 (S.D.N.Y. Mar. 15, 2013) (finding no reason why "far less costly contract attorneys could not do all or most of the review, as is common in the legal community today"); *Kahn v. General Motors Corp.,* No. 88-CV-2982, 1992 WL 208286, at *2

---

[3]   This estimate, which is attached to the Brennan Decl. as Exhibit 4, is comprised of $5,885 for data services (including processing and hosting the data) and $33,636 for a managed document review.

[4]   Defendants cite to *Wilbur v. City of Mount Vernon,* No. C11-1100RSL, 2012 WL 12847012 (W.D. Wash. June 27, 2012), in support of their assertion that contract attorney review is not reimbursable.  *See* Defs. Memo at 14.  However, in *Wilbur*, the review was conducted by the recipient of the non-party subpoena and did not involve the use of outside contract attorneys.  *Id.* (describing the "only out-of-pocket expense identified (other than the cost of a pen) is copying costs" given that the review would be conducted "by a single individual").

5

(S.D.N.Y. Aug. 14, 1992) (finding that "the retrieval and evaluation of documents should be done by the lowest-level person consistent with accurate and reliable identification of the material called for").  Moreover, courts have held that legal fees that benefit the requesting party, as opposed to the producing party, are a "cost of compliance reimbursable under" Rule 45.  *See, e.g., In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998).  Here, as Defendants concede, the legal fees directly benefit Defendants as the materials are relevant to Lead Plaintiff's class certification motion as well as to Defendants' defenses on the merits.  Further, this estimate does not include a privilege review, which, if Chartwell chooses to undertake one, would be done at its own expense.  Finally, neither Chartwell nor Raymond James has access to the number of in-house attorneys (or paralegals) that would be necessary to review 30,000 emails in a reasonable amount of time.  The argument, therefore, that such costs are not reimbursable should be flatly rejected.

### B.  Cost Shifting is Equitable

Defendants argue that "[a]s a matter of law, orders requiring cost shifting are rare."  Defs. Memo. at 12.  Numerous courts, however, have said precisely the opposite, interpreting the cost shifting provisions of Rule 45 as "mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena.'"  *In re Aggrenox Antitrust Litig.*, No. 14-MD-02516 (SRU), 2017 WL 4679228, at *1 (D. Conn. Oct. 18, 2017) (quoting *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013)).  In the Second Circuit, courts determining the proper allocation of non-party costs generally consider three factors:  (1) "whether the nonparty actually has an interest in the outcome of the case," (2) "whether the nonparty can more readily bear the costs than the requesting party," and (3) "whether the litigation is of public importance."  *Nike*, 2020 WL 257475, at *11.  In this instance, all three factors weigh in Chartwell's favor and support cost shifting.

6

### 1.    *Chartwell is a Disinterested Party*

Defendants argue that because it has a "voluntary, contractual, for-profit relationship with Lead Plaintiff," Chartwell is not a disinterested non-party and, therefore, has an interest in a favorable outcome.  Defendants' equation of a contractual relationship with an automatic interest in litigation, however, is both overbroad and unsupported by the law.  Courts considering this factor have stated that an interested non-party is one that was "***substantially*** involved in the underlying transaction and could have anticipated that [the underlying involvement would] reasonably spawn some litigation."  *In re First Am. Corp.*, 184 F.R.D. at 242 (emphasis added); *see Integrity Elecs. Inc. v. Garden State Distributors, Inc.*, No. 9-CV-2367 (1LG), 2010 WL 11626842, at *2 (E.D.N.Y. July 12, 2010); *see also Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 2:11-CV-03577 (RDP), 2016 WL 9781825, at *5 (N.D. Ala. Feb. 25, 2016) ("An interested non-party is an entity that . . . has a ***significant***, underlying connection to the case and, typically, some sort of financial or reputational stake in the litigation's outcome.") (emphasis added). Chartwell's connection to the underlying transaction was neither substantial nor significant. Chartwell was simply an investment advisor who purchased Interface shares as one among many investments in Lead Plaintiff's portfolio.  Indeed, at the beginning of August 2020, Interface (stock symbol: TILE) was just one of 72 different stocks Lead Plaintiff held in its Chartwell account. Defendants' argument that such involvement should have prompted Chartwell to reasonably expect to be involved in subsequent litigation over Interface stock just does not hold up.  Moreover, if courts begin equating a for-profit, contractual relationship with an actual stake in litigation, then the protections of Rule 45 for non-parties will all but disappear.

Furthermore, unlike in *Chevron* and *In re Honeywell International Inc. Securities Litigation*, 230 F.R.D. 293 (S.D.N.Y. 2003), the two cases Defendants rely upon most heavily, Chartwell is not an "alleged co-conspirator," did not have access to unique information regarding

7

the purported misconduct, and does not stand to "reap a fee" or benefit from a successful outcome. *Chevron*, 2013 WL 1087236, at \*32; *see also In re First Am. Corp.,* 184 F.R.D. at 242 (finding that an auditor that had "unique access to documents that may be critical in unraveling a bank fraud of unprecedented scale'" was not a disinterested non-party).  On the contrary, Chartwell was an innocent third party in the underlying transaction.  It did not have access to any unique, non-public information about the Defendants, nor did it have any knowledge of the alleged underlying securities violations.  *See Nike*, 20202 WL 257475, at \*14 (finding that the nonparty was not "involved with, or even aware of, the Judgment Debtors' infringing conduct prior to the litigation).

A case more on point with the facts here is *Contant v. Bank of Am. Corp.*  In that case, the court held that a non-party retail foreign exchange dealer, from which Plaintiffs (representing a putative class) purchased the foreign exchange instruments that were the subject of the litigation, "has no interest in the outcome of this case."  No. 17-CV-03139 (LGS/SDA), 2020 WL 3260958, at \*4 (S.D.N.Y. June 17, 2020) ("First, although the case will benefit FXCM's customers . . . , FXCM itself has no interest in the outcome of this case.").  Here, Chartwell has already earned its fees from Lead Plaintiff and does not stand to gain any remuneration were Lead Plaintiff to be successful in this lawsuit.[5]  *See, e.g., Siltronic Corp. v. Emps. Ins. Co. of Wausau*, No. 11-CV-

---

[5]    In a footnote, Defendants cite to *Kaleida Health,* No. 21-MC-34V(F), 2021 WL 3398929 (W.D.N.Y. Aug. 4, 2021), for the proposition that a party without a direct financial interest can still have an interest in the outcome of the litigation.  *See* Defs. Memo. at 14 n.6.  However, in *Kaleida Health,* there were significant connections between the purported wrongdoing at issue and the non-party.  Namely, (1) the doctor that promoted the advantages of a potentially infringing product was employed by the non-party and "alleged to be an investor in Defendants' accused product;" (2) the doctor's study was "prepared with the assistance of three [of one of the non-party's] staff members, … based on 2,100 orthopedic surgeries [he] performed at [one of the non-party's hospitals;]" and (3) one of the non-parties had "purchased a number of the Defendants' accused devices for use in its hospitals."  *Id*. at \*2.  As a result of these ties, the court found that it was "unrealistic to believe that [one of the non-parties] lack any interest in whether a prominent member of its surgical staff has invested in and promoted the purchase by [it] of devices infringing on a valid patent and engaged in false advertising based on their use at one [its] largest facilities."  *Id.*  Here, on the other hand, Chartwell was not involved or associated with any of the purported wrongdoing here (nor could there by an allegation to the contrary), did not have any non-public information nor association with Defendants, and therefore does not have an interest in protecting Defendants.  Accordingly, *Kaleida Health* is inapposite.

1493 (ST), 2014 WL 991822, at *2 (D. Or. Mar. 13, 2014) ("Although Maul Foster may have an interest in the accuracy of its [invoice] coding, that is not the same as an interest in the outcome of this case. Regardless of who wins this case, Maul Foster will be paid by either Siltronic [its client] or one of its insurers."). Simply put, while Chartwell had a connection to the underlying transaction, it did not have enough of a substantial involvement with that transaction to deprive it of Rule 45's non-party protections. As such, as a disinterested non-party, Chartwell should be entitled to cost shifting.

2. *Defendants can more easily bear the costs of production than Chartwell.*

At the beginning of 2022, Interface employed 3,646 employees while Chartwell employed approximately 53.[6] Chartwell's annual revenues in 2021 were $38.7 million—far less than Interface's 2021 annual revenues of $1.2 billion.[7] ███████████████████████████████████████████████████████████████████████████████████████████████████. *Cf. United States v. Cardinal Growth, L.P.*, No. 11-C-4071, 2015 WL 850230, at *3 (N.D. Ill. Feb. 23, 2015) ("During its representation of Cardinal, P & H collected $2 million in fees. . . . Relative to the substantial income that P & H collected from Cardinal, the expenses incurred by P & H in complying with the Court's order do not constitute a 'significant expense.'"). Thus, given that Interface is larger than Chartwell in

---

[6]    Defendants cite the annual revenues and assets of Raymond James to argue that Chartwell does not face an undue burden. These statistics are beside the point as the relevant inquiry should be on the non-party's ability to pay, not the ability of the non-party's parent or affiliated companies to pay. Furthermore, the Class Period relates entirely to a time when Chartwell was not affiliated with Raymond James.

[7]    Defendants cite *Kaleida Health* for the proposition that $50,000 in expenses is not significant. *See* Def. Memo. at 13. However, in *Kaleida Health*, the court determined the discrepancy in annual revenues between the requesting party ($1.65 million) and non-party ($1.8 billion) supported the denial of cost shifting. 2021 WL 3398929, at *2. Here, on the other hand, the fact that Interface's revenues are substantially higher than Chartwell supports cost shifting.

9

terms of both revenue and number of employees and the fees Chartwell made from Lead Plaintiff are modest, this second factor likewise supports cost shifting.

### 3.    *The Discovery Sought is not of Public Importance*

Finally, Defendants argue that cost shifting is not available because "the discovery is of public importance" as "this action involves statutory claims under the Exchange Act" and "the discovery concerns Lead Plaintiff's adequacy as class representative." *See* Defs. Memo. at 16. Defendants are incorrect. Courts in similar actions have held that such matters are **not** of public importance. For example, in *Contant,* Plaintiffs, investors in foreign exchange instruments from retail foreign exchange dealers, filed a putative class action against certain banks under the Sherman Act and state antitrust and consumer protection laws, alleging that they paid inflated prices for financial instruments as a result of Defendants' conspiracy to fix prices. 2020 WL 3260958, at *1. There, the court held that "while this case has importance to retail FX purchasers, it does not have a larger public importance." *Id.* at *4. Similar to *Contant*, this matter may be important to the Lead Plaintiff, to Defendants, and to the putative class, but it is not particularly important to the public at large. *Cf. In re World Trade Center Disaster Site Litigation*, No. 21-MISC-00100, 2010 WL 3582921, at *1 (S.D.N.Y. Sep. 14, 2010); *In re Exxon Valdez,* 142 F.R.D. 380, 384 (D.D.C. 1992). Accordingly, this factor favors cost-shifting. *See Nike*, 2022 WL 257475, at *14 (finding that cost shifting is favored when the litigation involves a private dispute).

## II.    CHARTWELL TIMELY OBJECTED TO DEFENDANTS' SUBPOENA UNDER RULE 45(D)(2)(B)(II)

Defendants argue that cost shifting is only available if a timely objection is made and that Chartwell made no such objection. *See* Defs. Memo. at 13. Contrary to Defendants' assertions, however, Chartwell raised—on two separate occasions—objections to discovery sought by Defendants to the extent such discovery imposed an "undue burden on Chartwell" or "require[d]

it to engage in an excessive expenditure of time and/or money." (*See* Brennan Decl., Exs. 1 and 2, Chartwell's September 23, 2022 and October 25, 2022 Responses and Objections to the Subpoena *Duces Tecum,* respectively.)  The September 23, 2022 Objections (Ex. 1) were made on or before the initial time for compliance with the Subpoena and were thus timely.  These objections were reaffirmed on October 25, 2022 (Ex. 2), the extended date of production which was agreed to by both parties.  Therefore, any allegation that timely objections were not made is simply not supported by the record.

## **CONCLUSION**

Chartwell, as a non-party to this matter, should not be required to bear the external costs of email production to comply with Defendants' subpoena.  Chartwell respectfully requests that this Court shift these costs to Defendants as the requesting party under Fed. R. Civ. P. 45(d)(1) and 45(d)(2)(B)(ii).

11

Dated: January 9, 2023
      New York, New York

Respectfully submitted,

MAYNARD, COOPER & GALE, P.C.


/s/ Jonathan J. Brennan
By:  Jonathan J. Brennan
     The Fred F. French Building
     551 Fifth Avenue, Suite 2000
     New York, NY  10176
     (646) 609-9299
     jbrennan@maynardcooper.com


     and

     Margaret M. Siller
     1201 Villa Place, Suite 103
     Nashville, TN 37212
     (629) 258-2253
     msiller@maynardcooper.com

     *Counsel for Non-Party Chartwell Investment Partners*

12