UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— x

THOMAS S. SWANSON, Individually and on :    Civil Action No. 1:20-cv-05518-BMC-RER
Behalf of All Others Similarly Situated,    :

                               :    <u>CLASS ACTION</u>

             Plaintiff,    :

                               :

    vs.    :

                               :

INTERFACE, INC., DANIEL T. HENDRIX,    :
JAY D. GOULD, BRUCE A. HAUSMANN    :
and PATRICK C. LYNCH,    :

                               :

            Defendants.    :

——————————————————— x

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.    INTRODUCTION ........................................................................................1

III.    STATEMENT OF FACTS COMMON TO THE CLASS ...............................3

IV.    THE PROPOSED CLASS SATISFIES RULE 23 ........................................7

    A.    Legal Standard for Class Certification.................................................7

    B.    Certification is Proper Under Rule 23(a) ............................................8

        1.    The Class is so Numerous that Joinder of All Members Is Impracticable.................................................................................8

        2.    There are Questions of Law and Fact Common to Each Class Member ............................................................................9

        3.    Lead Plaintiff's Claims Are Typical of Those of the Class ........10

        4.    Lead Plaintiff Will Fairly and Adequately Represent the Class ................11

    C.    Certification Is Appropriate Under Rule 23(b)(3) ................................12

        1.    Common Questions of Law and Fact Predominate Over Individual Questions.................................................................12

            a.    The "Fraud-on-the-Market" Presumption Applies ........13

                (1)    Interface Common Stock Traded in an Efficient Market During the Class Period.........................................14

                    (i)    Interface Shares Experienced a High Weekly Trading Volume.........................................15

                    (ii)    A Sufficient Number of Financial Analysts Covered and Reported on Interface During the Class Period.........................................15

                    (iii)    Interface Common Stock Traded on the NASDAQ Under the Supervision of Market Makers.................................................16

                    (iv)    Interface was Eligible to File Form S-3 During the Class Period .......................................17

**Page**

(v)     The Price of Interface Common Stock Reacted to Company-Specific Announcements During the Class Period ..............17

(vi)     Interface's Market Capitalization Supports Market Efficiency ...................................................18

(vii)     Interface Common Stock's Narrow Bid-Ask Spread Supports Market Efficiency ......................19

(viii)     The High Percentage of Market Float Supports Market Efficiency ..................................19

b.     Damages Are Measurable on a Class-Wide Basis .........................20

2.     A Class Action Is Superior to Other Available Methods for Resolving This Controversy ...................................................21

D.     The Implied Ascertainability Requirement is Satisfied ........................................22

E.     The Court Should Appoint Lead Plaintiff's Choice of Counsel ............................22

V.     CONCLUSION....................................................................................................23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)................................................................................................8, 13

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  955 F.3d 254 (2d Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1951 (2021).............13, 14

*Balestra v. Atbcoin LLC*,
  2022 U.S. Dist. LEXIS 57393
  (S.D.N.Y. Mar. 29, 2022) ........................................................................................11

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................... 2-3, 13, 14

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) ...........................................................................16

*Cammer v. Bloom*,
  711 F. Supp. 126 (D.N.J. 1989) ...................................................................... *passim*

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ...........................................................11, 16, 17, 18

*City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*,
  2017 U.S. Dist. LEXIS 134645
  (S.D.N.Y. Aug. 22, 2017) ........................................................................................13

*Comcast v. Behrend*,
  569 U.S. 27 (2013).....................................................................................................20

*Dodona I, LLC v. Goldman Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014) .............................................................................20

*Elkind v. Revlon Consumer Prods. Corp.*,
  2017 U.S. Dist. LEXIS 24512
  (E.D.N.Y. Feb. 17, 2017)............................................................................................8

*Ford v. VOXX Int'l Corp.*,
  2015 U.S. Dist. LEXIS 92705
  (E.D.N.Y. April 13, 2015) ........................................................................................12

**Page**

*Guadagna v. Zucker*,
　332 F.R.D. 86 (E.D.N.Y. 2019) ................................................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
　573 U.S. 258 (2014) ..............................................................................................3, 14

*Hasemann v. Gerber Products Co.*,
　331 F.R.D. 239 (E.D.N.Y. 2019) ............................................................................8

*Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
　338 F.R.D. 205 (S.D.N.Y. 2021) ..........................................................................3, 9

*In re Allergan PLC Sec. Litig.*,
　2021 U.S. Dist. LEXIS 170310
　(S.D.N.Y. Sept. 8, 2021) ......................................................................................18, 21

*In re Aphria, Inc. Sec. Litig.*,
　342 F.R.D. 199 (S.D.N.Y. 2022) ....................................................................8, 9, 17

*In re Barrick Gold Secs. Litig.*,
　314 F.R.D. 91 (S.D.N.Y. 2016) ............................................................................20

*In re Drexel Burnham Lambert Grp.*,
　960 F.2d 285 (2d Cir. 1992) ..................................................................................11

*In re DVI Inc. Sec. Litig.*,
　249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3rd Cir. 2011) ..................16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
　312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................3

*In re IndyMac Mortg.-Backed Sec. Litig.*,
　286 F.R.D. 226 (S.D.N.Y. 2012) ..........................................................................13

*In re Petrobras Sec.*,
　862 F.3d 250 (2d Cir. 2017) ........................................................................7, 18, 22

*In re SCOR Holding (Switz.) AG Litig.*,
　537 F. Supp. 2d 556 (S.D.N.Y. 2008) ....................................................................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
　2019 U.S. Dist. LEXIS 114695
　(S.D.N.Y. July 10, 2019) ................................................................................15, 19, 20

*In re Vale S.A. Secs. Litig.*,
　2022 U.S. Dist. LEXIS 6433
　(E.D.N.Y. Jan. 11, 2022) .................................................................................. *passim*

**Page**

*In re Winstar Communs. Secs. Litig.*,
   290 F.R.D. 437 (S.D.N.Y. 2013) ..................................................................................16, 17

*Krogman v, Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ................................................................15, 17, 18, 19

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) .............................................................................13

*Martinek v. AmTrust Fin. Servs.*,
   2022 U.S. Dist. LEXIS 20056
   (S.D.N.Y. Feb. 3, 2022) .................................................................................9, 10, 22

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010) ...............................................................................13

*Micholle v. Ophthotech Corp.*,
   2022 U.S. Dist. LEXIS 45013
   (S.D.N.Y. Mar. 14, 2022) ...........................................................................11, 12, 13

*Pearlstein v. Blackberry Ltd.*,
   2021 U.S. Dist. LEXIS 14888
   (S.D.N.Y. Jan. 26, 2021) ...............................................................................8, 10, 11

*Pirnik v. Fiat Chrysler Autos., N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) ...............................................................................14

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ....................................................................................20

*Scott v. Quay*,
   338 F.R.D. 178 (E.D.N.Y. 2021) .............................................................................22

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016) .........................................................................18, 19

*Swanson v. Interface, Inc.*,
   2022 U.S. Dist. LEXIS 100506
   (E.D.N.Y. June 6, 2022) ........................................................................................6, 7

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) ....................................................................................8, 20

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008) ....................................................................................18

**Page**

*UFCW Local 1776 v. Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010)........................................................................12

*Villella v. Chem. & Mining Co. of Chile, Inc.*,
333 F.R.D. 39 (S.D.N.Y. 2019) ............................................................... 10-11

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)..........................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)......................................................................................8

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78j(b)....................................................................................1, 13, 20
§78t(a) ...............................................................................................1

17 C.F.R.
§240.10b-5 ..........................................................................................1

Federal Rules of Civil Procedure
Rule 23 .....................................................................................7, 8, 23
Rule 23(a)..............................................................................1, 7, 8, 12
Rule 23(a)(4) ...............................................................................11, 22
Rule 23(b)(3)............................................................................. *passim*
Rule 23(g) ........................................................................................1, 22
Rule 23(g)(1)(A) ...............................................................................22

Securities Exchange Act of 1934 ................................................................2, 6, 17

Securities Act of 1933 ...........................................................................................6

## I.   PRELIMINARY STATEMENT

Lead Plaintiff Steamfitters Local 449 Pension Fund ("Lead Plaintiff," "Plaintiff" or the "Pension Fund"), by its counsel, respectfully submits this memorandum of law in support of its motion for class certification pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (g) seeking to: (i) certify this action as a class action; (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.  In support of its motion, Lead Plaintiff submits this memorandum of law, the Declaration of David A. Rosenfeld ("Rosenfeld Decl."), which attaches the Expert Report of Matthew D. Cain dated January 12, 2023 as Ex. A (referred to herein as "Ex. A, Cain Rpt."), the Declaration of James A. Harding, Chairman of the Pension Fund as Ex. B, the Resume of Robbins Geller as Ex. C, and a [Proposed] Order, filed concurrently herewith.

## II.   INTRODUCTION

This is a federal securities class action alleging that Interface, Inc. ("Interface" or the "Company") and certain of its current and former executives, Daniel T. Hendrix ("Hendrix"), Jay D. Gould ("Gould"), Bruce A. Hausmann ("Hausmann"), and Patrick C. Lynch ("Lynch") (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  The Amended Complaint for Violations of the Federal Securities Laws (the "AC," ECF No. 30), filed in this action, alleges that, from May 12, 2016 through September 28, 2020, inclusive (the "Class Period"), Defendants made materially false and misleading statements and omitted material information about the Company's net income and earnings per share ("EPS"), the accuracy of its financial results, and the strength of its internal controls and disclosure controls.

Lead Plaintiff seeks to certify a Class consisting of:

all those who purchased Interface common stock during the Class Period (the "Class"), and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

Lead Plaintiff fulfills all of the requirements necessary to certify the Class. **First**, there is numerosity. Indeed, the Class is larger than forty members, and is so numerous that joinder would be impracticable. **Second**, this action involves many common issues of law and fact. As the AC details, questions of law and fact common to the Class include whether: (i) Defendants' conduct violated the Exchange Act; (ii) Defendants publicly misrepresented material facts or omitted material facts they were required to disclose; (iii) Defendants knowingly or recklessly disregarded that the alleged misstatements and omissions were false and/or misleading; (iv) the price of Interface common stock was artificially inflated as a result of Defendants' alleged misconduct; and (v) the Class suffered damages when the artificial inflation of Interface common stock dissipated upon revelation of the truth. **Third**, Class members' claims are typical of the claims of the other members of the proposed class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the Exchange Act.

**Fourth**, Lead Plaintiff will fairly and adequately protect the interests of the members of the Class. No antagonism exists between Lead Plaintiff and the Class, and proposed Class Counsel, Robbins Geller, is competent and experienced in class action and securities litigation.

**Fifth**, this case satisfies the predominance requirement of Rule 23(b)(3). Namely, common issues of fact and law – including falsity, materiality, causation, scienter, and damages – are subject to common proof and plainly predominate over individual issues. And because the market for Interface common stock, which traded on the NASDAQ, was efficient during the Class Period, the Class is entitled to the "fraud-on-the-market" presumption of class-wide reliance under *Basic Inc. v.*

- 2 -

*Levinson*, 485 U.S. 224, 246-47 (1988), and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277-78 (2014) ("*Halliburton II*").  *See* Ex. A, Cain Rpt. at ¶¶28-73; 80.

Finally, the "superiority" requirement under Rule 23(b)(3) is satisfied because: (a) joinder of all members of the Class is impracticable; (b) the damages suffered by individual Class members may be relatively small; and (c) the expense and burden of individual litigation make it impracticable for members of the Class to individually redress the wrongs done to them.  *Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 217 (S.D.N.Y. 2021) ("Because in this case, like most complex securities cases, '[m]ultiple lawsuits would be costly and inefficient' and 'although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf,' a class action is the superior method of ensuring efficient and fair adjudication of all claims.") (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 352 (S.D.N.Y. 2015)).

Accordingly, Lead Plaintiff respectfully requests certification of the Class, appointment of the Proposed Class Representative as Class Representative, and appointment of Robbins Geller as Class Counsel.

## III.    STATEMENT OF FACTS COMMON TO THE CLASS

Interface is a designer and producer of modular carpet, or carpet tile. ¶32.[1] Beginning in the second quarter of 2015, and continuing through the second quarter of 2016, Interface reported artificially inflated quarterly and year end income and EPS, which inaccurately reflected the Company's actual performance. ¶36.  Defendants made accounting adjustments to the Company's management bonus accruals, the cash surrender value ("CSV") of a consultant's life insurance

---

[1]    "¶_" refers to paragraphs from the AC.

policy, and stock-based compensation arrangements through manual adjustments which did not comply with Generally Accepted Accounting Principles ("GAAP").  ¶¶37-38.

As a result of these unsupported adjustments, which artificially inflated Interface's income and EPS, Interface met or beat consensus estimates for EPS.  ¶38.  Defendant Lynch directed Gregory J. Bauer ("Bauer"), then-Corporate Controller, to make journal entries in two quarters which failed to comply with GAAP and lacked any support.  ¶38.  Interface's improper accounting entries enabled the Company to make false disclosures in public filings, press releases, and earnings calls representing that it met or exceeded Wall Street analysts' consensus estimates, ¶¶39-40, when, in truth, it had not.  *See, e.g.*, ¶¶6, 66, 103.  Had Interface complied with GAAP, as it was required to and as it stated it had, its earnings would be lower than what was reported and it would have missed the consensus estimates for two quarters in which it falsely reported that it met analysts' consensus estimates.  ¶41.

Beginning with the second quarter of 2015, Interface represented that its EPS of $0.33 "tied our all-time record in the fourth quarter of 2007" which significantly outperformed analysts' consensus estimates as a result of improper accounting practices.  ¶42.  In total, Interface's management bonus accrual and related expenses for Q2 2015 were understated by approximately $1.58 million, or 5% of pre-tax income, and its EPS was falsely inflated by $0.02.  ¶¶48-49.

The Company's improper conduct continued in the third quarter of 2015 when Interface publicly reported it met its EPS estimate of $0.31.  ¶50.  Interface misstated its expenses which inflated Interface's pre-tax income by 12%, or a total of over $3.12 million.  ¶51.  Rather than report that it had met consensus EPS estimates, Interface should have reported a $0.04 miss. ¶51.  Interface also inflated the value of the CSV on a consultant's life insurance policy by about $697,000, which increased its EPS by almost $0.01.  ¶¶56-58.  Had Interface not engaged in this fraudulent conduct, it

would have missed consensus estimates for this quarter.  ¶58.  Interface's fraudulent conduct in the third quarter of 2015 caused the Company's income to be overstated by about $3.12 million, or 12% of pre-tax income, inflating its reported EPS by $0.04.  ¶64.

During the fourth quarter of 2015, Interface artificially inflated its financial results and reported quarterly EPS of $0.28 and an annual EPS of $1.10 and announced the "fourth quarter rounded out a phenomenal year in which Interface posted all-time records for net income and earnings per share[.]"  ¶65.  Unbeknownst to investors, Interface would have reported a $0.03 miss of the consensus for the quarter and would have just met the consensus for the year had it not engaged in improper accounting adjustments.  ¶66.  After this announcement, the Company, including Bauer and Lynch, continued making improper adjustments which did not comply with GAAP.  ¶¶67-71.  The improper conduct caused Interface to overstate income by $1.63 million, or 7% of the quarter's pre-tax income, and inflated its EPS by $0.02.  ¶72.

During the first quarter of 2016, Interface reported weak sales results, so Defendants continued to deliberately adjust their books.  ¶¶73-80.  Interface overstated its income for the first quarter of 2016 by about $2.43 million, or 15% of pre-tax income, and inflated its EPS by $0.03. ¶81.  The second quarter of 2016 was no different when Interface and Hendrix touted the Company's "strong" performance and "the second best quarterly earnings ever" with "just a penny short of the all-time record."  ¶¶82-88.  In the second quarter of 2016, Interface's income was overstated by about $1.9 million, or 7% of pre-tax income, and its EPS was inflated by $0.02.  ¶89.  Analysts continued to react positively and sometimes raised their estimates as a result of this fraudulent conduct.  ¶90.

The SEC began its investigation into the Company's EPS reporting in November 2017 and served subpoenas in February 2018, July 2018, and April 2018. ¶¶94-95.  Interface failed to disclose

- 5 -

the investigation to investors until the third subpoena when the SEC requested Interface conduct an internal investigation on its EPS reporting. ¶95. On April 24, 2019, Interface disclosed the SEC investigation and that Bauer went on paid leave after the Company learned he added notes to materials produced to the SEC. ¶¶96-97. Interface's stock dropped by $1.43 per share, or 8.37%, to close at $15.66 per share on April 25, 2019. ¶98.

The SEC issued an Order on September 28, 2020 (the "SEC Order") finding that Interface had violated multiple federal securities laws. ¶100. The SEC Order found that Bauer and Lynch violated certain sections of the Securities Act of 1933 and the Exchange Act. ¶¶101-104. The SEC also found that Interface deliberately interfered with its investigation by producing documents that were previously non-existent, and modifying other documents that were produced. ¶103. When the SEC Order was disclosed, Interface's stock declined $0.20 per share, or 3.13%, over the following two trading sessions, closing at $6.18 per share on September 29, 2020. ¶105. Lead Plaintiff and other Class Members suffered significant financial losses and damages as a result of Defendants' conduct. ¶¶106, 269, 279, 285, 286.

On March 15, 2021, the Court appointed the Pension Fund as Lead Plaintiff with Robbins Geller as Lead Counsel. ECF No. 20. Lead Plaintiff filed the AC on April 28, 2021 and Defendants moved to dismiss it on June 16, 2021. ECF Nos. 30; 41-42. On June 6, 2022, the Court denied Defendants' motion to dismiss. ECF No. 47; *Swanson v. Interface, Inc.*, 2022 U.S. Dist. LEXIS 100506, at *2 (E.D.N.Y. June 6, 2022).

The Court found that the AC's allegations suggest "that defendants' activities positively affected Interface's stock price and prompted plaintiff and putative class members to invest during this period" and that "the SEC investigation caused Interface's stock price to fall because it both raised the possibility of sanctions and ultimately confirmed that Interface's real [EPS] and pre-tax

- 6 -

income were not what it reported[.]" *Swanson*, 2022 U.S. Dist. LEXIS 100506, at *4.[2] Further, the Court found scienter because "from the second quarter of 2015 until the second quarter of 2016, Lynch and Bauer inflated Interface's EPS by understating its stock-based compensation, bonus accrual, and consultant costs." *Swanson*, 2022 U.S. Dist. LEXIS 100506, at *5-*6. And "the EPS and pre-tax income misstatements were the product of highly unreasonable [procedures] and represented an extreme departure from the standards of ordinary care[.]" *Id.* at *6.

Lead Plaintiff respectfully submits that this motion for class certification should be granted for the reasons that follow.

## IV.    THE PROPOSED CLASS SATISFIES RULE 23

### A.    Legal Standard for Class Certification

Rule 23(a) requires numerosity, commonality, typicality, and adequacy to certify the Class. Fed. R. Civ. P. 23(a). Numerosity requires the class to be "so numerous that joinder of all members is impracticable[.]" *In re Vale S.A. Secs. Litig.*, 2022 U.S. Dist. LEXIS 6433, at *6 (E.D.N.Y. Jan. 11, 2022). Commonality is satisfied upon showing "questions of law or fact common to the class[.]" *Id.* at *6. Typicality is when "claims or defenses of [Lead Plaintiff] are typical of the claims or defenses of the class[.]" *Id.* Finally under adequacy, "the representative parties will fairly and adequately protect the interests of the class." *Id.* Rule 23(a) also has an implicit requirement of ascertainability. *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017).

Fed. R. Civ. P. 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re*

---

[2]    Internal quotations and citations are omitted and emphasis or italics is added unless otherwise indicated.

*Vale*, 2022 U.S. Dist. LEXIS 6433, at *16.  But Lead Plaintiff "need not prove . . . that the legal or factual issues that predominate will be answered in their favor." *Id.* at *17.

Indeed, analysis of a motion for class certification is "rigorous" and "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013); *Guadagna v. Zucker*, 332 F.R.D. 86, 92 (E.D.N.Y. 2019) (discussing how overlap with the merits "is not an invitation for courts to decide the case through a class certification motion.").  "Rather, all that is required is that a class plaintiff show that common questions predominate." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that ***the Second Circuit's general preference is for granting rather than denying class certification***." *Hasemann v. Gerber Products Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019); *see also Elkind v. Revlon Consumer Prods. Corp.*, 2017 U.S. Dist. LEXIS 24512, at *16-17 (E.D.N.Y. Feb. 17, 2017) ("[C]ourts in the Second Circuit employ a liberal rather than restrictive construction of Rule 23, adopting a standard of flexibility in deciding whether to grant certification.").  Lead Plaintiff need only satisfy the Rule 23 requirements under a preponderance of the evidence standard.  *See Pearlstein v. Blackberry Ltd.*, 2021 U.S. Dist. LEXIS 14888, at *16 (S.D.N.Y. Jan. 26, 2021).

**B.      Certification is Proper Under Rule 23(a)**

**1.      The Class is so Numerous that Joinder of All Members Is Impracticable**

"Courts in the Second Circuit presume numerosity when a proposed class is at least 40 members." *In re Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 204 (S.D.N.Y. 2022).  There is no

requirement that Lead Plaintiff show evidence of the exact class size or identity of its members.  *Id.* "In a securities class action, numerosity can be demonstrated by showing that a large number of shares were outstanding and traded during the class period." *Martinek v. AmTrust Fin. Servs.*, 2022 U.S. Dist. LEXIS 20056, at *11-*12 (S.D.N.Y. Feb. 3, 2022) (quoting *Haw. Structural*, 338 F.R.D. at 211).

Interface is a publicly traded company listed on the NASDAQ that averaged greater than 2.21 million shares traded weekly on the NASDAQ.  *See* Ex. A, Cain Rpt. at ¶31.  Given the number of investors that purchased Interface common stock during the Class Period, joinder of all affected purchasers would be impracticable.

### 2. There are Questions of Law and Fact Common to Each Class Member

Commonality, or "questions of law or fact common to the class" requires a showing "that the class members have suffered the same injury." *In re Aphria*, 342 F.R.D. at 204.  Commonality is a "low hurdle" and satisfied when "plaintiffs allege that class members have been injured by similar material misrepresentations and omissions."  *Id.* (finding commonality satisfied because the allegations were based on "one set of material misrepresentations[.]").

The AC alleges that common questions of law and fact exist as to all Class members including: (a) whether Defendants' actions violated the federal securities laws; (b) whether Defendants' statements to the investing public during the Class Period misrepresented or omitted material facts about the business, operations and management of Interface; (c) whether Hendrix, Gould, Hausmann, and Lynch caused Interface to issue false and misleading statements during the Class Period; (d) whether Defendants acted knowingly or recklessly in issuing false and misleading statements and/or omitting material facts; (e) whether Defendants' conduct artificially inflated the

price of Interface common stock during the Class Period; and (f) the extent and measure of damages suffered by the Class.

The resolution of these questions will impact all of the Class members. "[A]s in many putative securities fraud class action cases, all class members' entitlement to relief would turn on whether the misstatements and omissions were false, misleading and material, and whether purchasers . . . suffered losses resulting therefrom." *Martinek*, 2022 U.S. Dist. LEXIS 20056, at *13; *see also Pearlstein*, 2021 U.S. Dist. LEXIS 14888, at *19-*20. As is precisely the case here, commonality is satisfied.

### 3.    Lead Plaintiff's Claims Are Typical of Those of the Class

"The typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Vale*, 2022 U.S. Dist. LEXIS 6433, at *10. Courts in the Second Circuit have established that "the typicality requirement is not demanding." *Martinek*, 2022 U.S. Dist. LEXIS 20056, at *14. "In a securities class action, when plaintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading statements underlying their claims, the claims and nature of the evidence are generally considered sufficient to satisfy the typicality requirement." *Pearlstein*, 2021 U.S. Dist. LEXIS 4888, at *20.

Here, Lead Plaintiff's claims arise from the same course of conduct as the Class members claims – allegations that Defendants engaged in a fraudulent scheme and course of business which deceived investors about the Company's profitability and earnings, artificially inflated the stock price, and caused Lead Plaintiff and other Class members to purchase stock at artificially inflated prices. Lead Plaintiff's claims under the federal securities laws are precisely the claims of the other Class members and therefore share a common injury. *See Villella v. Chem. & Mining Co. of Chile,*

*Inc.*, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (damages need not be identical among class members to satisfy typicality).  Thus, Lead Plaintiff satisfies the typicality requirement.

### 4.      Lead Plaintiff Will Fairly and Adequately Represent the Class

Lead Plaintiff must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy Rule 23(a)(4), Class Counsel must be "qualified, experienced and generally able to conduct the litigation" and Class members must "not have interests that are antagonistic to one another."  *Micholle v. Ophthotech Corp.*, 2022 U.S. Dist. LEXIS 45013, at *8 (S.D.N.Y. Mar. 14, 2022) (*citing In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)); *Balestra v. Atbcoin LLC*, 2022 U.S. Dist. LEXIS 57393, at *12 (S.D.N.Y. Mar. 29, 2022).

First, Lead Plaintiff's interests are not antagonistic to those of the Class.  In fact, Lead Plaintiff and members of the Class purchased Interface common stock at artificially inflated prices and suffered damages as a result of the same alleged materially false and misleading statements and fraudulent scheme.  Therefore, Lead Plaintiff and Class members share the identical interest in establishing that Defendants engaged in the alleged conduct in order to "obtain the highest possible recovery[.]"  *In re Drexel Burnham*, 960 F.2d at 291; *Pearlstein*, 2021 U.S. Dist. LEXIS 14888, at *31 ("Plaintiffs' theory of fraud, if vindicated, would vindicate the interests of the class.").

Lead Plaintiff has adequately represented the interests of the Class since being appointed Lead Plaintiff on March 15, 2021.  ECF No. 20; *see also* Ex. B.  Since then, Lead Plaintiff has vigorously protected the interests of the Class by retaining counsel to file the AC, oppose Defendants' motion to dismiss, and engage in discovery thus far.  *Id.* ¶¶5-7.  Robbins Geller is certainly qualified to be Class Counsel and has extensive experience litigating securities class actions.  *See* Rosenfeld Decl., Ex. C.  Indeed, "Courts within this Circuit have repeatedly found Robbins Geller to be adequate and well-qualified for the purpose of litigating class action lawsuits."  *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015);

- 11 -

*Ford v. VOXX Int'l Corp.*, 2015 U.S. Dist. LEXIS 92705, at \*9-\*10 (E.D.N.Y. April 13, 2015) ("Robbins Geller has served as lead counsel, and successfully prosecuted numerous other securities class action lawsuits."); *see also Micholle,* 2022 U.S. Dist. LEXIS 45013, at \*8 ("[Robbins Geller] is a firm with substantial experience in securities litigation[.]"). The adequacy requirement is satisfied.

### C.    Certification Is Appropriate Under Rule 23(b)(3)

Lead Plaintiff has satisfied all of the requirements under Rule 23(a) in addition to the requirements of Rule 23(b)(3). Rule 23(b)(3) establishes that the Court should certify a Class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are fulfilled.

### 1.    Common Questions of Law and Fact Predominate Over Individual Questions

"Predominance is a test readily met in certain cases alleging consumer or securities fraud[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010).

The Class's claims depend on the same factual circumstances – *i.e.*, the same wrongful course of conduct will need to be proven for each claim to succeed. The facts and circumstances that underpin each of the false statements or omissions alleged are common to each Class member's claims. Plaintiff alleges that this course of conduct inflated the price of Interface common stock.

Thus, "the claim is susceptible to common evidence and proof." *Micholle*, 2022 U.S. Dist. LEXIS 45013, at *9. Class-wide issues certainly predominate.

The Class's claims also depend on proof of common legal issues. The Supreme Court has held that questions of whether a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, the scienter, falsity, and materiality elements of a Section 10(b) claim), and whether the revelations of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, the loss causation element), are each common questions of law and fact that predominate over individualized ones. *See Amgen*, 568 U.S. at 467-70, 475; *see also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008) (existence of "alleged misrepresentations and/or omissions [is] susceptible to generalized proof"); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 235 (S.D.N.Y. 2012) ("[M]ateriality for Securities Act claims is an issue subject to generalized proof."). In addition, "liability for the individual defendants is similarly subject to generalized proof." *City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*, 2017 U.S. Dist. LEXIS 134645, at *34 (S.D.N.Y. Aug. 22, 2017); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 91 (D. Conn. 2010).

Moreover, in securities fraud cases, the predominance requirement is easily met because plaintiffs may avail themselves of a class-wide presumption of reliance established by the Supreme Court: the "fraud-on-the-market" theory espoused in *Basic*, which applies here. 485 U.S. at 246-47; *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 271-72 (2d Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1951 (2021).

### a.      The "Fraud-on-the-Market" Presumption Applies

The fraud-on-the-market theory presumes reliance on material misrepresentations when the stock is traded in a well-developed, efficient market because "the price of a company's stock is determined by the available material information regarding the company and its business[.]" *Basic,*

- 13 -

485 U.S. at 241-242.  Thus, "the typical investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Halliburton II,* 573 U.S. 268.  Once the fraud-on-the-market presumption is established, reliance is presumptively satisfied and may be rebutted only upon a "showing, by a preponderance of the evidence, that the entire price decline on the corrective-disclosure dates was due to something other than its alleged misstatements." *Goldman*, 955 F.3d at 270.

To invoke the presumption of reliance under this theory, a plaintiff need only demonstrate: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268. Each of the *Basic* requirements is readily satisfied here.  Lead Plaintiff and the Class satisfy these requirements.  First, Defendants made statements in publicly filed documents with the SEC, on earnings calls, and in press releases.  Second, Lead Plaintiff along with other Class members, purchased Interface stock during the relevant time period before the truth was revealed.  Lastly, Interface stock traded in an efficient market.

**(1)    Interface Common Stock Traded in an Efficient Market During the Class Period.**

"An efficient market is one in which the prices of the [stock] incorporate most public information rapidly." *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 44 (S.D.N.Y. 2018).  Five factors from *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), are most often considered when analyzing market efficiency:

> (1) the average weekly trading volume of the stock, (2) the number of securities analysts following and reporting on it, (3) the extent to which market makers traded in the stock, (4) the issuer's eligibility to file an SEC registration [Form] S-3, and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the stock's price.

- 14 -

*In re Signet Jewelers Ltd. Sec. Litig.*, 2019 U.S. Dist. LEXIS 114695, at *31 (S.D.N.Y. July 10, 2019). Additionally, courts consider three more factors set forth in *Krogman v, Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). They are: "(1) the market capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders." *Signet*, 2019 U.S. Dist. LEXIS 114695, at *32.

Here, a holistic evaluation of the *Cammer* and *Krogman* factors overwhelmingly supports a finding that the market for Interface common stock was efficient during the Class Period, entitling Plaintiff and the Proposed Class to rely on the fraud-on-the-market presumption of reliance. In support of this motion, Plaintiff submits the Cain Report. *See* Ex. A, Cain Rpt. In the Cain Report, Dr. Cain analyzed Interface common stock using both the *Cammer* and *Krogman* factors and concludes that the market for Interface common stock was efficient throughout the Class Period.

### (i)    Interface Shares Experienced a High Weekly Trading Volume

The average weekly trading volume of Interface common stock during the Class Period was 3.63% of outstanding shares, with an average weekly trading volume of 2.21 million shares of Interface Common Stock during this timeframe. Ex. A, Cain Rpt. at ¶¶30-31. Indeed, an average weekly trading volume of 2% or more strongly presumes market efficiency and a trading volume of 1% "would justify a substantial presumption." *In re Vale*, 2022 U.S. Dist. LEXIS 6433, at *22.

### (ii)    A Sufficient Number of Financial Analysts Covered and Reported on Interface During the Class Period

The number of securities analysts following and reporting on Interface further supports an efficient market. Interface was the subject of coverage by at least 12 analysts during the Class Period. *See* Ex. A, Cain Rpt. at ¶33. These included analysts from well-known firms such as SunTrust Robinson Humphrey and BB&T Capital Markets (now known as Truist Securities

following their merger in 2019), Macquarie Research, Raymond James & Associates, Nomura Securities, Stifel, Nicolaus & Company, and Thompson Research Group. *Id*. This level of analyst coverage is more than enough to demonstrate market efficiency. *See, e.g.*, *In re Winstar Communs. Secs. Litig.*, 290 F.R.D. 437, 446 (S.D.N.Y. 2013) (finding market efficient where three analysts followed security at issue).

Courts also recognize that widespread media coverages is indicative of market efficiency. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 92 (S.D.N.Y. 2015) ("regular press coverage throughout the Class Period" weighed in favor of finding market efficiency). Information about Interface was widely disseminated in the form of media coverage. Ex. A, Cain Rpt. at ¶¶35-36. Thus, the number of analyst reports and the substantial dissemination of news and other information regarding Interface evidences the robust and active market for public information about the Company and supports market efficiency. *Id*.; *see, e.g.*, *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008) (three analysts with 80 analyst reports, together with news items and press releases, "favor[ed] a finding of market efficiency"), *aff'd*, 639 F.3d 623 (3rd Cir. 2011).

### (iii)    Interface Common Stock Traded on the NASDAQ Under the Supervision of Market Makers

The third *Cammer* factor, the number of market makers, provides additional evidence of market efficiency for Interface common stock. At the outset, Interface common stock traded on the NASDAQ during the Class Period. Many courts find this factor alone supports a presumption of market efficiency. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 159 (S.D.N.Y. 2012) (stating that a security listed on NASDAQ, American Stock Exchange, or NYSE is presumed efficient at class certification stage); *Carpenters*, 310 F.R.D. at 81 (collecting cases noting that some courts presume securities traded on national markets to be efficient).

- 16 -

Regardless, there were at least 110 market makers for Interface common stock and brokers providing similar activity over the Class Period. *See* Ex. A, Cain Rpt. at ¶39. This is more than sufficient for market efficiency. *See Winstar*, 290 F.R.D. at 446 (six market makers evidenced market efficiency); *Carpenters*, 310 F.R.D. at 92 (finding 51 market makers sufficient and noting that courts in the Second Circuit have found as few as six market makers adequate to support a finding of efficiency).

**(iv)**     **Interface was Eligible to File Form S-3 During the Class Period**

Interface was eligible to file a Form S-3 during the Class Period. A company is eligible for S-3 registration when, among other things, it has filed Exchange Act reports for a specified length of time and has outstanding float above a certain sizable value. As Dr. Cain notes, Interface was able to file form S-3 throughout the Class Period, further evidencing market efficiency. Ex. A, Cain Rpt. at ¶42.

**(v)**     **The Price of Interface Common Stock Reacted to Company-Specific Announcements During the Class Period**

The fifth *Cammer* factor permits, but does not require, a plaintiff to submit "direct evidence" demonstrating a "cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017). The Second Circuit has held that "a plaintiff seeking to demonstrate market efficiency need not always present direct evidence of price impact through event studies" – particularly where the other, "indirect" *Cammer* and *Krogman* factors provide compelling evidence of market efficiency. *Id*. at 96-98; *see In re Aphria, Inc.,* 342 F.R.D. at 206-207. "[T]he fifth *Cammer* factor is not a mandatory prerequisite in every case for finding market efficiency." *Id.* (disclaiming "rigid adherence to a bright line test."). Here, the first four *Cammer* factors and all of

- 17 -

the *Krogman* factors, discussed below, support market efficiency, rendering unnecessary the need to analyze the *fifth Cammer* factor. *See In re Allergan PLC Sec. Litig.*, 2021 U.S. Dist. LEXIS 170310, at *29 (S.D.N.Y. Sept. 8, 2021) ("All together, these factors so strongly support a presumption of market efficiency, that it obviates the need to examine the empirical evidence necessary to evaluate the fifth *Cammer* factor."); *see also Carpenters*, 310 F.R.D. at 86 ("In the usual case of common or other highly traded and analyzed stock, there is no reason to burden the court with review of an event study and the opposing expert's attack of it.").

Nonetheless, Lead Plaintiff's expert performed a collective event study for Interface common stock, focusing on Interface's earnings announcements and comparing those events to all other days during the Class Period which  further confirms market efficiency with respect to the fifth factor. *See* Ex. A, Cain Rpt. at ¶¶45-60.  "[A]n event study that correlates the disclosures of unanticipated, material information about a security with corresponding fluctuations in price has been considered prima facie evidence of the existence of such a causal relationship." *Petrobras*, 862 F.3d at 278 (*quoting Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 207-08 (2d Cir. 2008)).  As detailed in his report, Dr. Cain's event study identified a cause-and-effect relationship between the release of new, Interface-specific information and the movement in Interface's stock price, further evidencing that Interface common stock traded in an efficient market during the Class Period.

### (vi)    Interface's Market Capitalization Supports Market Efficiency

Market capitalization is an indicator of market efficiency because "investors tend to be more interested in companies with higher market capitalizations, thus leading to more efficiency." *Strougo v. Barclays PLC*, 312 F.R.D. 307, 315 (S.D.N.Y. 2016).  During the Class Period,

Interface's market capitalization averaged $1.06 billion over the Class Period.  *See* Ex. A, Cain Rpt. at ¶62.

**(vii)    Interface Common Stock's Narrow Bid-<br>Ask Spread Supports Market Efficiency**

"A bid-ask spread is the amount by which the asking price for an asset exceeds its bid price." *Signet*, 2019 U.S. Dist. LEXIS 114695, at *34 n. 6.  "This percentage reflects the difference between the highest price a buyer is willing to pay for an asset and the lowest price that a seller is willing to accept."  *Id*.  "A large bid-ask spread is indicative of an inefficient market, because it suggests that the stock is too expensive to trade."  *Krogman*, 202 F.R.D. at 478.  The bid-ask spread of Interface common stock during the Class Period averaged approximately 0.13% over the full Class Period. Ex. A, Cain Rpt. at ¶64.  This is far narrower than the average bid-ask spread among comparison firms and is further evidence of market efficiency.  *Id*. at ¶65.

**(viii)    The High Percentage of Market Float<br>Supports Market Efficiency**

A stock's "float" is the number of shares outstanding, excluding shares held by insiders and affiliated corporate entities.  A higher float indicates greater market efficiency, *see Krogman*, 202 F.R.D. at 478, because when insiders with private information hold large portions of the security, "the price is less likely to reflect only the total of all public information."  *Strougo*, 312 F.R.D. at 316-17.  On average, during the Class Period, approximately 98% of Interface's common shares were held by institutions and other outside investors. *See* Ex. A, Cain Rpt. at ¶67.  Thus, Interface's public float supports market efficiency.

\*          \*          \*

In sum, while not required, all of the *Cammer* and *Krogman* factors support a finding that the market for Interface common stock was efficient during the Class Period.  Thus, class-wide reliance may be presumed under the *Basic* fraud-on-the-market doctrine.

- 19 -

**b.        Damages Are Measurable on a Class-Wide Basis**

Damages in Section 10(b) securities fraud actions are subject to a common methodology that can be applied class-wide.  *See, e.g.*, *Dodona I, LLC v. Goldman Sachs & Co.*, 296 F.R.D. 261, 271 (S.D.N.Y. 2014) ("[I]n light of the class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance . . . .").  The Supreme Court in *Comcast v. Behrend*, 569 U.S. 27, 35 (2013), held that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory."  The Second Circuit has clarified that "*Comcast* does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 402 (2d Cir. 2015).  "All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes*, 780 F.3d at 88.

Here, damages will be calculated on a class-wide basis, consistent with Plaintiff's theory of the case.  *See* Ex. A, Cain Rpt. at ¶¶74-79.  As Dr. Cain explains,  valuation tools, including an event study, would be used to assess whether the alleged misrepresentations and omissions caused Interface's stock price to be artificially inflated during the Class Period, and whether corrective disclosures caused the inflation to dissipate.  Indeed, courts in this Circuit routinely find that damages in securities fraud cases can be calculated on a class-wide basis.  *See, e.g.*, *Signet*, 2019 U.S. Dist LEXIS 114695, at *57 (event studies are a "generally accepted method for measuring damages in a securities fraud class action"); *In re Barrick Gold Secs. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016) (Section 10(b) damages are "measurable on a class-wide basis" and "do[] not create individualized damages issues that defeat predominance").  Dr. Cain has concluded that damages will be subject to measurement on a class-wide basis at the appropriate juncture.  *See* Ex. A, Cain

Rpt. at ¶¶74-79.  Therefore, Plaintiff's proffer of a class-wide approach to calculating damages further supports predominance.

### 2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider the following factors in making this analysis: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).

"Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws."  *In re Allergan*, 2021 U.S. Dist. LEXIS 170310, at *50.

*First*, the Class consists of a large number of geographically dispersed purchasers of Interface common stock whose individual damages likely are too small to make individual litigation economically worthwhile.  The Class members, therefore, have little interest in asserting separate claims.  *See, e.g.*, *In re Allergan*, 2021 U.S. Dist. LEXIS 170310, at *50 ("Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.").

*Second*, Lead Plaintiff is not aware of any other litigation concerning this controversy.  *Third*, resolving the litigation in this Court has many benefits, including eliminating the risk of inconsistent adjudications and promoting the fair and efficient use of the judicial system.  *Finally*, Lead Plaintiff does not foresee any management difficulties that will preclude this case from being maintained as a class action.  Rather, litigating each claim separately "would be wasteful, and result in delay and an

- 21 -

inefficient expenditure of judicial resources." *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008). Thus, the certification of this action as a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

### D.      The Implied Ascertainability Requirement is Satisfied

The implied requirement of ascertainability requires "that a class be defined using objective criteria that establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 264. Ascertainability "is not a heavy burden" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Scott v. Quay*, 338 F.R.D. 178, 186 (E.D.N.Y. 2021). Here, the Class is ascertainable in subject matter, timing, and location, and therefore this requirement is met. *See In re Vale*, 2022 U.S. Dist. LEXIS 6433, at *76.

### E.      The Court Should Appoint Lead Plaintiff's Choice of Counsel

As discussed above, Plaintiff has satisfied the adequacy prong of Rule 23(a)(4). In addition, Robbins Geller satisfies the considerations of Rule 23(g) and should be appointed as Class Counsel.[3] Among other things, Robbins Geller has conducted a thorough investigation of Defendants' conduct, successfully opposed Defendants' motion to dismiss, worked with experts on issues common to the Class, and continues to pursue Plaintiff's claims with zeal and vigor. In short, Robbins Geller has diligently prosecuted Class members' claims to date, and is committed to doing so for as long as it takes to secure a successful outcome.

Further, Robbins Geller has an indisputable history litigating securities class actions and committing resources to successfully resolve cases for Class members. *See Martinek*, 2022 U.S.

---

[3]      In appointing class counsel pursuant to Rule 23(g), a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Rule 23(g)(1)(A). All four factors support the appointment of Robbins Geller as Class Counsel.

Dist. LEXIS 20056, at *58 (appointing class counsel with "significant experience litigating in [securities class actions]" where Lead Plaintiff was "an experienced investor" and worked with counsel "diligently together to initiate and prosecute this action.").

## V. CONCLUSION

Lead Plaintiff has shown fulfillment of all the requirements under Rule 23 for class certification. Thus, Lead Plaintiff respectfully submits that the Court: (i) certify this action as a class action; (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint Robbins Geller as Class Counsel.

DATED: January 12, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
PHILIP T. MERENDA
NATALIE C. BONO

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
pmerenda@rgrdlaw.com
nbono@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

- 23 -