UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ x

THOMAS S. SWANSON, Individually and on :   Civil Action No. 1:20-cv-05518-BMC-RER
Behalf of All Others Similarly Situated,   :
    :   CLASS ACTION
                  Plaintiff,   :
    :   DECLARATION OF DAVID A.
    :   ROSENFELD IN SUPPORT OF: (1) LEAD
    vs.   :   PLAINTIFF'S MOTION FOR FINAL
    :   APPROVAL OF CLASS ACTION
INTERFACE, INC., DANIEL T. HENDRIX,   :   SETTLEMENT AND APPROVAL OF PLAN
JAY D. GOULD, BRUCE A. HAUSMANN   :   OF ALLOCATION; AND (2) LEAD
and PATRICK C. LYNCH,   :   COUNSEL'S MOTION FOR AN AWARD
    :   OF ATTORNEYS' FEES AND EXPENSES
                  Defendants.   :   AND AN AWARD TO LEAD PLAINTIFF
_____ x   PURSUANT TO 15 U.S.C. §78u-4(a)(4)

4865-8359-1542.v1

I, DAVID A. ROSENFELD, declare as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the State of New York and before this Court.  I am a partner of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), counsel for Lead Plaintiff Steamfitters Local 449 Pension Fund (the "Fund" or "Lead Plaintiff") and the Settlement Class in the above-captioned action (the "Action" or "Litigation").  Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to them in the Stipulation of Settlement, dated May 17, 2023 (the "Stipulation").  *See* ECF 77.

2.      I submit this declaration, pursuant to Rule 23 of the Federal Rules of Civil Procedure, in support of: (i) Lead Plaintiff's motion for final approval of the all-cash settlement of $7,500,000 (the "Settlement Amount") and approval of the proposed Plan of Allocation; and (ii) Lead Counsel's motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4).

3.      I have personal knowledge of the matters set forth herein based on my active participation in all material aspects of the prosecution and resolution of this Action.  If called upon, I could and would competently testify that the following facts are true and correct.

## I.    INTRODUCTION AND OVERVIEW

4.      The Settling Parties have entered into a settlement of the Settlement Class's claims alleged in this Action against defendants Interface, Inc. ("Interface" or the "Company"), Daniel T. Hendrix, Jay D. Gould, Bruce A. Hausmann, and Patrick C. Lynch (collectively, "Defendants").

5.      The Settlement is a very favorable result for the Settlement Class.  The Stipulation provides for the non-reversionary payment of $7,500,000 in cash to the Settlement Class in exchange for a release of the Released Claims (as defined in the Stipulation) against Defendants and their Related Parties.  As described herein, the Settlement is the product of Lead Plaintiff's and Lead

- 1 -

4865-8359-1542.v1

Counsel's careful analysis and vigorous litigation of the claims, as well as extensive arm's-length settlement negotiations between the parties, which took place during and after two separate mediation sessions supervised by Jed Melnick, a mediator with substantial experience in securities class actions.

6.      The benefit of the Settlement must be weighed against the significant chance that the Settlement Class might obtain a much smaller recovery after years of protracted litigation – or none at all.  If at any stage of the Litigation, Defendants prevailed on their various arguments disputing liability or seeking to reduce or eliminate the Settlement Class's damages, the Settlement Class would have been left with little or no recovery.  The Settlement Amount represents a recovery of between 18% and 37% of reasonably recoverable damages, assuming Lead Plaintiff was able to establish liability and the full extent of the alleged damages – or more if any of Defendants' arguments regarding causation and damages had been successful.  In sum, the Settlement provides for a substantial monetary benefit to the Settlement Class now, and is an excellent recovery in light of the significant risks involved in continued litigation.

7.      As detailed herein, the Settlement is the product of a comprehensive investigation, detailed analysis, and extensive arm's-length negotiations by experienced counsel, which involved the assistance of an experienced mediator.  Lead Counsel, working closely with Lead Plaintiff, negotiated the Settlement with a thorough understanding of the strengths and potential weaknesses of the claims asserted against each of the Defendants.  This understanding was based on Lead Counsel's vigorous efforts, which included, *inter alia*: (a) successfully moving for the Fund's appointment as Lead Plaintiff; (b) undertaking an extensive investigation of the facts alleged in the Amended Complaint for Violations of the Federal Securities Laws (ECF 30) (the "Complaint"); (c) successfully opposing Defendants' motion to dismiss; (d) moving for class certification;

(e) opposing Defendants' motion to compel discovery; (f) negotiating extensive discovery with defense counsel; (g) responding to document requests propounded by Defendants; and (h) drafting a detailed mediation statement. As a result of these efforts, Lead Counsel and Lead Plaintiff were fully informed regarding the strengths and weaknesses of the case against each of the Defendants before agreeing to the Settlement.

8. As discussed herein, Lead Plaintiff faced serious risks in going forward with the Litigation. Lead Plaintiff faced the significant risk that Defendants could ultimately show, among other things, that: (i) they did not make any actionable misstatements or omissions; (ii) they did not act with the requisite scienter; and (ii) the Settlement Class's losses were caused by nonactionable factors unrelated to the alleged misstatements and omissions. Accordingly, while Lead Counsel believes that the Settlement Class's claims have merit, there was a significant chance that one or more of Defendants' arguments may have ultimately proved insurmountable – and the Settlement Class may have ended up with little or no recovery. The significance of these risks was heightened by the prospect of continued, costly litigation, including the completion of fact discovery, expert discovery, dispositive motions, a trial, and likely ensuing appeals. The Settlement avoids these and other risks while providing a substantial and immediate monetary benefit to the Settlement Class.

9. The other terms of the Settlement are the product of careful negotiations between the parties and are set forth in the Stipulation. For all of the reasons stated herein, Lead Counsel believes the Settlement is fair, reasonable and adequate, is in the best interests of the Settlement Class, and should be approved. Furthermore, as set forth in its accompanying declaration, the Settlement has the full support of the Lead Plaintiff.

10. Lead Counsel seeks attorneys' fees of 33% of the Settlement Amount, plus litigation expenses of $116,594.97, with interest thereon earned at the same rate as the Settlement Amount.

- 3 -

4865-8359-1542.v1

The fee request has Lead Plaintiff's full support.  *See* Declaration of James A. Harding ("Lead Plaintiff Decl."), ¶6, submitted herewith.  The requested fee amounts to a slight multiple of Lead Counsel's collective "lodestar" (*i.e.*, Lead Counsel's hourly rates multiplied by the hours spent prosecuting and settling the Action).

11.     Pursuant to the Court's Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23 and Authorizing Notice to the Class, dated May 26, 2023 (the "Preliminary Approval Order"), the Notice and Proof of Claim form (the "Proof of Claim") were mailed to all Settlement Class Members and nominees who could be identified with reasonable effort, and the Summary Notice was published once in *The Wall Street Journal*, and transmitted over *Business Wire*.

12.     The Notice and Proof of Claim advised all recipients of, among other things: (i) the terms of the Settlement; (ii) the definition of the Settlement Class; (iii) Settlement Class Members' right to exclude themselves from the Settlement Class; (iv) Settlement Class Members' right to object to any aspect of the Settlement, including the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; and (v) the procedures and deadline for submitting a Proof of Claim in order to be eligible for a payment from the proceeds of the Settlement.

13.     The Court-ordered deadline for filing objections to the Settlement and requesting exclusion from the Settlement Class is August 28, 2023.  To date, no objections to any aspect of the Settlement have been filed and no requests for exclusion from the Settlement Class have been received.

14.     Gilardi & Co. LLC, which has been retained by Lead Counsel and approved by the Court as Claims Administrator, has advised that as of August 10, 2023, a total of 30,766 copies of the Notice and Proof of Claim have been mailed to potential Settlement Class Members and their nominees.  Additionally, the Notice and Proof of Claim, Stipulation, and Preliminary Approval

- 4 -

Order have been posted on the website established for the Settlement: www.InterfaceSecuritiesSettlement.com.

15.     The following is a summary of the principal events that occurred during the course of the Litigation and legal services provided by Lead Counsel.

## II.    LEAD PLAINTIFF'S PROSECUTION OF THE CASE

### A.    The Commencement of the Action and Appointment of Lead Plaintiff and Lead Counsel

16.     On November 12, 2020, the initial class action complaint in this Litigation was filed in the United States District Court for the Eastern District of New York (the "Court"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). ECF 1.

17.     In accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), notice of the pendency of the action was timely published, and on January 11, 2021, the Fund moved for appointment as Lead Plaintiff.  ECF 6.

18.     On March 15, 2021, the Court issued an Order appointing the Fund as Lead Plaintiff, and approving Lead Plaintiff's choice of Robbins Geller as Lead Counsel.  ECF 20.

19.     Lead Counsel conducted an extensive investigation prior to filing the Complaint. This investigation included, but was not limited to, a review and analysis of: (i) Interface's public filings with the SEC; (ii) transcripts of Interface's public conference calls; (iii) Interface's press releases; (iv) reports of securities analysts following Interface; (v) independent media reports regarding Interface; (vi) economic analyses of Interface's stock price movement and pricing and volume data; and (vii) other publicly available information.

20.     Based on this investigation, Lead Counsel prepared a detailed amended complaint on behalf of Lead Plaintiff and all persons, other than Defendants and other excluded individuals and

- 5 -

4865-8359-1542.v1

entities, who purchased the common stock of Interface during the period from May 12, 2016 and September 28, 2020, inclusive (the "Class Period"). Lead Plaintiff filed the Complaint on April 28, 2021.

### B.   The Complaint and a Summary of the Settlement Class's Allegations

21.     The Complaint alleges that, in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder, Defendants made materially false and misleading statements concerning Interface's financial performance, including income and earnings per share ("EPS"). In particular, Lead Plaintiff alleges that Defendants misrepresented and omitted material facts by utilizing improper and fictitious manual adjustments to Interface's accounting entries by, or at the direction of, its then Chief Financial Officer, Defendant Patrick C. Lynch ("Lynch"), and the Company's then controller, Gregory J. Bauer ("Bauer"), which caused Interface's income and EPS figures to be materially misstated at all relevant times. These adjustments did not comply with Generally Accepted Accounting Principles ("GAAP") and artificially inflated Interface's income and EPS. As a result, Interface falsely reported meeting or exceeding EPS growth estimates.

22.     Lead Plaintiff further alleges that this conduct was the subject of an SEC investigation that resulted in an Order Instituting Public Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Exchange Act, and Rule 102(e) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order (the "SEC Order").

23.     Lead Plaintiff further alleges, as corroborated by the SEC Order, that "Interface employees caused Interface to produce documents in response to Commission investigative requests that were suggestive of contemporaneous support for journal entries that, in truth, did not exist at the

4865-8359-1542.v1

time the entries were recorded," and had continued to modify documents even after the SEC began its investigation.

24.    As alleged in the Complaint, these adjustments to the Company's income and EPS were intended to ensure that the Company met or exceeded analysts' consensus estimates and were also done, in part, because Interface's Omnibus Stock Incentive Plan had been amended at the time to be tied to certain performance objectives, including EPS and the Company's stock price.

### C.    Defendants' Motion to Dismiss

25.    Pursuant to the Court's individual practices, Defendants submitted a pre-motion letter in support of their anticipated motion to dismiss the Complaint on May 5, 2021, and Lead Plaintiff responded by letter dated May 13, 2021.  ECF 36 and 38.  On May 19, 2021, the Court held a conference to discuss the two letters and set a schedule for the briefing on Defendants' motion to dismiss.

26.    On June 16, 2021, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the PSLRA.  ECF 41-43.  Defendants principally argued that it was improper for Lead Plaintiff to rely on the SEC Order in framing many of its allegations, and that in any event, Defendants' conduct did not constitute a violation of the federal securities laws because Defendants' statements were not actionable misstatements, and there were insufficient allegations supporting loss causation.  *Id*.

27.    Defendants likewise argued that the Complaint failed to raise a cogent inference of scienter, and that Lead Plaintiff's motive allegations failed because the stock sales alleged by Lead Plaintiff as contributing to an inference of scienter at the pleading stage did not pass muster.

28.    On July 19, 2021, Lead Plaintiff filed its opposition to the motion to dismiss (the "Opposition").  ECF 44.  In the Opposition, Lead Plaintiff responded to Defendants' arguments

4865-8359-1542.v1

concerning a lack of falsity, scienter, and the impropriety of Lead Plaintiff relying on the SEC Order in supporting its allegations in the Complaint.  Lead Plaintiff further responded to Defendants' arguments concerning what is needed to allege loss causation at the motion to dismiss stage.

29.    The Opposition also elaborated on the strong inference of scienter pleaded in the Complaint, explaining that Bauer and Lynch had directed the accounting fraud, and made alterations to the journal entries submitted to the SEC in connection with the investigation underpinning the SEC Order.

30.    On August 2, 2021, Defendants filed a reply brief in support of their motion to dismiss the Complaint.  ECF 45.

### D.    The Court Sustains the Complaint

31.    On June 6, 2022, the Court issued an Opinion and Order granting in part and denying in part Defendants' motion to dismiss (the "Opinion and Order").  ECF 47.  The Court sustained Lead Plaintiff's falsity and scienter allegations, and found that the motion to dismiss stage was not the proper stage of the proceedings to address issues concerning loss causation as they were pled in the Complaint.  Moreover, the Court upheld Lead Plaintiff's use of the conclusions drawn by the SEC in the SEC Order.  The Court also concluded that Lead Plaintiff had pled a cogent inference of scienter by alleging that Defendants Bauer and Lynch had directed the accounting improprieties, and that at a minimum, Bauer had made alterations to contemporaneous journal entries that were submitted to the SEC during the SEC's investigation of the alleged accounting improprieties.

32.    On July 21, 2022, Defendants filed their answer to the Complaint, which denied Lead Plaintiff's substantive allegations and alleged numerous affirmative defenses.  ECF 51.

- 8 -

**E.    Fact Discovery**

33.    Lead Plaintiff vigorously pursued discovery in this Litigation.  These efforts included drafting and serving requests for production of documents, engaging in protracted meet and confer efforts, and pursuing Freedom of Information Act requests from the SEC.

34.    Following entry of the Court's Opinion and Order, Lead Counsel immediately commenced formal discovery efforts.  Lead Counsel met and conferred with counsel for Defendants pursuant to Federal Rule of Civil Procedure 26(f) concerning case management, pre-trial scheduling, and fact discovery.  Lead Counsel also negotiated and prepared a Civil Case Management Plan, which the parties submitted to the Court on September 28, 2022.

35.    On August 2, 2022, Lead Plaintiff served Defendants with Lead Plaintiff's First Set of Requests for Production of Documents.  Defendants responded to Lead Plaintiff's Requests on September 1, 2022.

36.    On August 25, 2022, Defendants served their First Request for Production of Documents and Defendants' First Set of Interrogatories to Plaintiff.  Lead Plaintiff responded to both on October 10, 2022.  The parties then engaged in protracted meet and confer negotiations concerning the scope of discovery.  Ultimately, Lead Plaintiff produced 60 documents, after reviewing numerous documents for privilege and relevance.  Defendants produced 1,860 documents.

37.    Defendants engaged in third party discovery, seeking documents and communications from Lead Plaintiff's investment advisor, Chartwell Investment Partners ("Chartwell").  A dispute arose between Defendants and Chartwell, and Defendants filed an Order to Show Cause to compel document production from Chartwell, and argued that Lead Plaintiff should pay Chartwell's discovery costs if the Court did not require Chartwell to pay its own costs.  ECF 59, 62.  Lead Plaintiff opposed the portion of Defendants' Order to Show Cause that related to Defendants'

4865-8359-1542.v1

arguments that Lead Plaintiff should be compelled to assist Defendants in their third party discovery efforts, or bear any costs associated therewith. ECF 63. Ultimately, the Court agreed, and found that Lead Plaintiff bore no agency responsibility, or financial obligation in relation to Defendants' third party discovery process. ECF 72.

### F.    Class Certification

38.    While fact discovery negotiations were ongoing, Lead Plaintiff moved for class certification on January 12, 2023, as contemplated by the scheduling order. ECF 67-69. Lead Plaintiff requested that the Court certify the putative class, appoint the fund as class representative, and appoint Robbins Geller as class counsel. The motion for class certification addressed all of the requirements of Federal Rule of Civil Procedure 23, as well as the "fraud-on-the-market" presumption of reliance endorsed by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014).

39.    In support of its motion, Lead Plaintiff submitted an expert report from Professor Matthew Cain, Ph.D. *See* ECF 69-1. Professor Cain's report explained why all five of the *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) and all three of the *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) factors – which courts routinely consider in addressing class certification – were met; detailed the event study he undertook concerning Interface's stock price movement; and concluded that Interface common stock traded in an efficient market throughout the Class Period. Professor Cain also opined that damages consistent with Lead Plaintiff's theory of liability could be determined on a class-wide basis. Lead Counsel spent substantial time consulting with Professor Cain on his report.

**G.     Mediation**

40.     The parties engaged the services of Jed Melnick, an experienced mediator in the area of securities class actions, to assist in mediating the case.  In advance of the first mediation, on September 8, 2022, the parties submitted confidential mediation statements.  Despite intense negotiations throughout the day, the parties were ultimately unable to resolve their differences and the litigation continued.

41.     After numerous phone calls and meetings with the mediator, the parties agreed to a second mediation session with Mr. Melnick, in an attempt to bridge the gap between the parties' respective positions.  This session also concluded without a resolution, although further progress had been made.

42.     Together with Mr. Melnick, the parties subsequently participated in a joint Zoom meeting with their financial experts to discuss the parties' differences regarding damages calculations in this case.  Ultimately, after further protracted negotiations between the parties and Mr. Melnick, the parties agreed on the terms of the Settlement before the Court.

**H.     Preliminary Approval of the Settlement**

43.     On May 17, 2023, Lead Plaintiff filed its Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class, and Approval of Notice to the Class.  ECF 75-77. In connection therewith, Lead Plaintiff requested that the Court: (i) preliminarily approve the Settlement; (ii) certify the proposed Settlement Class; (iii) approve the form and manner of the settlement notices to Members of the Settlement Class; and (iv) schedule a hearing on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.

4865-8359-1542.v1

44.    The Court granted Lead Plaintiff's motion for preliminary approval on May 26, 2023. ECF 80.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS APPROVAL

45.    The Settlement of $7,500,000 was the result of extensive, arm's-length negotiations between the parties, with the assistance of an experienced mediator.  The Settlement reflects the strengths and weaknesses of the case, and would not have been achieved without Lead Counsel's efforts described herein.

46.    As set forth below and in the Motion for Final Approval, the Settlement is a favorable result for the Settlement Class when evaluated in light of the risks of continued litigation and all of the other circumstances that courts consider when determining whether to grant final approval of a proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

47.    The Settlement avoids the hurdles Lead Plaintiff would have to clear, not only with respect to proving the full amount of the Settlement Class's damages but liability as well, and avoids the significant costs associated with further litigation of this complex securities class action, particularly summary judgment and trial.  In view of the significant risks and additional time and expense involved in continuing to litigate this Action, Lead Counsel respectfully submits that the Settlement is fair, reasonable, and adequate and warrants the Court's final approval.

### A.    The Risks to Establishing Falsity and Scienter

48.    While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they also recognize that there were considerable risks that made the outcome of this Litigation uncertain.  Lead Counsel carefully considered these risks throughout the Litigation and in recommending that Lead Plaintiff settle this matter.

- 12 -

4865-8359-1542.v1

49. For example, Lead Plaintiff faced significant risks in proving that Defendants' alleged statements and omissions were materially false and misleading. Defendants would have continued to argue that Lead Plaintiff would be unable to show materiality of the alleged false statements and omissions concerning the Company's financial results because the alleged conduct, Defendants argue, amounts to less than 1% of assets during the reporting periods in question. Defendants would maintain that Lead Plaintiff could not prove materiality. Another hurdle in proving materiality is Defendants' argument that the alleged statements regarding accounting errors are non-actionable opinion statements.

50. Lead Plaintiff also faces risks in proving that Defendants acted with scienter. Defendants would certainly reassert their arguments that Lead Plaintiff failed to allege a strong inference of scienter based on stock sales and incentive compensation. Defendants would further maintain that Lead Plaintiff could not prove scienter based on allegations of conscious misbehavior or recklessness because the alleged accounting principle violations and the SEC's investigation into the Company are not indicative of such. Proving scienter remains a significant risk for Lead Plaintiff, and Defendants insist that the evidence will show that their conduct was correct or reasonable.

51. Additionally, Defendants maintain that the SEC's negligence findings against the Company are the sole basis for Lead Plaintiff's allegations and do not support findings of fraud needed to prove liability under Section 10(b), especially with respect to proving that Defendants acted with scienter. To that end, Defendants will argue that any allegations based solely on the SEC's Order are improper to begin with and should not be considered at all. Even if they are considered, Defendants would continue to argue that Lead Plaintiff's allegations are insufficient because they are based on the Company's no-admit administrative settlement with the SEC for a

negligent misstatement claim.  Defendants would argue, therefore, that Lead Plaintiff's allegations mirror the SEC's findings and are not indicative of fraud.

52.    Indeed, Lead Plaintiff would face a number of challenges in proving the allegations against Defendants and convincing a jury that Defendants' misstatements were material and that Defendants acted with scienter.

**B.    The Risks to Establishing Loss Causation and Damages**

53.    Even if Lead Plaintiff succeeded in overcoming these arguments and establishing falsity and scienter, Defendants' arguments and defenses relating to loss causation and damages presented additional obstacles.  Indeed, Defendants' primary defense to liability was that Lead Plaintiff could not prove loss causation, and Defendants were adamant that the Court would grant their anticipated motion for summary judgment on loss causation grounds.  According to Defendants, because Interface's stock price rose on the date of the ultimate disclosure, no loss causation existed, and thus could not be proven by Lead Plaintiff.  Further, Defendants argue that the date the SEC investigation was announced could not constitute a corrective disclosure and even if it could, Lead Plaintiff will not be able to prove damages.

54.    While Lead Plaintiff would have had the burden of identifying and isolating the fraud-related damages suffered by Settlement Class Members, Defendants only had to identify a flaw with the methodology utilized by Lead Plaintiff's expected experts and prevail on a *Daubert* motion or win the inevitable, and inherently unpredictable, "battle of the experts" between the parties' loss causation and damages experts before the jury.  Defendants would have argued that the case either should not even reach a jury or that the jury had no choice but to determine that there were little or no cognizable damages.

4865-8359-1542.v1

55.     Although Lead Plaintiff is confident that it would have been able to support its claims with qualified and persuasive expert testimony, jury reactions to competing experts are difficult to predict, and Defendants would surely have put forth well-credentialed experts in an effort to prove their loss causation and damages arguments.  These risks could not be eliminated until after a successful trial and the exhaustion of all appeals.  Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the total Settlement Amount – or even nothing at all.

56.     Further, Lead Plaintiff could face hurdles at the class certification stage, where Defendants would likely raise damages and loss causation issues with respect to the prospective class.  And Defendants maintain that Lead Plaintiff would not be able to certify a class based on their damages and loss causation arguments.  In short, the parties disagreed on the merits of this case, including whether or not damages were suffered and recoverable.  Defendants strongly defended this lawsuit with experienced attorneys and consistently denied that they were liable in any respect. Recovery of any amount at trial was far from certain.

### C.     The Complexity, Expense, and Likely Duration of the Litigation

57.     The continuation of this Action would be long, complex, and costly to all parties involved.  Were the litigation to proceed, the completion of fact and expert discovery, summary judgment motions, trial, and possible appeals would be lengthy and would entail considerable additional costs.

58.     Assuming Lead Plaintiff prevailed at trial, it is likely that Defendants would file post-trial motions and appeals to limit or overturn any verdict in Lead Plaintiff's favor.  The post-trial motion and appeals process would likely span several years, during which time the Settlement Class would receive no payment.  In addition, an appeal of any verdict would carry with it the risk of

- 15 -

4865-8359-1542.v1

reversal, in which case the Settlement Class would receive no payment despite having prevailed on the claims at trial. While Lead Counsel was confident in its allegations, it faced both factual and legal challenges in presenting this matter to a jury and potentially on appeal.

### D.    Additional Factors

59.    If Lead Plaintiff prevailed and obtained a judgment, it likely would have been years before the Settlement Class received a recovery, if any. The limited insurance policies – which are being used to fund the Settlement – would have been further depleted. The Settlement avoids these risks and expenditures and provides an immediate recovery for the Settlement Class.

60.    The experience of Lead Counsel also favors the Settlement. Robbins Geller is nationally recognized for its experience and expertise in complex class action and securities litigation. Our reputations as attorneys who are willing to zealously carry a meritorious case through trial and appeals gave us a strong negotiating position, even under the challenging circumstances presented here. *See* Declaration of David A. Rosenfeld Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."), Ex. D, submitted herewith (firm résumé).

61.    Finally, the lack of opposition to the Settlement also militates in favor of the Settlement. As outlined below, notice has already been widely disseminated to potential Settlement Class Members and the absence of any objections to the Settlement weighs in favor of its approval.

62.    Based on all of these factors, Lead Counsel and Lead Plaintiff respectfully submit that the Settlement, which provides a very substantial recovery to Settlement Class Members, outweighs the risks of continued litigation. The Settlement provides Settlement Class Members with a substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all if the Litigation were to continue.

4865-8359-1542.v1

## IV.    MAILING AND PUBLICATION OF NOTICE OF SETTLEMENT

63.    The Preliminary Approval Order, among other things, appointed Gilardi & Co. LLC as the Claims Administrator and directed it to cause the mailing of the Notice and Proof of Claim to all potential Settlement Class Members identifiable with reasonable effort, no later than June 15, 2023.  ECF 80.

64.    The Preliminary Approval Order also directed Lead Counsel to cause the Summary Notice to be published once in *The Wall Street Journal*, and once over a national newswire service, no later than June 22, 2023.  *Id*.

65.    The Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith, states that 30,766 copies of the Notice and Proof of Claim have been mailed to potential Settlement Class Members, banks, brokers, and nominees to date, and that the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire* on June 22, 2023, in compliance with the Preliminary Approval Order.  Murray Decl., ¶¶11-12.

66.    No timely objections to any aspect of the Settlement were received, and to-date, no requests for exclusion have been received.  *Id*., ¶16.

## V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

67.    The Plan of Allocation is set forth in the Notice (*see* Murray Decl., Ex. A), and provides that the Net Settlement Fund will be distributed to Settlement Class Members who submit a timely Proof of Claim whose claims for recovery have been permitted under the terms of the Stipulation ("Authorized Claimants").  The Plan of Allocation provides that a Settlement Class Member will be eligible to participate in the distribution of the Net Settlement Fund only if the

4865-8359-1542.v1

Settlement Class Member has an overall net loss on all of his, her, its, or their transactions in Interface common stock during the Class Period.

68.    For purposes of determining the amount an Authorized Claimant may recover under the Plan of Allocation, Lead Counsel conferred with its economics and damages expert.  The Plan of Allocation is premised on the out-of-pocket measure of damages and is designed to measure the difference between what Settlement Class Members paid for Interface common stock during the Class Period and what the price of Interface common stock would have been had the allegedly omitted and misstated information been accurately disclosed.

69.    Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund are required to submit a valid Proof of Claim and all required information, postmarked or submitted online no later than September 13, 2023.  As provided in the Notice, after deduction of taxes, approved costs, and attorneys' fees and expenses and an award to Lead Plaintiff, the Net Settlement Fund will be distributed, according to the Court-approved Plan of Allocation, to Authorized Claimants who are entitled to a distribution of at least $10.00.

70.    Gilardi & Co. LLC, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's total Recognized Loss compared to the total Recognized Losses of all Authorized Claimants.  Lead Plaintiff's losses will be calculated in the same manner.

71.    Lead Counsel believes that the Plan of Allocation, which is similar to hundreds of plans approved by courts over decades, provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.  To date, not a single Settlement Class

4865-8359-1542.v1

Member has objected to the proposed Plan of Allocation.  The Plan of Allocation is fair and reasonable, and should be approved.

## VI.   LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

72.    The successful prosecution of this Action required Lead Counsel's attorneys, investigators, paraprofessionals, and staff to perform 2,808 hours of work and incur $116,594.97 in expenses.  *See* Robbins Geller Fee Decl., Exs. A-B.  Based on the extensive efforts on behalf of the Settlement Class, as described above, Lead Counsel is applying for compensation from the Settlement Fund on a percentage basis, and requests a fee in the amount of 33% of the Settlement Amount, plus interest – a fee approved by Lead Plaintiff.

### A.    The Requested Fee Is Reasonable

73.    In light of the nature and extent of the Litigation, the diligent prosecution of the Action, the complexity of the factual and legal issues presented, and the other factors described above and in the accompanying application for attorneys' fees and expenses, Lead Counsel believes that the requested fee of 33% of the Settlement Amount, plus interest, is fair and reasonable.

74.    A 33% fee award is consistent with percentages awarded by courts in this District and around the country (*See* Fee Memorandum, III.C.), and is justified by the specific facts and circumstances in this case and the substantial risks that Lead Counsel had or in the future would have had to overcome at the class certification and summary judgment phases of the Litigation, and at trial, as set forth herein.

### B.    The Requested Fee Was Negotiated and Is Supported by Lead Plaintiff

75.    Lead Plaintiff spent considerable time and effort fulfilling its duties and responsibilities in this case, including answering discovery requests, producing documents, and

- 19 -

consulting with Lead Counsel concerning the merits of this Litigation. After the Settlement was reached, Lead Plaintiff negotiated with Lead Counsel regarding its fee request, concluding that 33% of the Settlement was appropriate. Thus, throughout the Litigation, Lead Plaintiff actively monitored Lead Counsel and negotiated and supports its requested fee.

**C.    The Requested Fee Is Supported by the Effort Expended and Results Achieved**

76.    As set forth herein, the $7.5 million cash Settlement was achieved as a result of extensive investigative efforts, complicated motion practice, discovery, and extensive mediation preparation.

77.    As discussed in greater detail above, this case was fraught with significant risks concerning liability and damages. Lead Plaintiff's success was by no means assured. Defendants disputed whether the alleged misstatements and omissions were even actionable, asserted that they did not act with the requisite scienter, and sought to attribute any harm suffered to factors unrelated to the alleged fraud. If the Settlement was not achieved, and even if Lead Plaintiff prevailed at trial, Lead Plaintiff potentially faced years of costly and risky appellate litigation, with ultimate success far from certain. It is also possible that a jury could have found no liability or no damages.

78.    As a result of the Settlement, Settlement Class Members will benefit and receive compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement. These factors also support Lead Counsel's request for an award of attorneys' fees of 33% of the Settlement Amount, plus interest.

**D.    The Risk of Contingent Class Action Litigation Supports the Requested Fee Award**

79.    As set forth in the accompanying application for attorneys' fees and expenses, a determination of a fair fee should include consideration of the contingent nature of the fee, the time

4865-8359-1542.v1

and labor expended by Lead Counsel, and the difficulties that were overcome in obtaining the Settlement.

80.    This Action was prosecuted by Lead Counsel on a contingent fee basis. Lead Counsel committed 2,800 hours of attorney and professional time and incurred $116,594.97 in expenses in the prosecution of the Litigation, as set forth in the accompanying Robbins Geller Fee Declaration. Lead Counsel fully assumed the risk of an unsuccessful result. Lead Counsel has received no compensation for its services during the course of this Litigation and has incurred significant expenses in litigating for the benefit of the Settlement Class. Any fees or expenses awarded to Lead Counsel have always been at risk and are completely contingent on the result achieved. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

81.    Lead Counsel's efforts were performed on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, Lead Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Settlement Class. A 33% fee, plus expenses and interest, is fair and reasonable under the circumstances present here.

82.    There are numerous cases, including many handled by Robbins Geller, where class counsel in contingent fee cases such as this, after expenditure of thousands of hours of time and incurring significant costs, have received no compensation whatsoever. Class counsel who litigate cases in good faith and receive no fees whatsoever are often the most diligent members of the plaintiffs' bar. The fact that defendants and their counsel know that the leading members of the plaintiffs' bar are able to, and will, go to trial even in high-risk cases like this one gives rise to

4865-8359-1542.v1

meaningful settlements in actions such as this.  The losses suffered by class counsel in other actions where insubstantial settlement offers were rejected, and where class counsel ultimately received little or no fee, should not be ignored.  Lead Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in contingent litigation is never assured.

83.    Lawsuits such as these are expensive to litigate.  Those unfamiliar with the efforts required to litigate class actions often focus on the aggregate fees awarded at the end but ignore the fact that those fees fund enormous overhead expenses incurred during the course of many years of litigation, are taxed by federal and state authorities, are used to fund the expenses of other contingent cases prosecuted by class counsel, and help pay the salaries of the firm's attorneys and staff.

## VII.    LEAD PLAINTIFF SEEKS AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) BASED ON ITS REPRESENTATION OF THE SETTLEMENT CLASS

84.    The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).

85.    Here, as explained in the accompanying Declaration, Lead Plaintiff requests an award of $2,000 to compensate for its time and expenses related to its active participation in the Action. *See* Lead Plaintiff Decl., ¶7.

86.    Many courts have approved reasonable payments to compensate class representatives for the time and effort devoted by them on behalf of a class.

87.    Lead Counsel respectfully submits that the amount sought here is eminently reasonable based on Lead Plaintiff's active involvement in the Action, from its consideration of

4865-8359-1542.v1

appointment as Lead Plaintiff to the Settlement, which included, among other things, reviewing the Complaint and other key litigation materials, searching for and producing documents, participating in the mediation process, and communicating with Lead Counsel regarding the Action. As such, this request should be granted in its entirety.

## VIII.  CONCLUSION

88.    For the reasons set forth above and in the accompanying Settlement and Fee Memoranda, Lead Counsel respectfully submits that: (i) the Settlement is fair, reasonable and adequate, and should be finally approved; (ii) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Settlement Class Members and should also be approved; and (iii) the application for attorneys' fees of 33% of the Settlement Amount and expenses of $116,594.97, plus the interest earned on both amounts at the same rate and for the same period as that earned on the Settlement Fund until paid, and an award to Lead Plaintiff of $2,000 for its efforts on behalf of the Settlement Class, should be granted in its entirety.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 14, 2023, at Melville, New York.

*s/ David A. Rosenfeld*
DAVID A. ROSENFELD

- 23 -